**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MONIQUE MURRAY,<br>BENNETH EKWEGBALU,<br>ERIK GIORDANO,<br>ASHLEY HAMILTON,<br>VALENTYNA MASYK,<br>JASMINE MCNEILL,<br>ROSEDI MORALES,<br>WAYNE NEAL,<br>EMMETT SEALEY,<br>PAUL SINGH, and<br>ALLEN STEVENS,<br><br>        Plaintiffs,<br><br>   v.<br><br>CITY OF NEW YORK, NEW YORK,<br><br>        Defendant. | No. _____<br><br>(JURY TRIAL DEMANDED) |

## COMPLAINT

### INTRODUCTION

Plaintiffs, by and through their counsel, the law firms of Woodley & McGillivary LLP, and Spivak Lipton, LLP, and on behalf of themselves and all other similarly situated employees currently or formerly employed by defendant, for their complaint against the City of New York state as follows:

### PARTIES

1.      Representative plaintiffs Monique Murray, Ashley Hamilton, Rosedi Morales, Wayne Neal, Erik Giordano, Emmett Sealey, Paul Singh, Jasmine McNeill, Benneth Ekwegbalu, Allen Stevens and Valentyna Masyk bring this action as a collective action in

accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) against the defendant on behalf of themselves and all other current and former employees who are similarly situated because of defendant's unlawful deprivation of plaintiffs' rights to overtime compensation under the FLSA.

2.      The representative plaintiffs identified in the caption above gave their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Such written consents are appended to this Complaint as Exhibit A. These written consent forms set forth each plaintiff's name and address. Consent forms on behalf of additional plaintiffs who are similarly situated to the plaintiffs identified herein will be filed in subsequent notice of filings.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

5.      Plaintiffs are, and at all times material herein have been, employed by defendant in the Department of Homeless Services ("DHS") in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, and Caseworker. Plaintiffs bring this action on behalf of themselves and all others similarly situated for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the defendant's willful and unlawful violations of federal law complained of herein.

6.      Each of the plaintiffs in this action while employed by defendant has been an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

7.      At all times material herein, each plaintiff has worked for the City of New York in the Department of Homeless Services as a Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, and/or Caseworker. For example:

     a.  **Community Coordinator:** At all times material herein, plaintiff Monique Murray has worked as a Community Coordinator at the DHS facilities located at 33 Beaver Street, New York, NY 10004 and 39 Auburn Place, Brooklyn, NY 11205.

     b.  **Community Associate:** At all times material herein plaintiff Ashley Hamilton has worked as a Community Associate at the DHS Prevention Assistance and Temporary Housing (PATH) facility located at 151 East 51st St., Bronx, NY 10451. At all times material herein, Rosedi Morales worked as a Community Associate at the DHS facility located at 1322 Bedford Street, Brooklyn, NY 11216.

     c.  **Community Assistant:** At all times material herein, plaintiff Emmett Sealey has worked as a Community Assistant at the Linden Avenue Shelter located at 501 New Lots Ave., Brooklyn NY 11207. At all times material herein, plaintiff Wayne Neal worked as Community Assistant at the Barbara Kleinman Shelter located at 300 Skillman Ave., Brooklyn, NY 11211.

      d. **Fraud Investigator:** At all times material herein, plaintiff Paul Singh has worked as a Fraud Investigator at the DHS PATH facility located at 151 East 151st Street, Bronx, NY 10451. At all times material herein, plaintiff Erik Giordano has worked as a Fraud Investigator at the DHS PATH facility located at 151 East 151st Street, Bronx, NY 10451.

      e. **Associate Fraud Investigator:** At all times material herein, plaintiff Jasmine McNeill worked as an Associate Fraud Investigator at the DHS PATH facility located at 151 E. 51st St., Bronx, NY 10451. At all times material herein, plaintiff Benneth Ekwegbalu has been assigned to the DHS PATH facility located at 151 E. 51st St., Bronx, NY 10451, and has worked out of the Family Services Center located at 257 Bergen St., Brooklyn, NY 11217.

      f. **Caseworker:** At all times material herein, plaintiff Allen Stevens worked as a Caseworker at the Jamaica Family Residence, 175-10 88th Ave., Queens, NY 11432. At all times material herein, plaintiff Valentyna Masyk worked as a Caseworker at the Barbara Kleinman Shelter located at 300 Skillman Ave., Brooklyn, NY 11211.

8.     Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, New York 10007.

9.     Within the last three years and continuing to date[1], while employed by defendant in the Department of Homeless Services in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, and/or Caseworker, plaintiffs' jobs are, among other things, to serve the homeless population of the City of New York by working to prevent homelessness, to assist New Yorkers in transitioning from shelter into permanent housing, gaining employment, and in connecting them to work support and other public benefits, and to help clients prepare for independent living. Plaintiffs also perform various other duties and activities related to serving the citizens of the City of New York. The job duties of each category of employees is described in further detail below.

