**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MONIQUE MURRAY,<br>BENNETH EKWEGBALU,<br>ERIK GIORDANO,<br>ASHLEY HAMILTON,<br>VALENTYNA MASYK,<br>JASMINE MCNEILL,<br>ROSEDI MORALES,<br>WAYNE NEAL,<br>EMMETT SEALEY,<br>PAUL SINGH, and<br>ALLEN STEVENS,<br><br>        Plaintiffs,<br><br>   v.<br><br>CITY OF NEW YORK, NEW YORK,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 16-cv-8072 (PKC)

(JURY TRIAL DEMANDED)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR CONDITIONAL CERTIFICATION AND NOTICE TO PUTATIVE PLAINTIFFS**

Respectfully submitted,

Gregory K. McGillivary
David Ricksecker
Sarah M. Block
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855

Hope Pordy
SPIVAK LIPTON LLP
1700 Broadway
Suite 2100
New York, N.Y 10019
Phone: (212) 765-2100

# TABLE OF CONTENTS

I. INTRODUCTION ..............................................................................................................1

II. STATEMENT OF FACTS ................................................................................................1

    A. PLAINTIFFS PERFORM SIMILAR WORK ACROSS ALL DHS FACILITIES ................................3

    B. PLAINTIFFS WORK OVER 40 HOURS PER WEEK WITHOUT ADDITIONAL COMPENSATION ...................6

    C.    MISCALCULATION OF EMPLOYEES' REGULAR RATE ................................................7

    D.    FAILURE TO PAY COMPENSATORY TIME AT A TIME-AND-ONE-HALF RATE ....................7

III. ARGUMENT ..................................................................................................................8

    A. THE FLSA PROVIDES FOR COLLECTIVE ACTIONS .................................................8

    B. THE BURDEN ON PLAINTIFFS IS MINIMAL TO ESTABLISH THAT COURT SUPERVISED NOTICE IS APPROPRIATE IN FLSA COLLECTIVE ACTIONS ...................10

    C.    PLAINTIFFS HAVE EASILY MET THEIR BURDEN TO SHOW THEY ARE SIMILARLY SITUATED BY SHOWING THAT THE CITY'S PRACTICES AND POLICIES VIOLATE THE FLSA AND AFFECT ALL PROSPECTIVE PLAINTIFFS ......12

        *1. Plaintiffs Have Demonstrated a Similar Factual Setting With Respect to Pay Practices and Job Requirements for The Entire Putative Class* ...................12

        *2. Plaintiffs Have Raised the Same Legal Issues for the Entire Class* .............14

            a. Uncompensated Work ...................................................15

            b. Regular Rate ...........................................................16

            c. Late Payment of Overtime ................................................17

            d. Compensatory Time Paid at a Straight Time Rate ...............................18

    D. THIS COURT PREVIOUSLY GRANTED CONDITIONAL CERTIFICATION TO EMPLOYEES HOLDING THE EXACT SAME POSITIONS EMPLOYED BY THE SAME DEFENDANT IN MARTIN, ET AL. V. CITY OF NEW YORK, CASE NO. CASE NO. 14-CV-8950 .................................................18

IV. PLAINTIFFS' PROPOSED NOTICE ...........................................................................19

V.    CONCLUSION ............................................................................................................20

## I.   INTRODUCTION

Plaintiffs are employed by the City of New York's Department of Homeless Services (DHS) in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor. They bring this action under the Fair Labor Standards Act (FLSA) on behalf of themselves and other similarly situated City of New York employees to remedy violations of the overtime requirements of section 7(a) of the FLSA. 29 U.S.C. § 207(a). Plaintiffs respectfully request that this matter proceed as a collective action pursuant to 29 U.S.C. § 216(b). Additionally, plaintiffs request that the Court order defendant to produce the names and contact information of prospective class members so that notice may be sent to apprise these individuals of the pendency of this action as soon as possible; otherwise, their claims may be time-barred.[1] Specifically, plaintiffs request that they be permitted to provide notice through U.S. first class mail and by email to all current and former employees of the defendant who have been employed in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor at DHS any time since October 14, 2013.[2]

## II.   STATEMENT OF FACTS

On October 14, 2016, plaintiffs filed this action arising out of their employment with the City of New York. Although the law requires only a modest factual showing for this case to be certified as a collective action, plaintiffs present below detailed facts that support their motion.

