# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE MURRAY, <br> BENNETH EKWEGBALU, <br> ERIK GIORDANO, <br> ASHLEY HAMILTON, <br> VALENTYNA MASYK, <br> JASMINE MCNEILL, <br> ROSEDI MORALES, <br> WAYNE NEAL, <br> EMMETT SEALEY, <br> PAUL SINGH, and <br> ALLEN STEVENS, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF NEW YORK, NEW YORK, <br><br> Defendant. | No. 16-cv-8072 (PKC) <br><br> (JURY TRIAL DEMANDED) |

### DECLARATION OF MONIQUE MURRAY

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1.  I am currently employed by the New York City Department of Homeless Services ("DHS") in the position of Community Coordinator. I have held this position since my date of hire in February 2013.

2.  While working as a Community Coordinator, I have been assigned to two different DHS facilities. From February 2013 to approximately July 2014, I was assigned to the DHS facility located at 33 Beaver St., New York, NY 10004. From approximately July 2014 to approximately February 2016, I was assigned to the DHS facility located at 39 Auburn Place,

Brooklyn, NY 11205. In approximately February 2016, I was again assigned to the DHS facility located at 33 Beaver St.

3. Generally, my job duties as a Community Coordinator involve serving New York City's homeless population. Specifically, my job duties include but are not limited to assisting with and troubleshooting the work of Community Associates and Community Assistants, conducting intake interviews of potential clients, reviewing information provided by potential clients and comparing this information to DHS requirements to determine whether individuals will be referred for further assessment of housing eligibility, working with clients to determine their needs and assisting clients in meeting those needs, and inputting information obtained from clients into a system called CARES, an intra-Agency computer program used to track information about clients and the services provided by DHS employees.

4. Based on my knowledge and experience, while the specific daily tasks or cases assigned to a Community Coordinator may vary slightly from person to person, the job duties of all Community Coordinators employed by DHS are the same as those described in Paragraph 3 above.

5. While working for DHS in the position of Community Coordinator, my assigned schedule has been 9 am to 5 pm, Monday through Friday. This shift includes a one-hour, unpaid meal period.

6. I often perform work activities, including but not limited to those described in Paragraph 3, before my scheduled shift, after my scheduled shift, and during my one-hour unpaid meal periods. On average, I perform work activities during my unpaid meal period approximately 3 days per week. As a result, I routinely work over 40 hours in a workweek but I am not properly compensated for this time.

7.     Based on my knowledge and experience, Community Coordinators working for DHS have similar schedules and work similar hours.

8.     When I perform work activities before the start of my shift, after the end of my scheduled shift, and during my one-hour unpaid meal period, I do so because I have a large volume of work that must be completed and I cannot complete all of my assigned work during my scheduled 7 hour shift.

9.     Based on my experience and observation, all Community Coordinators employed by DHS perform similar pre-shift and/or post-shift tasks, including but not limited to the tasks described in Paragraph 3, after logging into CityTime but before their paid shift start time and/or after their paid shift time ends but before they log out of CityTime, without compensation.

10.    My supervisors and managers know that other Community Coordinators and I regularly perform the unpaid pre-shift and/or post-shift tasks described in Paragraph 3 because this time is recorded in CityTime as "Uncompensated Hours" or "Noncompensable Hours." Additionally, my supervisors and managers see me and my colleagues performing this work outside of our scheduled shifts.

11.    While my scheduled shift includes a one-hour unpaid duty free meal period, I do not take a full, duty free hour approximately 3 times per week. When working through my unpaid meal period, I continue performing my regular job duties, including but not limited to those tasks described in Paragraph 3.

12.    My supervisors and managers know that other Community Coordinators and I regularly perform work activities, including but not limited to those tasks described in Paragraph 3, during our one-hour unpaid meal period, because they see me at my work station during my

scheduled lunch. Additionally, work on my computer can be tracked by looking at computer log-in times, e-mail, and the Connections system.

13. Based on my experience and observations, all Community Coordinators employed by DHS perform tasks, including but not limited to those tasks described in Paragraph 3, during their scheduled one-hour, unpaid meal period.

14. Based on my knowledge and experience, the City has a policy and practice by which it fails to pay employees at DHS, including but not limited to Community Coordinators, for all hours of work in excess of 40 in a workweek. The City maintains this practice despite the fact that most of my time is tracked on the City's timekeeping system.

15. I often receive compensatory time in lieu of cash for overtime which the City has designated as "approved" and "voluntary." However, based on my knowledge and experience, the City has a policy and practice of paying compensatory time for hours worked in excess of 40 in a workweek at a rate of one hour of compensatory time for each hour of "approved" and "voluntary" overtime work, or a "straight time" rate.

16. Employees of DHS, including but not limited to Community Coordinators, are eligible to receive and did receive payments in addition to my base salary, including night shift differentials and meal allowances. These pay enhancements are often earned during weeks in which I and other Community Coordinators work in excess of 40 hours in a workweek. Based on my knowledge and experience, the City has a policy and practice of excluding these additional payments when calculating the regular rate at which overtime is paid. Instead, any overtime payment is calculated using only the hourly rate based on my base salary.

17. When I received overtime payment in cash, the City often delayed the payment of overtime beyond the next pay period after I worked the overtime. Based on my knowledge and

experience, the City has a policy and practice that is applicable to all DHS employees, including but not limited to Community Coordinators, by which it regularly delays the payment of overtime.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the following is true and correct:

Date: 12/12/16

_____
Monique Murray