# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE MURRAY,<br>BENNETH EKWEGBALU,<br>ERIK GIORDANO,<br>ASHLEY HAMILTON,<br>VALENTYNA MASYK,<br>JASMINE MCNEILL,<br>ROSEDI MORALES,<br>WAYNE NEAL,<br>EMMETT SEALEY,<br>PAUL SINGH, and<br>ALLEN STEVENS,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF NEW YORK, NEW YORK,<br><br>　　　　　Defendant. | No. 16-cv-8072 (PKC)<br><br>(JURY TRIAL DEMANDED) |

### DECLARATION OF JASMINE MCNEILL

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. I am currently employed by the New York City Department of Homeless Services ("DHS") in the position of Associate Fraud Investigator. I have held this position since approximately December 2008.

2. While working as an Associate Fraud Investigator since at least 2013, I have been assigned to the DHS Prevention Assistance and Temporary Housing (PATH) facility located at 151 E. 51st St., Bronx, NY 10451.

3. Generally, my job duties as an Associate Fraud Investigator involve serving New York City's homeless population. Specifically, my job duties include but are not limited to

performing intake duties for incoming clients, reviewing cases based on information provided by other Fraud Investigators and Associate Fraud Investigators, visiting residences with Fraud Investigators, making eligibility determinations regarding clients' housing needs, and managing a high volume caseload with the goal of ensuring all eligible clients applying for housing are placed in shelters in a timely manner.

4. Based on my knowledge and experience, while the specific daily tasks or cases assigned to an Associate Fraud Investigator may vary slightly from person to person, the job duties of all Associate Fraud Investigators employed by DHS are the same as those described in Paragraph 3 above.

5. While working for DHS in the position of Associate Fraud Investigator, my assigned schedule has been 9 am to 5 pm, Sunday through Thursday. This shift includes a one-hour, unpaid meal period.

6. I often perform work activities, including but not limited to those described in Paragraph 3, before my scheduled shift, after my scheduled shift, and during my one-hour unpaid meal periods. On average, I perform work activities during my unpaid meal period an average of 2-3 times per week. As a result, I routinely work over 40 hours in a workweek but I am not properly compensated for this time.

7. Based on my knowledge and experience, Associate Fraud Investigators working for DHS have similar schedules and work similar hours.

8. When I perform work activities before the start of my shift, after the end of my scheduled shift, and during my one hour unpaid meal period, I do so because I have a large volume of work that must be completed and I cannot complete all of my assigned work during my scheduled shift.

9. Based on my experience and observation, all Associate Fraud Investigators employed by DHS perform similar pre-shift and/or post-shift tasks, including but not limited to the tasks described in Paragraph 3, after logging into CityTime but before their paid shift start time and/or after their paid shift time ends but before they log out of CityTime, without compensation.

10. My supervisors and managers know that other Associate Fraud Investigators and I regularly perform the unpaid pre-shift and/or post-shift tasks described in Paragraph 3 because this time is recorded in CityTime as "Uncompensated Hours" or "Noncompensable Hours." Additionally, my supervisors and managers see me and my colleagues performing this work outside of our scheduled shifts.

11. While my scheduled shift includes a one-hour unpaid duty free meal period, I do not take a full, duty free hour approximately 2-3 times per week. When working through my unpaid meal period, I continue performing my regular job duties, including but not limited to those tasks described in Paragraph 3.

12. My supervisors and managers know that other Associate Fraud Investigators and I regularly perform work activities, including but not limited to those tasks described in Paragraph 3, during our one-hour unpaid meal period, because they see me at my work station during my scheduled meal period or speak to me over the phone during that time. Additionally, work on my computer can be tracked by looking at computer log-in times and e-mails.

13. Based on my experience and observations, all Associate Fraud Investigators employed by DHS regularly perform tasks, including but not limited to those tasks described in Paragraph 3, during their scheduled one-hour, unpaid meal period.

14. Based on my knowledge and experience, the City has a policy and practice by which it fails to pay employees at DHS, including but not limited to Associate Fraud Investigators, for all hours of work in excess of 40 in a workweek. The City maintains this practice despite the fact that most of my work time is tracked on the City's timekeeping system.

15. I often receive compensatory time in lieu of cash for overtime which the City has designated as "approved" and "voluntary." However, based on my knowledge and experience, the City has a policy and practice of paying DHS employees, including but not limited to Associate Fraud Investigators, compensatory time for hours worked in excess of 40 in a workweek at a rate of one hour of compensatory time for each hour of "approved" and "voluntary" overtime work, or a "straight time" rate.

16. Employees of DHS, including but not limited to Associate Fraud Investigators, are eligible to receive and did receive payments in addition to my base salary, including night shift differentials and meal allowances. These pay enhancements are often earned during weeks in which I and other Associate Fraud Investigators work in excess of 40 hours in a workweek. Based on my knowledge and experience, the City has a policy and practice of excluding these additional payments when calculating the regular rate at which overtime is paid. Instead, any overtime payment is calculated using only the hourly rate based on my base salary.

17. When I received overtime payments in cash, the City often delayed the payment of overtime beyond the next pay period after I worked the overtime. Based on my knowledge and experience, the City has a policy and practice that is applicable to all DHS employees, including but not limited to Associate Fraud Investigators, by which it regularly delays the payment of overtime.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the following is true and correct:

Date: 11/23/16

Jasmine McNeill