*Community Coordinators*

10.     During all relevant time periods, while working in the position of Community Coordinator on behalf of defendant, plaintiffs' job duties include but are not limited to assisting with and troubleshooting the work of Community Associates and Community Assistants, conducting intake interviews of potential clients, reviewing information provided by potential clients and comparing this information to DHS requirements to determine whether individuals will be referred for further assessment of housing eligibility, working with clients to determine their needs and assisting clients in meeting those needs, and inputting information obtained from clients into a system called CARES, an intra-Agency computer program used to track information about clients and the services provided by DHS employees.

11.     While working as Community Coordinators, plaintiffs routinely work more than 40 hours a week. Community Coordinator plaintiffs are scheduled to work 40 hours a week,

---

[1]     For the plaintiffs who also participated as plaintiffs in *Martin, et al. v. City of New York,* No. 14 Civ. 8950 (TPG) (AJP), the relevant period is from November 20, 2015, the date the Settlement Agreement was filed with this Court, continuing to the present.

Monday through Friday, as their regular schedule, with one hour each day automatically deducted for meal periods.

12.    Plaintiffs employed as Community Coordinators must routinely perform the job duties described in paragraph 10 outside their regular schedule, including before and after their shift as well as during their unpaid meal periods, because they have a large volume of work which must be completed in a timely manner pursuant to the defendant's work rules. Further, they cannot complete all of the assigned work during the scheduled 7-hour shift. Moreover, this additional work results from Agency-wide understaffing.

13.    The defendant captures the work hours of Community Coordinators, including time spent working prior to the start of their scheduled shift and after the end of their scheduled shift, on the defendant's time keeping system. Further, the defendant's computers reflect employees' computer usage, and much of this work is performed on employees' computers.

14.    While working as Community Coordinators, the plaintiffs perform work during their meal periods that is uncompensated. Much of this work time is reflected on their work computers maintained by the City and it is also observed by plaintiffs' supervisors and managers. Plaintiffs perform this work during weeks in which their paid time, due to overtime, exceeds 40 hours in a workweek.

15.    For example, Community Coordinator Monique Murray works over 40 hours in a workweek approximately once out of every four weeks. When plaintiff Murray works over 40 hours in a workweek performing the job duties described in paragraph 10, defendant fails to properly compensate her for work performed before the shift start time, even when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate her for work performed post-shift unless the work performed is pre-approved, even

when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiffs for work performed during the unpaid meal periods. By way of example, during the week of January 19-25, 2014, plaintiff Murray worked 48 hours and 30 minutes, but was not compensated for at least 3 hours and 15 minutes of that time. During the week of November 17-23, 2013, plaintiff Murray worked 55 hours and 15 minutes, but was not compensated for at least 1 hour and 45 minutes of that time. During these workweeks, plaintiff Murray also performed work during her unpaid meal periods for which she received no compensation.

16.     The defendant's time records track the time worked by Community Coordinator plaintiffs including the time for which defendant fails to pay them. The defendant's CityTime pay system reflects time at the plaintiffs' work location. With respect to meal periods, the computers on which plaintiffs work will reflect their work time, as will their own testimony and testimony from their supervisors and managers who observe plaintiffs regularly working through their unpaid meal periods, which can be compared to the amounts of time for which they received payment under CityTime to reflect plaintiffs' damages.

17.     Similar to the Community Coordinator plaintiff identified above, other similarly situated Community Coordinator plaintiffs employed by defendant routinely work more than 40 hours in a work week performing the job duties described in paragraph 10 and are denied full and correct compensation during those workweeks for their work time before and after their shifts, and during their meal periods, in violation of the FLSA. The precise amount of uncompensated work time can also be identified through CityTime and through defendant's computers on which plaintiffs work.

*Community Associates*

18.     During all relevant time periods, while working in the position of Community Associates on behalf of defendant, plaintiffs' job duties include but are not limited to assisting Caseworkers by obtaining information from clients, inventorying deliveries from vendors, stocking DHS shelters with necessary supplies received from vendors, providing assistance to clients with day-to-day needs, assisting clients in obtaining documents needed for judicial and administrative hearings, job applications, or permanent housing applications, and scanning and distributing documents obtained from or on behalf of clients to Caseworkers.

19.     While working as Community Associates, plaintiffs routinely work more than 40 hours a week. Community Associate plaintiffs are scheduled to work 40 hours a week, Monday through Friday, as their regular schedule, with one hour each day automatically deducted for meal periods.