---

[1]     The statute of limitations in FLSA actions is two years which is extended to three years for willful violations. 29 U.S.C. § 255(a). For the plaintiffs who also participated as plaintiffs in *Martin, et al. v. City of New York,* No. 14-cv-8950 (TPG) (AJP), the relevant period is from January 5, 2016, the date the Settlement Agreement was approved by this Court, continuing to the present.

[2]     Plaintiffs' proposed notice is attached as Exhibit A.

These facts show that the defendant has failed to comply with the overtime requirements of

Section 7, 29 U.S.C. § 207, of the FLSA in the following ways:

(1) Willfully failing to compensate plaintiffs for all hours worked in excess of 40 in a workweek by failing to compensate plaintiffs for work performed prior to the start of their shift, after the end of their shift, and during their scheduled meal periods;

(2) Willfully failing to compensate plaintiffs for all hour worked in excess of 40 in a workweek at the rate of one and one-half times the plaintiffs' regular rates of pay by failing to properly calculate the "regular rate" at which overtime is paid through the exclusion of night shift differential pay and meal allowances from this calculation;

(3) Willfully failing to promptly compensate plaintiffs for hours over 40 in a workweek by paying plaintiffs weeks or even months after the overtime is worked; and

(4) Willfully paying plaintiffs for hours worked over 40 in a workweek in compensatory time at a straight time hour-for-hour rate rather than at the rate of one and one-half hours for each overtime hour worked.

Docket Entry ("DE") 29 (First Amended Complaint). As plaintiffs demonstrate below, all

plaintiffs and putative plaintiffs are subject to the same policies and practices that deprive them

of their proper and timely overtime pay under the FLSA.

Moreover, this Court previously certified a collective action for individuals employed by

DHS in the positions of Community Coordinator, Community Associate, Community Assistant,

Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor in

*Martin, et al. v. City of New York*. *See* Case No. 14-cv-8950 (TPG) (AJP), DE 30 (May 27,

2015). In that case, Judge Peck found, and Judge Griesa affirmed, that plaintiffs had

demonstrated that individuals in each of these positions was similarly situated to all others

holding these same positions because the applicable facts relating to the payment of overtime by

the City were common to all putative class members. *Id.*

### A. **Plaintiffs Perform Similar Work Across All DHS Facilities**

There are hundreds of employees at the Department for Homeless Services in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor. The primary purpose of individuals holding each of these titles is to serve the homeless population of the City of New York. Ex. B (Murray Decl.), ¶ 3; Ex. C (Hamilton Decl.), ¶ 3; Ex. D (Sealey Decl.), ¶ 3; Ex. E (Giordano Decl.), ¶ 3; Ex. F (McNeill Decl.), ¶ 3; Ex. G (Stevens Decl.), ¶ 3, Ex. H (Coles Decl.), ¶ 3.[3] Plaintiffs perform similar job duties and with similar expectations in the same job titles, across all work locations. Ex. B-H, ¶¶ 3-4.  In addition, individuals in the titles of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor are subject to the same pay policies and practices, and in particular, they are subject to identical policies with respect to the payment of overtime as the City is well aware. Ex. B-H, ¶ 14-17.

Plaintiffs employed as Community Coordinators perform job duties such as assisting with and troubleshooting the work of Community Associates and Community Assistants, conducting intake interviews of potential clients, reviewing information provided by potential clients and comparing this information to DHS requirements to determine whether individuals will be referred for further assessment of housing eligibility, working with clients to determine their needs and assisting clients in meeting those needs, inputting information obtained from clients into a system called CARES, an intra-Agency computer program used to track information about clients and the services provided by DHS employees, and other related tasks. Ex. B, ¶ 3; *see also* DE 29, ¶ 10.

---

[3]     Sworn declarations of named plaintiffs Monique Murray, Ashley Hamilton, Emmett Sealey, Erik Giordano, Jasmine McNeill, and Allen Stevens are attached hereto as Exhibit B-G.

Plaintiffs employed as Community Associates perform job duties such as assisting Caseworkers by obtaining information from clients, screening and interviewing applicants, providing assistance to clients with day-to-day needs, assisting clients in obtaining documents needed for judicial and administrative hearings, job applications, or permanent housing applications, scanning and distributing documents obtained from or on behalf of clients to Caseworkers, and other related tasks. Ex. C, ¶ 3; *see also* DE 29, ¶ 20.