20.     Plaintiffs employed as Community Associates must routinely perform the job duties described in paragraph 18 outside their regular schedule, including before and after their shift as well as during their unpaid meal periods, because they have a large volume of work that must be completed in a timely manner pursuant to the defendant's work rules. Further, they cannot complete all of the assigned work during the scheduled 7-hour shift. Moreover, this additional work results from Agency-wide understaffing.

21.     The defendant captures the work hours of Community Associates, including time spent working prior to the start of their scheduled shift and after the end of their scheduled shift, on the defendant's time keeping system. Further, the defendant's computers reflect employees' computer usage, and much of this work is performed on employees' computers.

22.     While working as Community Associates, the plaintiffs perform work doing the same job duties described in paragraph 18 above during their meal periods that is uncompensated. Much of this work time is reflected on their work computers maintained by the City and is also observed by plaintiffs' supervisors and managers. Plaintiffs perform this work during weeks in which their paid time, due to overtime, exceeds 40 hours in a workweek.

23.     For example, Community Associate Ashley Hamilton routinely works over 40 hours in a workweek, approximately once out of every four weeks. When plaintiff Hamilton works over 40 hours in a workweek performing the job duties described in paragraph 18, defendant fails to properly compensate plaintiff for work performed before the shift start time, even when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate her for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff Hamilton for work performed during her unpaid meal periods. By way of example, during the week of June 5-11, 2016, plaintiff Hamilton worked 45 hours and 15 minutes, but was not compensated for at least 1 hour of that time. During the week of June 26 to July 2, 2016, plaintiff Hamilton worked 42 hours and 30 minutes, but was not compensated for at least 30 minutes of that time. During these workweeks, plaintiff Hamilton also performed work during her unpaid meal periods doing the same work activities identified in paragraph 18 for which she received no compensation.

24.     For example, Community Associate Rosedi Morales routinely works over 40 hours in a workweek, approximately once out of every four weeks. When plaintiff Morales works over 40 hours in a workweek performing the job duties described in paragraph 18, defendant fails to properly compensate plaintiff for work performed before the shift start time, even when

the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate plaintiff Morales for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff for work performed during the unpaid meal periods. By way of example, during the week of November 9-15, 2014, plaintiff Morales worked 47 hours, but was not compensated for at least 7 hours of that time. During the week of August 24-30, 2014, plaintiff Morales worked 41 hours and 15 minutes, but was not compensated for 1 hour and 15 minutes of that time. During these workweeks, plaintiff Morales also performed work during her unpaid meal periods doing the same activities described in paragraph 18 for which she received no compensation.

25.    The defendant's time records track the time worked by Community Associate plaintiffs including the time for which defendant fails to pay them. The defendant's CityTime pay system reflects time at the plaintiffs' work location. With respect to meal periods, the computers on which plaintiffs work will reflect their work time, as will their own testimony and testimony from their supervisors and managers who observe plaintiffs regularly working through their unpaid meal periods, which can be compared to the amounts of time for which they received payment under CityTime to reflect plaintiffs' damages.

26.    Similar to the Community Associate plaintiffs identified above, other similarly situated Community Associate plaintiffs employed by defendant routinely work more than 40 hours in a work week performing the job duties described in paragraph 18 and are denied full and correct compensation during those workweeks for their work time before and after their shifts, and during their meal periods, in violation of the FLSA. The precise amount of

uncompensated work time can also be identified through CityTime and through defendant's computers on which plaintiffs work.

*Community Assistants*

27.     During all relevant time periods, while working in the position of Community Assistants on behalf of defendant, plaintiffs' job duties include but are not limited to custodial services and support at homeless shelters; preparing and serving meals to clients; cleaning the shelters; providing clean bedding to clients; providing toiletries and other necessities to clients; enforcing rules at the shelters; monitoring curfew; attending to bed sign-in for clients and determining whether there are additional beds available; and securing clients' belongings.

28.     While working as Community Assistants, plaintiffs routinely work more than 40 hours a week. Community Assistant plaintiffs are scheduled to work 40 hours a week, Monday through Friday, as their regular schedule, with 30 minutes each day automatically deducted for meal periods.

29.     Plaintiffs employed as Community Assistants must routinely perform the job duties described in paragraph 27 outside their regular schedule, including before and after their shift as well as during their unpaid meal periods, because they have a large volume of work which must be completed in a timely manner pursuant to the defendant's work rules. Further, they cannot complete all of the assigned work during the scheduled 7.5-hour shift. Moreover, this additional work results from Agency-wide understaffing.

30.     The defendant captures the work hours of Community Assistants, including time spent working prior to the start of their scheduled shift and after the end of their scheduled shift, on the defendant's time keeping system.

31.     While working as Community Assistants, the plaintiffs perform work during their unpaid meal periods that is uncompensated. This work is observed by plaintiffs' supervisors and managers. Plaintiffs perform this work during weeks in which their paid time, due to overtime, exceeds 40 hours in a workweek.