Plaintiffs employed as Community Assistants perform job duties such as custodial services and support at homeless shelters, preparing and serving meals to clients, cleaning the shelters, providing clean bedding to clients, providing toiletries and other necessities to clients, enforcing rules at the shelters, monitoring curfew, attending to bed sign-in for clients, determining whether there are additional beds available, securing clients' belongings, and other related tasks. Ex. D, ¶ 3; *see also* DE 29, ¶ 32.

Plaintiffs employed as Fraud Investigators perform job duties such as conducting interviews of potential clients applying for shelter to assess their individual needs and possible alternatives to DHS housing, visiting residences to interview primary tenants to determine if there is housing available for a potential client, preparing reports based on these interviews, making eligibility recommendations regarding clients' housing needs, managing their own high volume caseload with the goal of ensuring that eligible clients applying for housing are placed in shelters in a timely manner, and other related tasks. Ex. E, ¶ 3; *see also* DE 29, ¶ 44.

Plaintiffs employed as Associate Fraud Investigators perform job duties such as reviewing cases based on information provided by other Fraud Investigators and Associate Fraud Investigators, visiting residences with Fraud Investigators, making eligibility determinations regarding clients' housing needs, managing their own high volume caseload with the goal of

4

ensuring all eligible clients applying for housing are placed in shelters in a timely manner, and other related tasks. Ex. F, ¶ 3; *see also* DE 29, ¶ 56.

Plaintiffs employed as Caseworkers perform job duties such as managing their own high-volume caseload of approximately 25-35 clients, conducting an intake assessing each clients' individual needs upon entry to the shelter, working with assigned clients to create an independent living plan with the goal of facilitating the clients' transition to permanent housing; assisting clients in accessing social services, meetings with clients to carry out the independent living plan, referring clients to other DHS employees for additional services, and documenting the work performed with clients in CARES, emails to supervisors, completing other paperwork assigned by DHS, and other related tasks. Ex. G, ¶ 3; *see also* DE 29, ¶ 68.

Plaintiffs employed as Addiction Counselors perform job duties such as managing a caseload of clients, all of whom have problems with drug and/or alcohol addiction (a group which makes up a majority of the client population served by DHS), preparing independent living plans with each individual client with the goal of facilitating the transition to permanent housing, supporting clients with addiction issues by conducting group sessions with multiple clients to discuss addiction issues, escorting clients to treatment, ensuring that clients have travel funds to attend treatment, referring clients to medical professionals for additional services, following up with clients in carrying out the independent living plan, assisting clients in obtaining information regarding their medical needs, and documenting the work performed with clients in CARES, emails to supervisors, completing other paperwork assigned by DHS, and other related tasks. Ex. H, ¶ 3; *see also* DE 29, ¶ 80.

**B.  Plaintiffs Work Over 40 Hours Per Week Without Additional Compensation**

Plaintiffs in this action work and/or worked over 40 hours per week approximately once every four weeks, because they routinely perform their job duties before and/or after their assigned shift and during their unpaid meal periods. Ex. B-H, ¶¶ 6. All individuals employed by the City in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor are subject to the same policies and practices that require employees to perform uncompensated pre-shift, post-shift, or meal period work. Ex. B-H, ¶¶ 7-8, 14-17. This includes a policy requiring pre-approval for overtime work, pursuant to which defendant will not pay plaintiffs for overtime work that defendant has suffered or permitted plaintiffs to work absent pre-approval. DE 29, ¶¶ 13, 23, 35, 47, 59, 71, 83. In fact, Community Coordinators, Community Associates, Community Assistants, Fraud Investigators, Associate Fraud Investigators, Caseworkers, and Addiction Counselors routinely report to work early and/or stay late to perform work activities, and also perform work activities during their scheduled meal periods. Ex. B-H, ¶¶ 6-9.

Therefore, in at least thirteen weeks per calendar year, plaintiffs have worked over 40 hours and were deprived of overtime compensations and/or were improperly compensated for the overtime hours that they worked in those weeks in violation of the FLSA. Much of the work time of plaintiffs and all others similarly situated, including uncompensated work time, is recorded on defendant's computer system in the CityTime program. Ex. B-H, ¶¶ 12, 14. *See also* DE 29, ¶¶ 16-17, 26-29, 38-41, 50-53, 62-65, 74-77, 86-87 (describing specific weeks in which plaintiffs recorded work time exceeding over 40 hours in a workweek but were denied full compensation).