32.     For example, Community Assistant Emmett Sealey routinely works over 40 hours in a workweek, approximately once out of every four weeks. When plaintiff Sealey works over 40 hours in a workweek performing the job duties described in paragraph 27, defendant fails to properly compensate plaintiff for work performed before the shift start time, even when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate plaintiff for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff for work performed during the unpaid meal periods. By way of example, during the week of September 6-12, 2015, plaintiff Sealey worked 57 hours and 15 minutes, but was not compensated for at least 2 hours and 15 minutes of that time. During the week of September 20-26, 2015, plaintiff Sealey worked 50 hours, but was not compensated for at least 2 hours and 30 minutes of that time. During these workweeks, plaintiff Sealey also performed work during his unpaid meal periods performing the same activities described in paragraph 27 for which he received no compensation.

33.     For example, Community Assistant Wayne Neal routinely works over 40 hours in a workweek, approximately once out of every four weeks. When plaintiff Neal works over 40 hours in a workweek performing the job duties described in paragraph 27, defendant fails to properly compensate plaintiff for work performed before the shift start time, even when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant

fails to compensate plaintiff for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff for work performed during the unpaid meal periods. By way of example, during the week of May 29-June 4, 2016, plaintiff Neal worked 59 hours and 15 minutes, but was not compensated for at least 3 hours and 45 minutes of that time. During the week of July 24-30, 2016, plaintiff Neal worked 60 hours, but was not compensated for at least 4 hours of that time. During these workweeks, plaintiff Neal also performed work during his unpaid meal periods doing the same activities described in paragraph 27 for which he received no compensation.

34.     The defendant's time records track the time worked by Community Assistant plaintiffs including the time for which defendant fails to pay them. The defendant's CityTime pay system reflects time at their work location. With respect to meal periods, plaintiffs' own testimony and testimony from their supervisors and managers who observe plaintiffs regularly working through their unpaid meal periods, which can be compared to the amounts of time for which they received payment under CityTime to reflect plaintiffs' damages.

35.     Similar to the Community Assistant plaintiffs identified above, other similarly situated Community Assistant plaintiffs employed by defendant routinely work more than 40 hours in a work week performing the job duties described in paragraph 27 and are denied full and correct compensation during those workweeks for their work time before and after their shifts, and during their meal periods, in violation of the FLSA. The precise amount of uncompensated work time can also be identified through CityTime.

*Fraud Investigators*

36.     During all relevant time periods, while working in the position of Fraud Investigator on behalf of defendant, plaintiffs' job duties include but are not limited to conducting interviews of potential clients applying for shelter to assess their individual needs and possible alternatives to DHS housing, investigating clients' previous residences, visiting residences to interview primary tenants to determine if there is housing available for a potential client, preparing reports based on these interviews, making eligibility recommendations regarding clients' housing needs, and managing a high volume caseload with the goal of ensuring that eligible clients applying for housing are placed in shelters in a timely manner.

37.     While working as Fraud Investigators, plaintiffs routinely work more than 40 hours a week. Fraud Investigator plaintiffs are scheduled to work 40 hours a week, Monday through Friday, as their regular schedule, with one hour each day automatically deducted for meal periods.

38.     Plaintiffs employed as Fraud Investigators must routinely perform the job duties described in paragraph 36 outside their regular schedule, including before and after their shift as well as during their unpaid meal periods, because they have a large volume of work which must be completed in a timely manner pursuant to the defendant's work rules. Further, they cannot complete all of the assigned work during the scheduled 7-hour shift. Moreover, this additional work results from Agency-wide understaffing.

39.     The defendant captures the work hours of Fraud Investigators, including time spent working prior to the start of their scheduled shift and after the end of their scheduled shift, on the defendant's time keeping system. Further, the defendant's computers reflect employee computer usage, and much of this work is performed on employees' computers.

40.     While working as Fraud Investigators, the plaintiffs perform work during their meal periods that is uncompensated. Much of this work time is reflected on their work computers maintained by the City and is also observed by plaintiffs' supervisors and managers. Plaintiffs perform this work during weeks in which their paid time, due to overtime, exceeds 40 hours in a workweek.

41.     For example, Fraud Investigator Paul Singh routinely works over 40 hours in a workweek, approximately once out of every four weeks. When plaintiff Singh works over 40 hours in a workweek performing the job duties described in paragraph 36, defendant fails to properly compensate him for work performed before his shift start time, even when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate plaintiff Singh for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff for work performed during the unpaid meal periods. By way of example, during the week of June 5-11, 2016, plaintiff Singh worked 42 hours and 15 minutes, but was not compensated for at least 2 hours and 15 minutes of that time. During the week of May 29-June 4, 2016, plaintiff Singh worked 41 hours and 15 minutes, but was not compensated for at least 1 hour and 15 minutes of that time. During these workweeks, plaintiff Singh also performed work during his unpaid meal periods performing the work described in paragraph 36 above for which he received no compensation.