Pursuant to 29 U.S.C. § 207(a)(1), plaintiffs are entitled to pay at a rate not less than one and one-half times the regular rate at which they are employed for hours worked in excess of 40 per week. Therefore, when plaintiffs worked at least 40 hours per work week and also performed work tasks before the start of their shift, after the end of their shift, and during their meal periods, they were deprived of overtime compensations to which they were entitled under the FLSA.

## C.  Miscalculation of Employees' Regular Rate

Individuals in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor are eligible to receive, and have in fact received, *inter alia*, supplemental payment for hours worked in the evening as well as meal allowance payments. Ex. B-H, ¶ 16. These additional payments have not been included in the employees' regular rates of pay when overtime compensation for hours worked in excess of 40 in a workweek is paid. *Id.* All employees in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor are subject to the same pay policies and practices, with night shift differentials and meal allowances being excluded from each employees' regular rates of pay when overtime is paid to them for working in excess of 40 hours in a workweek. *Id.*

## D.  Failure to Pay Compensatory Time at a Time-And-One-Half Rate

If an employee has worked what defendant considers to be "approved overtime" which is classified as "voluntary," defendant pays plaintiffs and all others similarly situated in compensatory time rather than in cash. Ex. B-H, ¶ 15. When the City pays overtime compensation for hours worked over 40 in a workweek in compensatory time, this time is paid out at a rate of one hour of compensatory time for each hour of "voluntary" and "approved"

overtime work. *Id.* The City of New York has a policy applicable to all Community

Coordinators, Community Associates, Community Assistants, Fraud Investigators, Associate

Fraud Investigators, Caseworkers, and Addiction Counselors by which it only pays

compensatory time at straight time, and not at time and one half, on those occasions in which

plaintiffs have worked in excess of 40 hours in a workweek. *Id.*

## III.   ARGUMENT

### A.  The FLSA Provides for Collective Actions

Courts in this judicial district routinely issue notice to putative plaintiffs in FLSA actions

and conditionally certify collective actions early in litigation to ensure that affected employees

are provided with notice and an opportunity to join actions alleging FLSA overtime violations,

including a case with facts identical to the instant action. *See, e.g., Martin, et al., v. City of New

York,* No. 14-cv-8950 (TPG) (AJP), Docket Entry 30 (May 27, 2015). *See also Ramos v. PJJK

Rest. Corp.*, 2016 U.S. Dist. LEXIS 36324 (S.D.N.Y. Mar. 15, 2016) (Castel, J.); *Tubiak v.

Nielsen Co. (US), LLC,* 2016 U.S. Dist. LEXIS 23241 (S.D.N.Y. Feb. 25, 2016) (Castel, J.); *Mok

v. 21 Mott St. Rest. Corp.*, 2015 U.S. Dist. LEXIS 83420 (S.D.N.Y. Jun. 26, 2015) (Castel, J.);

*Whorley v. Jonrocman 930, LLC,* 2015 U.S. Dist. LEXIS 76580 (S.D.N.Y. Jun. 8, 2015) (Castel,

J.); *Dolinski v. Avant Bus. Serv. Corp.,* 2014 U.S. Dist. LEXIS 10326 (S.D.N.Y. Jan. 28, 2014)

(Castel, J.); *Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020 (S.D.N.Y. Sept. 27,

2013); *Gonzalez v. Scalinatella, Inc.*, 2013 U.S. Dist. LEXIS 168540 (S.D.N.Y. Nov. 25, 2013)

(Castel, J.); *Gjurovich v. Emmanuel's Marketplace*, Inc., 282 F. Supp. 2d 101 (S.D.N.Y. 2003);

*Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998).

Section 216(b) of the FLSA, which governs the requirements for a collective action,

states in pertinent part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, unlike class actions brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, where all affected individuals are bound by the suit unless they choose to opt-out, the FLSA mandates that putative class members "opt-in" as a prerequisite to obtaining relief under any pending suit. *Lee*, 236 F.R.D. at 196 ("Unlike class action suits brought pursuant to Fed. R. Civ. P. 23, only potential plaintiffs who 'opt in' may be bound by or benefit from the judgment in an FLSA collective action.") (internal citations omitted).

The Supreme Court has held that trial courts have the authority to implement the collective action provision of section 216(b) by "facilitating notice to potential plaintiffs" to allow them to opt in to the lawsuit. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Furthermore, it is appropriate for trial courts to order the defendant to produce to plaintiff the names and addresses of putative class members at this early stage of the litigation. *Hoffman-LaRoche*, 493 U.S. at 170 (affirming the district court's decision to permit discovery of putative class members for notice purposes without exploring alternative basis for the discovery); *Lee*, 236 F.R.D. at 201 ("It is well settled that courts may authorize notice when the plaintiff, as here, has demonstrated that he and potential plaintiffs are similarly situated. . . . Courts in this District previously have authorized such notice in FLSA collective actions and overseen the notice process.").