42.     For example, Fraud Investigator Erik Giordano routinely works over 40 hours in a workweek, approximately once out of every four weeks. When plaintiff Giordano works over 40 hours in a workweek performing the job duties described in paragraph 36, defendant fails to properly compensate plaintiff Giordano for work performed before his shift start time, even

when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate plaintiff for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff for work performed during the unpaid meal periods. By way of example, during the week of July 17-23, 2016, plaintiff Giordano worked 41 hours and 45 minutes, but was not compensated for at least 1 hour and 45 minutes of that time. During the week of August 14-20, 2016, plaintiff Giordano worked 41 hours, but was not compensated for at least 1 hour of that time. During these workweeks, plaintiff Giordano also performed work during his unpaid meal periods doing the same activities described in paragraph 36 above for which he received no compensation.

43.     The defendant's time records track the time worked by Fraud Investigator plaintiffs including the time for which defendant fails to pay them. The defendant's CityTime pay system reflects time at the plaintiffs' work location. With respect to meal periods, the computers on which plaintiffs work will reflect their work time, as will their own testimony and testimony from their supervisors and managers who observe plaintiffs regularly working through their unpaid meal periods, which can be compared to the amounts of time for which they received payment under CityTime to reflect plaintiffs' damages.

44.     Similar to the Fraud Investigator plaintiffs identified above, other similarly situated Fraud Investigator plaintiffs employed by defendant routinely work more than 40 hours in a work week performing the job duties described in paragraph 36 and are denied full and correct compensation during those workweeks for their work time before and after their shifts, and during their meal periods, in violation of the FLSA. The precise amount of uncompensated

work time can also be identified through CityTime and through defendant's computers on which plaintiffs work.

*Associate Fraud Investigators*

45.     During all relevant time periods, while working in the position of Associate Fraud Investigator on behalf of defendant, plaintiffs' job duties include but are not limited to performing intake duties for incoming clients, reviewing cases based on information provided by other Fraud Investigators and Associate Fraud Investigators, visiting residences with Fraud Investigators, making eligibility determinations regarding clients' housing needs, and managing a high volume caseload with the goal of ensuring all eligible clients applying for housing are placed in shelters in a timely manner.

46.     Because Associate Fraud Investigators perform similar work to that performed by Fraud Investigators, both groups of employees are represented by the same bargaining unit.

47.     While working as Associate Fraud Investigators, plaintiffs routinely work more than 40 hours a week. Associate Fraud Investigator plaintiffs are scheduled to work 40 hours a week, Monday through Friday, as their regular schedule, with one hour each day automatically deducted for meal periods.

48.     Plaintiffs employed as Associate Fraud Investigators must routinely perform the job duties described in paragraph 45 outside their regular schedule, including before and after their shift as well as during their unpaid meal periods, because they have a large volume of work which must be completed in a timely manner pursuant to the defendant's work rules. Further, they cannot complete all of the assigned work during the scheduled 7-hour shift. Moreover, this additional work results from Agency-wide understaffing.

49.     The defendant captures the work hours of Associate Fraud Investigators, including time spent working prior to the start of their scheduled shift and after the end of their scheduled shift, on the defendant's time keeping system. Further, the defendant's computers reflect employees' computer usage, and much of this work is performed on employees' computers.

50.     While working as Associate Fraud Investigators, the plaintiffs perform work during their meal periods that is uncompensated. Much of this work time is reflected on their work computers maintained by the City and is also observed by plaintiffs' supervisors and managers. Plaintiffs perform this work during weeks in which their paid time, due to overtime, exceeds 40 hours in a workweek.

51.     For example, Associate Fraud Investigator Jasmine McNeill routinely works over 40 hours in a workweek, approximately once out of every four weeks. When plaintiff McNeill works over 40 hours in a workweek performing the job duties described in paragraph 45, defendant fails to properly compensate her for work performed before the shift start time, even when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate plaintiff for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff McNeill for work she performed during her unpaid meal periods. By way of example, during the week of September 13-19, 2015, plaintiff McNeill worked 47 hours, but was not compensated for at least 15 minutes of that time. During the week of May 11-17, 2014, plaintiff McNeill worked 54 hours, but was not compensated at least 15 minutes of that time. During these workweeks, plaintiff McNeill also performed work during her unpaid meal periods doing the work described in paragraph 45 above for which she received no compensation.