Facilitating notice serves important goals such as avoiding a multiplicity of duplicative suits and setting deadlines to expedite disposition of the action. *Hoffman-LaRoche*, 493 U.S. at 172. As the Supreme Court has explained:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [illegal] activity. These benefits, however depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate . . . . It follows, that once an [FLSA] action is filed the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.

*Hoffman-LaRoche*, at 170-71. Thus, notice fulfills the broad remedial purposes of the FLSA. *Id*. at 172.

### B.  The Burden On Plaintiffs is Minimal to Establish that Court Supervised Notice is Appropriate in FLSA Collective Actions

It is appropriate for courts to exercise their discretion to order notice where plaintiffs establish that they are similarly situated to the putative class and that together they were victims of a common plan, policy or practice that deprives them of their rights under the FLSA. 29 U.S.C. § 216(b); *Hoffman-LaRoche*, 493 U.S. at 169. "The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Realite*, 7 F. Supp. 2d at 306. Courts have developed a two-phase inquiry, which the Second Circuit has adopted, to address the question of whether plaintiffs are "similarly situated." The first phase takes place at the beginning of discovery and the second occurs after all of the opt-in forms have been received and discovery closes. *Myers v. Hertz Corp*., 624 F.3d 537, 554-55 (2d Cir. 2010) (approving of the two-step "conditional certification" method); *PAL.*, 2015 U.S. Dist. LEXIS 5279 at *2-3 (applying the two step notice and certification approach).

The Second Circuit recognizes that at the first "notice" stage, "[p]laintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one." *Lee*, 236 F.R.D. at 197. Plaintiffs must show only that "their positions are 'similar, not

identical,' to the positions held by the potential opt-in plaintiffs." *Dumitrescu*, 2008 U.S. Dist. LEXIS 49881 at *15 (citations omitted). Accordingly, while plaintiffs bear the burden of demonstrating that they are similarly situated to other potential opt-in plaintiffs, this burden is "very low" at the notice stage. *Lynch*, 491 F. Supp. 2d at 368.

Plaintiffs must only make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (*citing Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). Plaintiffs in an FLSA lawsuit can make this showing by demonstrating that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Myers*, 624 F.3d at 555 (citation omitted). This Court recognizes that plaintiffs can meet this burden based on pleadings, affidavits, and other evidence which demonstrates allegations of class-wide illegal practices. *Gaspar*, 2014 U.S. Dist. LEXIS 129856 at *10-12; *see Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009) ("[N]othing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required.") (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). Moreover, this Court has held that even a single affidavit is sufficient to make this showing. *See, e.g., e.g., Mok,* 2015 U.S. Dist. LEXIS 83420 at *3-5 (Castel, J.); *Gonzalez,* 2013 U.S. Dist. LEXIS 168540 at *5-8 (Castel, J.); *Cohen,* 686 F. Supp. 2d at 331 (Castel, J.); *see also Whorley,* 2015 U.S. Dist. LEXIS 76580 at *4 ("Without the benefit of full discovery, courts in this district have approved conditional collective action certification based on the facts alleged in the complaint and one accompanying affidavit.").

**C. Plaintiffs Have Easily Met Their Burden to Show They Are Similarly Situated by Showing that the City's Practices and Policies Violate the FLSA and Affect All Prospective Plaintiffs**

Here, plaintiffs have easily met their burden to show that they are similarly situated to the putative class, and that the class was subjected to the same willful policies and practices resulting in unpaid or improperly compensated overtime work. Plaintiffs have detailed the circumstances under which the defendant's willful policies and practices result, on a uniform basis, in nonpayment of compensation for time worked under the FLSA.