52.     For example, Associate Fraud Investigator Benneth Ekwegbalu routinely works over 40 hours in a workweek, approximately once out of every four weeks. When plaintiff Ekwegbalu works over 40 hours in a workweek performing the job duties described in paragraph 46, defendant fails to properly compensate plaintiff for work performed before the shift start time, even when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate plaintiff for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff for work performed during the unpaid meal periods. By way of example, during the week of December 29, 2013 to January 4, 2014, plaintiff Ekwegbalu worked a total of 42 hours and 30 minutes, but was not compensated for at least 2 hours and 30 minutes of that time. During the week of December 1-7, 2013, plaintiff Ekwegbalu worked 41 hours and 15 minutes, but was not compensated for at least 1 hour and 15 minutes of that time. During these workweeks, plaintiff Ekwegbalu also performed work during his unpaid meal periods doing the work described in paragraph 46 above for which he received no compensation.

53.     The defendant's time records track the time worked by Associate Fraud Investigator plaintiffs including the time for which defendant fails to pay them. The defendant's CityTime pay system reflects time at plaintiffs' work location. With respect to meal periods, the computers on which plaintiffs work will reflect their work time, as will their own testimony and testimony from their supervisors and managers who observe plaintiffs regularly working through their unpaid meal periods, which can be compared to the amounts of time for which they received payment under CityTime to reflect plaintiffs' damages.

54.     Similar to the Associate Fraud Investigator plaintiffs identified above, other similarly situated Associate Fraud Investigator plaintiffs employed by defendant routinely work more than 40 hours in a work week performing the job duties described in paragraph 45 and are denied full and correct compensation during those workweeks for their work time before and after their shifts, and during their meal periods, in violation of the FLSA. The precise amount of uncompensated work time can also be identified through CityTime and through defendant's computers on which plaintiffs work.

*Caseworkers*

55.     During all relevant time periods, while working in the position of Caseworker on behalf of defendant, plaintiffs' job duties include but are not limited to managing a high-volume caseload of approximately 25-35 clients, conducting an intake assessing each clients' individual needs upon entry to the shelter, working with assigned clients to create an independent living plan with the goal of facilitating the clients' transition to permanent housing, assisting clients in accessing social services, meetings with clients to carry out the independent living plan, referring clients to other DHS employees for additional services, and documenting the work performed with clients in CARES, emails to supervisors, and completing other paperwork assigned by DHS.

56.     While working as Caseworkers, plaintiffs routinely work more than 40 hours a week. Caseworker plaintiffs are scheduled to work 40 hours a week, Monday through Friday, as their regular schedule, with one hour each day automatically deducted for meal periods.

57.     Plaintiffs employed as Caseworkers must perform the job duties described in paragraph 55 outside their regular schedule, including before and after their shift as well as during their unpaid meal periods, because they have a large volume of work which must be

completed in a timely manner pursuant to the defendant's work rules. Further, they cannot complete all of the assigned work during the scheduled 7-hour shift. Moreover, this additional work results from Agency-wide understaffing.

58.     The defendant captures the work hours of Caseworkers, including time spent working prior to the start of their scheduled shift and after the end of their scheduled shift, on the defendant's time keeping system. Further, the defendant's computers reflect employees' computer usage, and much of this work is performed on employees' computers.

59.     While working as Caseworkers, the plaintiffs perform work during their meal periods that is uncompensated. Much of this work time is reflected on their work computers maintained by the City and is also observed by plaintiffs' supervisors and managers. Plaintiffs perform this work during weeks in which their paid time, due to overtime, exceeds 40 hours in a workweek.

60.     For example, Caseworker Allen Stevens routinely works over 40 hours in a workweek. When plaintiff Stevens works over 40 hours in a workweek performing the job duties described in paragraph 55, defendant fails to properly compensate plaintiff for work performed before the shift start time, even when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate plaintiff for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff for work performed during the unpaid meal periods. For example, during the week of April 12-18, 2015, plaintiff Stevens worked 44 hours and 45 minutes, but was not compensated for at least 4 hours and 45 minutes of that time. During the week of December 21-27, 2014, plaintiff Stevens worked 52 hours, but was not compensated for at least 5 hours of that time. During these

21

workweeks, plaintiff Stevens also performed work during his unpaid meal periods doing the activities described in paragraph 55 above for which he received no compensation.

61.     For example, Caseworker Valentyna Masyk routinely works over 40 hours in a workweek. When plaintiff Masyk works over 40 hours in a workweek performing the job duties described in paragraph 55, defendant fails to properly compensate plaintiff Masyk for work performed before the shift start time, even when the work performed is recorded by the defendant's timekeeping system. Similarly, the defendant fails to compensate plaintiff Masyk for work performed post-shift unless the work performed is pre-approved, even when the work is recorded by defendant's timekeeping system. The City fails to compensate plaintiff for work performed during the unpaid meal periods. For example, during the week of August 7-13, 2016, plaintiff Masyk worked 42 hours and 30 minutes, but was not compensated for at least 1 hour and 30 minutes of that time. During the week of August 28-September 3, 2016, plaintiff Masyk worked 42 hours, but was not compensated for at least 2 hours of that time. During these workweeks, plaintiff Masyk also performed work during unpaid meal periods doing the work described in paragraph 55 above for which she received no compensation.