**1. Plaintiffs Have Demonstrated a Similar Factual Setting With Respect to Pay Practices and Job Requirements for the Entire Putative Class**

Plaintiffs have submitted seven declarations supporting the allegations in their First Amended Complaint (DE 29). *See* Ex. B-H. Each declarant has verified the City of New York's pay policies and practices, which include routine failure to properly pay plaintiffs for all hours worked, failure to include certain pay enhancements in their regular rate overtime calculation, failure to timely pay for overtime work, and failure to pay compensatory time at the rate of time-and-one-half for all hours worked over 40 in a workweek. *See* Ex. B-H, ¶¶ 6, 15-17. Under these policies and practices, plaintiffs and putative plaintiffs are routinely denied proper overtime compensation in violation of the FLSA. It is well established that, for purposes of Section 216(b), "[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Ayers v. SGS Control Servs.*, 2007 U.S. Dist. LEXIS 19634 at *16 (S.D.N.Y. Feb. 26, 2007) (*quoting Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). Hence, through their declarations plaintiffs have easily made the modest factual showing required under Section 216(b).

In addition, all plaintiffs and putative plaintiffs in the position of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud

Investigator, Caseworker, and Addiction Counselor are subject to the same pay practices and policies. Ex. B-H, ¶¶ 14-17.  Notably, "[c]ourts have found employees 'similarly situated' for purposes of the FLSA where they performed different job functions or worked at different locations, as long as they were subject to the same allegedly unlawful policy." *Harhash v. Infinity West Shoes, Inc.*, 2011 U.S. Dist. LEXIS 96880, at *9 (S.D.N.Y. Aug. 24, 2011); *see also Stevens v. HMSHost Corp.*, 2012 U.S. Dist. LEXIS 190689, at *21-22 (E.D.N.Y. June 15, 2012) (collecting cases). Defendant has a uniform and centralized pay system, and treats all plaintiff identically with regard to its pay policies and practices. *See* Ex. B-H, ¶¶ 14-17; *see also Martin, et al. v. City of New York.* No. 14-cv-8950 (TPG) (AJP), Docket Entry 32 (May 27, 2015). *See also* DE 29, ¶¶ 16-17, 26-29, 38-41, 50-53, 62-65, 74-77, 86-87 (describing specific weeks in which plaintiffs in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor recorded work time exceeding over 40 hours in a workweek but were denied full compensation for that work). The mechanism through which all plaintiffs were deprived of their rights under the FLSA was the same for all plaintiffs and putative plaintiffs.

Moreover, as detailed *supra,* this Court previously certified a putative class involving the exact same job titles in *Martin, et al. v. City of New York.* No. 14-cv-8950 (TPG) (AJP), Docket Entry 30 (May 27, 2015). In conditionally certifying the collective action, the Court held that even where specific job duties for each of the covered positions may be different, the City applies the same payroll practices and procedures regarding the payment of overtime to all individuals in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction

Counselor. *Id.,* Docket Entry 32 (Transcript of May 27, 2015 Proceedings).[4] Accordingly, it is undisputed – even by the City itself – that the plaintiffs are similarly situated at least with regards to payment of overtime. *Id.*

Indeed, many of the overtime violations alleged by plaintiffs are systematic errors readily apparent in defendant's payroll records. All of the plaintiffs, regardless of job category, are subject to the City's policy and practice of failing to pay plaintiffs for recorded hours worked pre-shift and post-shift, miscalculating the rate at which overtime is paid by failing to include the night shift differential and meal allowance, and they are subject to the City's policy of failing to pay for all hours worked in excess of 40 in a workweek at the rate of time-and-one-half regardless of whether that time is paid in compensatory time or cash. Ex. B-H, ¶¶ 14-17. For example, uncompensated pre-shift and post-shift work hours are actually recorded in defendant's timekeeping system as either "Uncompensated Hours" or "Noncompensable Hours." *See, e.g.,* DE 29, ¶¶ 16-17, 26-29, 38-41, 50-53, 62-65, 74-77, 86-87 (describing examples of weeks in which plaintiffs recorded work time which was not compensated). These systematic violations are not unique, but are instead the result of a City-wide policy governing all plaintiffs and those who are similarly situated.  Not only do the attached plaintiffs' declarations establish these violations, but defendants' payroll records will readily establish such violations for each putative class member who opts into this action. Thus, because plaintiffs are all subject to the same pay policies and practices, they are similarly situated to each other and the putative class.

### 2.   *Plaintiffs Have Raised the Same Legal Issues for the Entire Class*

The same legal issues and the same facts related to defendants' unlawful pay practices exist for the entire class.