62.     The defendant's time records track the time worked by Caseworker plaintiffs including the time for which defendant fails to pay them. The defendant's CityTime pay system reflects time at plaintiffs' work location. With respect to meal periods, the computers on which plaintiffs work will reflect their work time, as will their own testimony and testimony from their supervisors and managers who observe plaintiffs regularly working through their unpaid meal periods, which can be compared to the amounts of time for which they received payment under CityTime to reflect plaintiffs' damages.

63.     Similar to the Caseworker plaintiffs identified above, other similarly situated Caseworker plaintiffs employed by defendant routinely work more than 40 hours in a work week performing the job duties described in paragraph 55 and are denied full and correct compensation during those workweeks for their work time before and after their shifts, and during their meal periods, in violation of the FLSA. The precise amount of uncompensated work time can also be identified through CityTime and through defendant's computers on which plaintiffs work.

### *The Rate at Which Overtime is Paid*

64.     When plaintiffs work in the evenings beyond their regular shift times, they are entitled to receive night shift differential pay of ten percent (10%) of their basic rate of pay and may receive a meal allowance, both of which are taxed as income. During workweeks in which plaintiffs work over 40 hours, defendant fails to include this night shift differential pay and the meal allowance in the calculation of the regular rate of pay for cash overtime payments owed to plaintiffs. For example, during the pay period ending August 6, 2016, plaintiff Emmett Sealey received a night shift differential and a meal, but neither of these payments was included in the rate at which his overtime compensation was paid for that pay period.

### *Payment of Compensatory Time at the Rate of One Hour for Each Hour of Overtime Worked*

65.     During all workweeks in which the plaintiffs work over 40 hours and some of this time above 40 hours includes what the defendant considers to be "approved overtime" and is classified as "voluntary," plaintiffs are paid in compensatory time rather than cash. For example, during the week of June 26-July 2, 2016, plaintiff Ashley Hamilton worked at least 2 hours of "voluntary," "approved overtime," for which she was compensated in compensatory time. Similarly, during the week of August 21-27, 2016, plaintiff Valentyna Masyk worked at

least 1 hour and 15 minutes of "voluntary," "approved" overtime, for which she was compensated in compensatory time. During the weeks in which plaintiffs, including plaintiff Hamilton and plaintiff Masyk, work over 40 hours and are compensated for "voluntary" and "approved overtime" in compensatory time rather than cash, plaintiffs are only paid one hour of compensatory time for each hour of overtime that is worked.

### *Late Payment of Overtime Worked*

66.     When defendant does compensate plaintiffs for hours worked over 40 in a workweek and plaintiffs are paid for this overtime work in cash, defendant sometimes delays the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours and in compensatory time for their overtime hours. For example, plaintiff Jasmine McNeill worked at least 1 hour of overtime on February 29, 2016, but was not paid for this time until April 8, 2016. The delay in payment is done either because the defendant's managerial staff has simply failed to transmit purportedly necessary information to payroll that defendant likes to have to pay overtime to plaintiffs, or because defendant simply does not want to incur the cost for budgetary reasons in that particular financial quarter (e.g, when employees' pay exceeds a predetermined cap), or for other reasons that are unrelated to defendant's ability to determine the amount of overtime compensation that is owed to the plaintiffs.

**COUNT I**

**FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)**

67.     Plaintiffs hereby incorporate by reference paragraphs 1 through 66 in their entirety and restate them herein.

68.     At all times material herein, during those work weeks in which the plaintiffs have worked hours in excess of 40 hours a week, they have performed work activities without compensation before the start of their scheduled shifts and after the end of their scheduled shifts, all of which is recorded on defendant's time keeping system CityTime. Plaintiffs also perform work during their unpaid meal periods, and this work is recorded on their assigned computers and observed by supervisors and managers. Accordingly, and as a result of these pay practices, defendant has failed to provide plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

69.     Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of forty hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA in the manner outlined herein by failing to compensate plaintiffs for work that they have been suffered or permitted to work before the official start time of their shifts, during their uncompensated meal periods, and after the official end of their shifts.

70.     As a result of defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined. The employment and work records for the plaintiffs are in the exclusive possession, custody and control of the defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and

preserve payroll and other employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

71.     Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

72.     Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

COUNT II

**FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY IN VIOLATION OF SECTION 7 OF THE FLSA**

73.     Plaintiffs hereby incorporate by reference paragraphs 1 through 72 in their entirety.

74.      Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has failed to include certain premium payments, such as night shift differential pay and meal allowances, that are made in addition to employees' regular pay in the regular rates of pay at which overtime pay is calculated for the plaintiffs as required under the law.