---

[4]       The transcript of the May 27, 2015 proceedings in *Martin* is attached hereto as Exhibit I.

a.  <u>Uncompensated Work</u>

Defendant has a common policy and practice under which plaintiffs and those similarly situated work without compensation prior to their scheduled shift, after their scheduled shift, and during their unpaid meal periods. Ex. B-H, ¶¶ 6-9; *see also* DE 29, ¶¶ 16-17, 26-29, 38-41, 50-53, 62-65, 74-77, 86-87. Defendant also has a common policy and practice of requiring pre-approval for overtime work, or it will not pay for it; although defendant permits employees in the positions at issue here to work overtime during their meal periods and before the official start time of their shifts. This results in plaintiffs working outside of their scheduled shifts without compensation. DE 29, ¶¶ 13, 23, 35, 47, 59, 71, 83. Employers are required to pay employees covered by the FLSA one-and-one-half times the employee's regular rate for all hours they suffer or permit employees to work in a workweek in excess of 40 in a workweek. 29 U.S.C. §§ 203(g), 207(a). In the present case, plaintiffs' declarations, as well as their payroll records, establish that they perform work activities outside of their regularly scheduled shifts and during their lunch breaks, which results in plaintiffs working for over 40 hours per week. *See* Ex. B-H, ¶ 6. Defendant's failure to pay plaintiffs for this work time violates the FLSA.

Moreover, as noted above, defendant's policy and practice is to record pre-shift and post-shift time in the CityTime system as "uncompensated hours" or "noncompensable hours." This time is denoted as such simply because it has not been pre-approved, despite the fact that plaintiffs have been "suffered" or "permitted" to work such time in accordance with the FLSA. *See* 29 U.S.C. § 203(g) (defining "employ" as "to suffer or permit to work"); *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 289 (2d Cir. 2008) (noting that an employer may not avoid its obligations under the FLSA if employees "voluntarily engage in inadequately compensated work"); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) ("[O]nce an employer

knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours."). By recording their work hours in the City's timekeeping system, the City is on notice that plaintiffs are performing work outside of their regularly scheduled shifts.

b.  Regular Rate

Employers are required to pay employees covered by the FLSA one-and-one-half times the employee's "regular rate" for all hours worked in a workweek in excess of 40. 29 U.S.C. § 207(a). As the Supreme Court has stated, "[t]he keystone of Section 7(a) is the regular rate of compensation. On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). Failure to include all types of compensation in the regular rate results in workers being shortchanged and paid overtime at a rate lower than that which is owed.

The FLSA requires that an employer include all remuneration for employment in an employee's regular rate for the purpose of calculating overtime except for certain narrow exceptions specifically set forth in the statute. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108. The statutory exclusions are limited to items such as gifts, discretionary bonuses, pension contributions, and payments for certain periods where no work is performed. These exceptions are to be "narrowly construed against the employer asserting them" and their application limited to payments "plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

In the present case, because night shift differential and meal allowances do not fall within the FLSA's specifically-enumerated exclusions, they must be included in defendant's

employees' regular rates of pay for the calculation of overtime. Indeed, the Department of Labor regulations themselves specifically identify night shift differential, which is provided as an incentive to encourage employees to work during less desirable hours, as a type of payment that must be included in the regular rate at which employees are paid overtime. 29 C.F.R. § 778.207(b) (*"Nonovertime premiums.* The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour). . . ."). Nevertheless, defendant has a common policy and practice of failing to include these premiums in the regular rate at which overtime is paid for all plaintiffs and putative plaintiffs in violation of the FLSA. *See* Ex. B-H, ¶ 16; DE 29, ¶¶ 90-91.

      c.  <u>Late Payment of Overtime</u>

Defendant has a common practice of violating the prompt payment requirements of the FLSA by failing to pay employees in a timely manner for their overtime work. *See* 29 C.F.R. § 778.106 ("Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and ***in no event may payment be delayed beyond the next payday*** after such computation can be made."); *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998) (discussing FLSA's prompt payment requirement); *Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 136 n.4 (3d Cir. 1999) (finding that prompt payment is required under the FLSA because "to hold otherwise would negate [the FLSA's] overtime provisions"). Plaintiffs' declarations, as well as their payroll records, demonstrate that when they receive cash overtime payments these payments are often delayed beyond the pay period after the work is performed and in which it can be computed. *See* Ex. B-H, ¶ 17; *see also* DE 29, ¶ 93.