75.     Defendant's failure to include night shift differential pay, meal allowances and other forms of additional compensation in plaintiffs' regular rates of pay violate section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b). The failure to include night shift differential pay and meal allowances in plaintiffs' regular rates means that when plaintiffs receive paid overtime for working over 40 hours a week, they are paid at a rate that is below the rate mandated by the FLSA.

76.     As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely

determined. The employment and work records for the plaintiffs are in the exclusive

possession, custody and control of defendant and its public agencies and the plaintiffs are

unable to state at this time the exact amount owing to them. Defendant is under a duty imposed

under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to

maintain and preserve payroll and other employment records with respect to the plaintiffs and

other employees similarly situated from which the amount of defendant's liability can be

ascertained.

77.      Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages

in an amount equal to their back pay damages for the defendant's failure to pay overtime

compensation.

78.      Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

## FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR EVEN MONTHS AFTER THE OVERTIME HAS BEEN WORKED

79.      Plaintiffs hereby incorporate by reference paragraphs 1 through 78 in their entirety.

80.      The FLSA mandates that overtime compensation be paid on the regular pay day for

the period in which such workweek ends. Overtime payments under the FLSA may not be

delayed except as reasonably necessary to compute the amount owned, and in no event shall

such payments be delayed beyond the next payday after such computation can be made. 29

C.F.R. § 778.106. Defendant has violated these basic principles by delaying plaintiffs' overtime

payments for working in excess of 40 hours a week by weeks and in some cases months, with

such delay not being reasonably necessary to compute calculating plaintiffs' overtime pay, but

rather because of a failure by management personnel to approve overtime payments or due to management withholding such payments until the next budgetary quarter.

81.     Defendant's failure to pay plaintiffs FLSA overtime pay in a timely manner and its withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

82.     As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined. The employment and work records for the plaintiffs are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them, but from these payroll records, plaintiffs will be able to ascertain the precise extent of these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a). Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs and other employees similarly situated from which the amount of defendant's liability can be ascertained.

83.     Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

84.     Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT IV

### FAILURE TO COMPLY WITH THE REQUIREMENT THAT FLSA OVERTIME BE PAID AT THE RATE OF ONE AND ONE-HALF TIMES THE PLAINTIFFS' REGULAR RATES OF PAY

85.     Plaintiffs hereby incorporate by reference paragraphs 1 through 84 in their entirety.

86.     During the times that plaintiffs have worked in excess of 40 hours in a week, defendant has mandated that all "voluntary overtime" be compensated in compensatory time, as well as all overtime beyond the "cap" created by the defendant. When defendant provides compensatory time, it does so at the rate of one hour of compensatory time for each hour of "voluntary overtime" worked or each hour of overtime worked beyond the "cap." Defendant has done so regardless of whether the overtime hours for which it was compensating the plaintiffs were for work in excess of 40 hours a week.

87.     Section 207(o) of the FLSA, 29 U.S.C. § 207(o), permits public agency employers such as defendant to provide compensatory time in lieu of cash overtime to their employees as payment for overtime hours worked, but only provided that certain conditions are met. See 29 U.S.C. § 207(o); 29 C.F.R. §§ 553.20-28. One of the basic requirements is that employees receive compensatory time at the rate of one and one-half hours of compensatory time for each hour of overtime worked. 29 U.S.C. § 207(o)(1). Defendant has violated section 7(o) of the FLSA, 29 U.S.C. §§ 207(o) by failing and refusing to compensate plaintiffs for their overtime work at the rate of one and one-half hours of compensatory time for each overtime hour worked, and instead compensating them at the rate of one hour of compensatory time for each hour of overtime worked in workweeks in which they work more than 40 hours.

88.     As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined. The employment and work records for the plaintiffs are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them, but from these payroll records, plaintiffs will be able to ascertain the precise extent of these violations of section 7(a) of the

FLSA, 29 U.S.C. § 207(a). Defendant are under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs and other employees similarly situated from which the amount of defendant's liability can be ascertained.

89.     Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

90.     Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray that this Court:

(a) Enter judgment declaring that the defendant has willfully and wrongfully violated their statutory obligations, and deprived each of the plaintiffs and all others similarly situated of his and her rights;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs and all others similarly situated are entitled;

(c) Award plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(d) Award plaintiffs and all others similarly situated interest on their unpaid compensation;

(e) Award plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Respectfully submitted,

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary (SSN: 0280)
David Ricksecker
Sarah M. Block (SB 1460)
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855

*/s/ Hope Pordy*
Hope Pordy (HP 6253)
SPIVAK LIPTON, LLP
1700 Broadway
Suite 2100
New York, N.Y 10019
Phone: (212) 765-2100

31