Defendant's practice, which applies to all plaintiffs and those similarly situated, violates the plain language of the FLSA's regulations.

      d.  <u>Compensatory Time Paid at a Straight Time Rate</u>

Under the FLSA, public employers are permitted to provide compensatory time as in lieu of cash for overtime pay, but must pay this time at the rate of one and one-half hours of compensatory time for each hour worked over 40 in a workweek. 29 U.S.C. § 207(o)(1) ("Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate *not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section*.") (emphasis added); 29 C.F.R. § 553.22(b). Defendant has violated the plain language of the statute by awarding plaintiffs compensatory time only at a straight-time rate when plaintiffs work over 40 hours in a week. All plaintiffs and putative plaintiffs in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, and Caseworker are subject to this same policy and practice, which violates the FLSA. Ex. B-H, ¶ 15; DE 29, ¶ 92.

**D. This Court Previously Granted Conditional Certification to Employees Holding the Exact Same Positions Employed By The Same Defendant in *Martin, et al. v. City of New York,* Case No. Case No. 14-cv-8950**

As discussed *supra,* in an earlier case, this Court previously certified a collective action for individuals employed by DHS in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor in *Martin, et al. v. City of New York*. *See* Case No. 14-cv-8950 (TPG) (AJP), DE 30 (May 27, 2015). In that case, the Court held that individuals in each of these

positions at DHS was similarly situated to all others holding these same positions because the applicable facts relating to the payment of overtime by the City were common to all putative class members. Ex. I (Docket Entry 32, Transcript of May 27, 2015 Proceedings). In fact, despite any differences in the plaintiffs' job duties, the court agreed with plaintiffs in finding that the City has a common policy and practice of "shortchanging" individuals in the covered positions by failing to properly calculate and pay overtime compensation for hours worked in excess of 40 in a workweek. *Id.*

The declarations submitted by the plaintiffs in the instant case—including that of two plaintiffs who were also plaintiffs in *Martin*—involving the same employer, identical facts, and identical job titles demonstrate that the City has not fixed any of the overtime issues complained of in *Martin*. *See* Ex. E, H ¶ 18; *see also, generally,* Ex. B-D, F-G. Therefore, this Court must certify a collective action to ensure that these issues are properly addressed and finally rectified. Indeed, it would be inconsistent for this Court to fail to conditionally certify a collective action here when it so readily did so only a few years ago in *Martin.*

## IV.   PLAINTIFFS' PROPOSED NOTICE

Plaintiffs have attached a proposed notice to be sent to putative plaintiffs who have worked as Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker and Addiction Counselor for the City of New York within the last three years to inform them about the instant case and to provide them with an opportunity to join opt-in. This proposed notice is attached as Exhibit A. The form is standard in that it informs the plaintiffs about the allegations in the Complaint, states that the court is not taking a position on plaintiffs' allegations, and acknowledges that the defendant denies the allegations. *See Delaney v. Geisha NYC*, LLC, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)

(noting that court-supervised notice should provide "'accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate'") (quoting *Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)). It is the same form the Court approved in *Martin.* The only difference between this notice and the one approved in *Martin* is that certain job titles included in *Martin* do not appear because they are not at issue in this case.

## V.        CONCLUSION

Through their declarations and through this Court's ruling in *Martin,* plaintiffs have made the requisite modest factual showing that the City of New York has implemented, and continues to enforce, policies and practices that deprive employees in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor employed by the City's Department of Homeless Services of overtime compensation to which they are entitled to be paid under the FLSA. Accordingly, plaintiffs respectfully request that this Court: (1) authorize this case to proceed as a collective action; (2) order the defendants, within twenty (20) days, to provide plaintiffs' counsel with the names, last known addresses, and e-mail addresses of all eligible employees who have worked for the City of New York's Department of Homeless Services in the positions of Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, and Addiction Counselor at any time since October 14, 2013; and (3) direct the issuance of plaintiffs' proposed notice, attached as Exhibit A**,** to all prospective class members.

Dated: February 1, 2017                    Respectfully submitted,


                                           */s/ Gregory K. McGillivary*___
                                           Gregory K. McGillivary
                                           David Ricksecker
                                           Sarah M. Block
                                           WOODLEY & McGILLIVARY LLP
                                           1101 Vermont Ave., N.W.
                                           Suite 1000
                                           Washington, DC 20005
                                           Phone: (202) 833-8855
                                           E-mail: gkm@wmlaborlaw.com
                                           E-mail: dr@wmlaborlaw.com
                                           E-mail: smb@wmlaborlaw.com

                                           Hope Pordy
                                           SPIVAK LIPTON LLP
                                           1700 Broadway
                                           Suite 2100
                                           New York, NY 10019
                                           Phone: (212) 765-2100
                                           E-mail: hpordy@spivaklipton.com