# Exhibit I

                                                              1

         F5rWmarC


    1    UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF NEW YORK
    2    ------------------------------x

    3    STEVE MARTIN, et al.,

    4                    Plaintiffs,

    5            v.                         14 Civ. 8950 (TPG)(AJP)

    6

         CITY OF NEW YORK, NEW YORK,
    7                                       Telephone Conference

    8                    Defendant.

    9    ------------------------------x
                                            New York, N.Y.
    10                                      May 27, 2015
                                            3:30 p.m.
    11
         Before:
    12
                         HON. ANDREW J. PECK,
    13
                                            Magistrate Judge
    14

    15                        APPEARANCES

    16   WOODLEY & McGILLIVARY LLP
              Attorneys for Plaintiffs
    17   BY:  GREGORY K. McGILLIVARY, Esq.
              DIANA J. NOBILE, Esq.
    18
         ZACHARY W. CARTER, Corporation Counsel
    19   of the City of New York
              Attorney for Defendant
    20   BY:  ANDREA M. O'CONNOR, Esq.
              SEAN R. RENAGHAN, Esq.
    21       YUVAL RUBINSTEIN, Esq.

    22

    23

    24

    25


                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                        2
        F5rWmarC

1              (In chambers)

2              THE COURT:  This is Judge Peck.  Please state your

3       names for the court reporter, and each time you speak, begin

4       with who is speaking.

5              MR. McGILLIVARY:  This is Greg McGillivary,

6       representing the plaintiffs.  With me is Diana Nobile from the

7       law firm of Woodley & McGillivary.

8              MR. RENAGHAN:  This is Sean Renaghan from the New York

9       City Law Department, representing defendant.

10             MR. RUBINSTEIN:  Yuval Rubinstein.  Good afternoon,

11      your Honor.  Yuval Rubinstein, for the New York City Law

12      Department, also representing the defendant.

13             MS. O'CONNOR:  Andrea O'Connor, also from the New York

14      City Law Department, for the defendant.

15             THE COURT:  Mr. Rubinstein, I don't think we have your

16      appearance.

17             MR. RUBINSTEIN:  Yes.  I will be entering my notice of

18      appearance shortly, your Honor.  I apologize for that.

19             THE COURT:  No problem.  Two things I want to do with

20      all of you today are deal with the fully briefed motion for

21      conditional certification.  I have reviewed it.  I'm familiar

22      with the law in this area, having written on it before.  My

23      inclination is to grant conditional certification.  I have some

24      issues as to whether certain job titles are indeed exempt or if

25      that is really disputed.  If there is any argument you want to

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

3

F5rWmarC

```
 1    make in general, I have, as I say, read all the papers.
 2              MR. McGILLIVARY:  Your Honor, with respect to the
 3    issue of certain jobs potentially being exempt, I think that
 4    that is appropriate at this time.  It's an affirmative defense
 5    by the defendants, of course, they would have the burden of
 6    proving.  We also point out that all of the people in the
 7    positions that we've listed in the notice are subject to
 8    exactly the same payroll practices and policies.  And, finally,
 9    we also note that they're all in the same collective bargaining
10    unit represented by the same union which would be an indication
11    that they're not in managerial jobs.
12              THE COURT:  I guess the question that I have, and it
13    appears from the affidavits that your clients have submitted
14    that people such as assistant superintendent of welfare, which
15    sounds like a high-level title, and as I say, at least one of
16    the affidavits in these job titles that the defense says are
17    exempt, clearly said they were getting overtime in that
18    position, while in another one it was unclear whether the
19    overtime they were getting was in that position or their prior
20    position at DHS that was a lower level.  Are you representing
21    that your client, who is an assistant superintendent of welfare
22    or a superintendent of adult institutions, both of which sound
23    like managerial-level titles, were indeed getting some
24    overtime, comp time or other overtime?
25              MR. McGILLIVARY:  Yes, your Honor.  In fact, they were
```

Case 1:16-cv-08072-PKC   Document 34-9   Filed 02/01/17   Page 5 of 24

4

F5rWmarC

1   being paid exactly the same as they received overtime and they

2   received it in exactly the same manner as all of the employees,

3   including the ones in the custodial type positions.  They all

4   received it in the exact same manner and in the same way that

5   violates the Fair Labor Standards Act.

6           THE COURT:  Let me hear from the city on this.

7           MS. O'CONNOR:  Your Honor, counsel is correct that it

8   is an affirmative defense with respect to the exemption issue.

9   But, as your Honor pointed out, these high-level titles that

10  it's defendant's position are managerial are so dissimilar from

11  the other titles that are at issue in the case that they should

12  not be a part of the collective, nor should plaintiff's counsel

13  be permitted to circulate a notice that would include them.

14  They're part of the case now as counsel has named them as

15  individually named plaintiffs, so they're in the case.

16  However, if the Court is inclined to grant the motion for

17  conditional certification, the notice should not include these

18  titles as they are so dissimilar from the other five titles

19  that are at issue in the case.

20          THE COURT:  But isn't that an issue that might have to

21  do with subclasses, so to speak, although this is not the Rule

22  23 motion under the New York Labor Law, there is no New York

23  Labor Law claim, but a collective action notice?  We already

24  have at least one person in each of these titles who may well

25  be dissimilar to the people in the lower-level titles, but at

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F5rWmarC

1    the low, prediscovery threshold under the Fair Labor Standards

2    Act for a collective action, how am I to parse that out?

3              MS. O'CONNOR:  Actually, the five exempt titles, yes,

4    it's not a Rule 23, we're not going to have subclasses.  I

5    think even with the low threshold for FLSA cases for

6    conditional certification, at least with respect to these five,

7    they don't even meet that low threshold.  One of the factors is

8    that they have to be similarly situated with respect to their

9    payrolls.  Here, yes, they are covered by the same collective

10   bargaining agreement, but they are not subject to the same

11   payrolls as the five titles that are covered because they are

12   entitled to additional payments under the Fair Labor Standards

13   Act that the other five are not.

14             THE COURT:  Hold on.

15             MS. O'CONNOR:  -- same payroll despite the fact that

16   they're covered by the same collective bargaining agreement.

17             THE COURT:  Hold on a minute.  Are you suggesting that

18   if this case were split into two lawsuits that the categories

19   that you agree are nonexempt categories were in one lawsuit and

20   they brought a separate action on behalf of assistant

21   superintendent and superintendent and the other categories,

22   associate fraud investigator, etc., that you believe are

23   exempt, then they would all be similar within that lawsuit?

24             MS. O'CONNOR:  I think that they would be similar.  I

25   think that they would be similar with respect to the payrolls.

6

F5rWmarC

```
 1    I do not believe that they would still be similar with respect
 2    to job duties.  Even within the five titles that are nonexempt,
 3    they still perform varying job functions.  I think with respect
 4    to the claim of the misclassification claim, it would make it
 5    somewhat cleaner in terms of litigating a misclassification
 6    issue, essentially, if there were two separate cases of
 7    bifurcating the misclassification case in terms of liability
 8    and then it may be damages in terms of just ease of litigation,
 9    just litigating that misclassification issue first.  I don't
10    concede, however, that the five titles that are nonexempt
11    perform similar duties such that they even belong in the same
12    collective, regardless.
13            THE COURT:  All right.  Go ahead.
14            MR. McGILLIVARY:  The only difference, and I believe
15    defendant admitted this, the only difference in how they're
16    paid, there really is no difference in actually how they are
17    paid.  The only difference the defense can point to is they
18    claim that five of the groups are exempt, but they're not paid
19    any differently by the defendant at all and the violations of
20    the Fair Labor Standards Act are identical.  Moreover, it's
21    hard to believe by the job title, although the exemption
22    determinations aren't made on job title, that a fraud
23    investigator or an assistant fraud investigator would somehow
24    fall within one of the exemptions of the Fair Labor Standards
25    Act at all.  So they're just making these assertions with no
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

F5rWmarC

1    proof and this isn't the appropriate stage at which to make

2    that sort of determination.

3          THE COURT:  All right.  I think I've heard enough and

4    I am granting the motion, including all of the categories that

5    the defendant claims are exempt.  I am mostly citing to my

6    decision in Spencer v. No Parking Today, Inc., 2013 WL 1040052,

7    obviously Southern District of New York, March 15, 2013,

8    affirmed previously by Judge Carter, and the cases cited

9    therein, in particular, summarizing the law briefly, courts in

10   the Second Circuit employ a two-step method for certification

11   of collective actions under Section 216(b); that is to say,

12   under the Fair Labor Standards Act.  The first step involves

13   the court making an initial determination to send notice to

14   potential opt-in plaintiffs who may be similarly situated to

15   the named plaintiffs with respect to whether an FLSA violation

16   has occurred.  The purpose of the first step is merely to

17   determine whether similarly situated plaintiffs do, in fact,

18   exist.  Thus, although neither the FLSA nor its implementing

19   regulations define similarly situated, to carry their burden at

20   this stage, the plaintiffs need only make a modest factual

21   showing that they and potential opt-in plaintiffs together were

22   victims of a common policy or plan that violated the law.

23   While that modest factual showing cannot be satisfied simply by

24   unsupported assertions, it may be satisfied by the plaintiffs'

25   own pleadings, affidavits and declarations, including any

F5rWmarC

1    hearsay statements contained therein, and during this initial

2    step, the court doesn't resolve factual disputes, decide

3    substantive issues going to the ultimate merits, or make

4    credibility determinations.  If the plaintiffs demonstrate that

5    similarly situated employees exist, the court may conditionally

6    certify the class, order that appropriate notice be provided to

7    the putative class members, and the action should continue as a

8    collective action throughout the discovery process.  Because

9    this standard at the first stage is fairly lenient, courts

10   applying it typically grant conditional certification.

11        The second step applies after discovery is complete,

12   and at that point, the court will on a fuller record determine

13   whether a so-called collective action may go forward by

14   determining whether the plaintiffs who have opted in are, in

15   fact, similarly situated, and the action may be decertified, so

16   to speak, if the record after discovery reveals that they are

17   not and that the opt-in plaintiffs' claims can then be

18   dismissed without prejudice.  That is the more stringent

19   standard, and we are at the first step here, not the second.

20        The plaintiffs have submitted affidavits from

21   themselves showing that for all of these categories, both the

22   ones that defendants say are managerial and exempt and the ones

23   that everybody admits are nonexempt, the way overtime and

24   related payment methods occur, and particularly among other

25   things the shortchanging allegation with respect to

9

F5rWmarC

1    compensatory-time overtime is common for all of these classes.

2    It may be that after discovery, the Court will have to

3    decertify as to the employee classifications that are found to

4    be managerial and/or otherwise exempt from the FLSA, but that

5    is not appropriate at this stage.  Accordingly, I find that the

6    plaintiffs have met their very lenient burden for conditional

7    certification and certify as requested.

8            Now, with respect to the notice, let's deal with that.

9    I just need a moment to find the attachment to all these papers

10   that is the notice.

11           As to the email issue, taking it in somewhat random

12   order, based on the arguments, at this stage, the defendants

13   are to provide name and mailing address.  If and when mailings

14   get returned, then we will see what email addresses are

15   appropriate.

16           As to the discovery notice that the defendant wants, I

17   think that's unnecessary and is perhaps designed to convince

18   people not to opt in, so I'm not going to require that change,

19   but I will obviously tell plaintiffs' counsel that opt-in

20   plaintiffs, unlike class members in a Rule 23 class, are actual

21   plaintiffs and they will indeed be required to participate in

22   appropriate discovery.  If they don't, they will be dismissed,

23   and that dismissal may well be with prejudice, not without

24   prejudice.  But I'm not going to require that that be put in

25   the notice.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F5rWmarC

1          The other issue was the paragraph the defendant wanted

2     about their defenses.  What page was that on your brief,

3     Ms. O'Connor?

4          MS. O'CONNOR:  That's on page 19, your Honor.

5          THE COURT:  Thank you.  Since the collective action

6     notice is going to broader titles than what you have in your

7     paragraph, is there any point in your paragraph versus the

8     paragraph that is here, the paragraph being a single sentence

9     at the very end of section 2?

10          MS. O'CONNOR:  I'm pulling up plaintiffs' counsel's

11     original notice.  I would want the inclusion.  We can amend the

12     paragraph that's on page 19 of defendant's opposition to the

13     motion to just say defendants maintain that all employees

14     employed by the City of New York, and then to go on and

15     continue as stated, and that would encompass anyone who would

16     join the lawsuit.

17          THE COURT:  It's not just the City of New York.  It's

18     at Department of Homeless Services.

19          Putting aside the last sentence, are plaintiffs

20     willing to take that modification, first sentence?

21          MR. McGILLIVARY:  Yes, your Honor.

22          THE COURT:  Now, as to the last sentence, what are

23     your views on the plaintiffs' side?

24          MR. McGILLIVARY:  I think it's inappropriate,

25     particularly the "as soon as possible."  We think it's

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

F5rWmarC

1    threatening and it's unnecessary.

2            THE COURT:  I agree.  One other change that I want,

3    even though you all haven't dealt with it, 90 days for the

4    opt-in is clearly excessive and I think it should be either 45

5    or 60.  What are your 'druthers on that?  Let's start with the

6    plaintiff.

7            MR. McGILLIVARY:  We would, of course, prefer 60 days

8    because in our experience, this group of plaintiffs do not

9    really have a tremendous amount of interaction at the

10   workplace, and in our experience, people talk about the case,

11   etc., and that's when they actually realize they need to open

12   the mail, and it takes a bit of time, and the homeless services

13   workers are the sort who do not interact tremendously at the

14   workplace and when they're done with their workday, they're out

15   of there very quickly, for understandable reasons.

16           THE COURT:  You realize, as plaintiffs, that the flip

17   of that is that that means there will have to be a longer

18   discovery period, which is to say obviously if somebody who

19   opts in on the last day, the defendants will have an

20   opportunity to take discovery about those people, and that will

21   make it a longer time period before you can get the case to

22   motion practice or trial.

23           MR. McGILLIVARY:  Yes, your Honor.  I do agree with

24   you that 90 days is excessive, but 60 days, I think, is fine.

25   I'm not going to quibble over 45, if you think that's

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

12

F5rWmarC

1    appropriate.  It's not a tremendous difference.

2            THE COURT:  Any view from the city?

3            MS. O'CONNOR:  Forty-five days is fine for us.

4            THE COURT:  All right.  Forty-five days it is, since

5    the plaintiffs are willing to accept that.

6            How soon can you get the name and address information?

7            MS. O'CONNOR:  Your Honor, we would be going back

8    three years from the date of the filing of the complaint?

9            THE COURT:  Yes.

10           MS. O'CONNOR:  Just a point of clarification for the

11   notice, the notice would be circulated just to the titles

12   enumerated in the complaint?  Because defendants in their

13   opposition objected to the phrase "related occupations for the

14   City of New York at any of its Department of Homeless Service

15   facilities"; I don't know how expansive that view is.  We

16   obviously take the position that the notice should be limited

17   to the exact title enumerated in the complaint and not

18   unspecified related occupations.

19           THE COURT:  Mr. McGillivary?

20           MR. McGILLIVARY:  We agree with that, your Honor.  One

21   of the reasons we have that language in the notice is so that

22   plaintiffs, when they read it, if they're called something

23   else, even though their official job title might be community

24   associate but they are called custodian at the homeless

25   shelter, they don't get confused and think, Oh, I'll ask

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

F5rWmarC

1    around, and they won't think they're prohibited from

2    participating.

3            THE COURT:  With that clarification, how soon can you

4    provide the information?

5            MS. O'CONNOR:  With those ten titles going back three

6    years, 30 days.

7            THE COURT:  Can you do it faster?  I know it's the

8    city and you're a bureaucracy.  Nevertheless, certainly current

9    employees should be pretty much a no-brainer.

10           MS. O'CONNOR:  Current employees should be easier.

11   I'm just looking at the calendar.  Today is the 27th.  Could we

12   have three weeks from today, until June 17?

13           THE COURT:  How about June 15?

14           MS. O'CONNOR:  We can do that, your Honor.

15           THE COURT:  Mr. McGillivary, are you going to be

16   mailing this yourself, or are you using one of the service

17   entities?

18           MR. McGILLIVARY:  We have a mailing service and that

19   will take them about five days to do.

20           THE COURT:  All right.  Presumably by no later than

21   June 22, it will be mailed out.  Correct?

22           MR. McGILLIVARY:  Correct, your Honor.

23           THE COURT:  Good.  Also, the motion requested a

24   tolling of the statute of limitations.  I see nothing that

25   would qualify here different than any other FLSA collective

14

F5rWmarC

1    action case to justify or require that, and that request is

2    denied.

3              Any other issues about the notice from either side?

4              MR. McGILLIVARY:  Not from the plaintiffs, your Honor.

5              MS. O'CONNOR:  None from defendant, your Honor.

6              THE COURT:  Good.  Now, with that in mind, what are

7    your views on how much time you need for discovery?  We'll

8    start with the plaintiffs.

9              MR. McGILLIVARY:  From the plaintiffs, your Honor,

10   what we would hope is that we could reach a joint stipulation

11   regarding the use of test plaintiffs and we can work on that

12   really right away.  The only thing we'll need to know to

13   actually finalize that is how many people have opted in, and

14   we've reached the joint stipulation with the city.  We did it

15   in the Mullins case, which you successfully mediated to

16   settlement, with the NYPD sergeant.  We did it recently with

17   two other groups of employees, job occupational specialists and

18   child protective service workers and also with the paramedics

19   and EMTs.  We're confident that will be the first thing to get

20   done and make sure that the minute we have the universe we can

21   pick the test plaintiffs and get into discovery, and then we

22   think discovery should take about six to nine months from

23   there.

24             THE COURT:  I recognize you have a lot of plaintiffs

25   already and six to nine months is particularly long in my

15

F5rWmarC

1    courtroom.  I'm not inclined to go there.  I mean, I'd be

2    willing to give you a short period to try to negotiate

3    something with the city, except that when we tried to get you

4    in tomorrow or next week, everybody was conflictingly

5    unavailable, which is why we're doing it on the phone today.

6    Frankly, I'm not sure, considering how many named plaintiffs

7    there are, that you don't have enough to design test

8    plaintiffs, etc., start discovery, albeit you may need to add

9    some from the opt-ins.

10         What's the city's view?

11         MS. O'CONNOR:  Your Honor, counsel's correct in that

12   we've reached a discovery stipulation in prior cases and

13   pending cases that have worked to streamline discovery to the

14   extent possible.  The difference with this case is that we have

15   ten different titles.  In the other cases, we had a maximum of

16   two, and so it was much easier to select test plaintiffs in

17   that we didn't have to account for whether or not the test

18   plaintiffs were representative of multiple titles.  Here, we're

19   going to have to ensure that whatever random sample we select

20   isn't, in fact, representative of all the titles and that all

21   titles are proportionally represented in the test plaintiffs'

22   pool.  As your Honor said, in order to do that, we can start on

23   it now, however, we're not going to know the complete universe

24   of plaintiffs until after the opt-in period, and that will

25   affect the proportions of what titles are identified as test

F5rWmarC

1    plaintiffs.  We may have ten fraud investigators as test

2    plaintiffs and only two case workers because that's how the

3    proportions of the plaintiffs play out.  So in terms of

4    agreeing to a discovery stipulation before we know the pool of

5    plaintiffs, it will be difficult, unless, of course, it's

6    subject to modification pending the close of the opt-in period.

7            THE COURT:  I would rather you all start discovery now

8    and modify -- really, it's 45 days to the notice plus 15 or 20

9    while you're getting the lists together -- rather than wait 60

10   days and then start, particularly since I think some of the

11   discovery will be from DHS regardless of how many plaintiffs

12   there are for each job title and the discovery going to

13   individual plaintiffs, whether of them or of DHS about them, I

14   think you can start all of that.  And decide that you have too

15   many named plaintiffs in title 1 and not enough in title 3 and,

16   therefore, for those you're going to use opt-ins or whatever.

17   If I gave you a week or two to come up with something and

18   report back to me, would that work?

19           MS. O'CONNOR:  Yes, your Honor.

20           MR. McGILLIVARY:  Yes, your Honor, and I actually have

21   to admit to not being smart enough to think that we had so many

22   named plaintiffs we could really get going on those quickly.  I

23   think that's an excellent idea.

24           THE COURT:  How about a written, hopefully joint,

25   report by June 10, maybe sooner, eighth; what's your pleasure?

F5rWmarC

1          MR. McGILLIVARY:  The eighth would work for the

2    plaintiffs, your Honor.

3          MS. O'CONNOR:  The eighth is fine also.

4          THE COURT:  Written report to be received by the

5    eighth by the Court, and let me be clear.  Somebody said six to

6    nine months.  You'll be lucky if you get six starting at June

7    8.  I suspect you've been in front of me, as Mr. McGillivary

8    said, on settlement, not necessarily on discovery.  Read my

9    rules.  I run a self-proclaimed rocket docket, so if you

10   propose something reasonable with the ability to deal with

11   changes in it when the opt-in period closes, it's a democracy:

12   You each get a vote, I get three votes, so use your votes well

13   and we'll see where we go from there.

14         One or two other questions from my side of things and

15   then I'll let you raise anything else you want to raise.

16   First, you've all referred to the CBA.  Is the union involved

17   in this, behind this?  Is something that the Court does,

18   assuming the plaintiffs prevail in some way, going to wind up

19   conflicting with the CBA or other union requirements or just

20   benefit the union members?  Should they be involved officially

21   in some way?

22         For all I know, they're the people who hired you,

23   Mr. McGillivary, but what's the union role, if any?

24         MR. McGILLIVARY:  The union role is that they're, I

25   guess the best way to put it would be a cheerleader for us.

18

F5rWmarC

1    We've been in contact with them and they helped set up some

2    meetings and things like that, but they are not paying us or

3    funding it or anything like that.  But there shouldn't be any

4    conflict with the collective bargaining agreement at all.  The

5    collective bargaining agreement, of course under the law, has

6    to at least meet the minimal standards of the Fair Labor

7    Standards Act and it can't conflict, not that it does conflict,

8    it just isn't being implemented properly.

9            THE COURT:  Ms. O'Connor, any views from the city?

10           MS. O'CONNOR:  None contrary to what plaintiffs'

11   counsel has indicated.

12           THE COURT:  That was item one.  Item two, you all have

13   the option, pursuant to 28 U.S. Code Section 636(c), to have

14   the case in front of me for all purposes instead of divided

15   between me and Judge Griesa.  It requires both sides to say

16   yes.  If one of you says yes and the other says no or I don't

17   know or I've got to run it up the flagpole, or whatever, until

18   there are two yeses, you're in front of me subject to having

19   rights to take objections to Judge Griesa.  I suspect you need

20   to talk to higher-ups at the law department at least.  Shall we

21   leave it that when you all report back on June 8 you will also

22   report as to the parties' respective views on the 636(c)

23   consent?

24           MS. O'CONNOR:  Yes, your Honor.  That's fine.  We can

25   give that indication in the June 8 letter.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F5rWmarC

1          THE COURT:  And do it via either "attached is the

2     signed consent form" or "the parties do not consent" if one or

3     more of you have decided not to consent or "the parties are

4     still considering it" if that's where you wind up.  But the

5     rules say I'm not supposed to know who said yes and who said

6     no.  Frankly, I don't care.  You're with me for what you're

7     with me for, and it is what it is.

8          Are you all thinking about, if not actively pursuing,

9     when you want to talk settlement and how you want to do that?

10          MR. McGILLIVARY:  Your Honor, we would want to get the

11     payroll data, because a lot of this case is driven by that.

12     It's actually going to be in the pay records, and so once we

13     receive that for all of the plaintiffs, we can do our own

14     preliminary calculations and that would be a good time to talk

15     about settlement.

16          THE COURT:  All right.  All of you keep in mind that

17     99 percent of cases in federal court never get to trial; they

18     either settle or get knocked out on a motion.  You can go to

19     the Southern District mediation program if you want to do that.

20     You can have a settlement conference in front of me.  If you're

21     consenting to have the case in front of me for all purposes,

22     although there is a jury trial request, then you can either

23     have the settlement conference in front of me or in front of

24     one of my magistrate judge colleagues, if you'd rather not be

25     in front of the trial judge.  And, of course, third, you can

F5rWmarC

1    spend some money and go out to the usual for-pay ADR services.

2    But since, as you all know, under the FLSA, if plaintiffs

3    prevail, they're entitled to attorney's fees, you obviously

4    jointly have an interest in resolving it sooner rather than

5    later.

6         I'm not going to set another conference date with you

7    now.  Once I see your June 8 report, we'll set up regular

8    status conferences every 30 or 45 days, or thereabouts, but

9    make sure to read my rules.  Any time you have an issue, just

10   write a letter via ECF and tell me what help you want,

11   preferably after conferring with the other side.

12   Alternatively, when we've set up conference dates in the event

13   there are no disputes, you're on track for whatever the

14   discovery deadline is and there is nothing to talk about on

15   settlement, you can jointly, and I emphasize jointly but not

16   singly, ask to have the conference adjourned, again, either by

17   letter or by calling my secretary, and nine times out of ten,

18   we grant that, but the conference is not adjourned until you

19   get either verbal assurance from my staff or a written order of

20   some sort.  If one party tries to postpone the conference and

21   does not represent that it's on consent of the other side,

22   generally the conference will not be postponed because it's

23   been my practice that the party seeking the postponement is

24   probably in default of some obligation to the other side.

25        Any issues, questions, anything from either of you?

F5rWmarC

```
 1              MR. McGILLIVARY:  Nothing from the plaintiffs, your

 2      Honor.

 3              MS. O'CONNOR:  Nothing from defendant.

 4              THE COURT:  Two last points.  The original ECF has

 5      Rachel Cartwright as being involved in the case for the law

 6      department.  Is she still with you all?

 7              MS. O'CONNOR:  She is not, your Honor.

 8              THE COURT:  You might want to notify the ECF system,

 9      but I've now taken her off of my list.

10              It is my practice to have court reporters at all

11      conferences.  The transcript is the Court's order, and I guess

12      I will state this time and not repeat in the future, you should

13      all know, pursuant to 28 U.S. Code 636 and Federal Rule of

14      Civil Procedure 72, you have 14 calendar days to file

15      objections to any of my rulings.  File the objections with

16      Judge Griesa with a copy to me.  Failure to do so constitutes a

17      waiver of any such objections.  Moreover, filing of objections

18      does not stay any order unless you ask me for and get a stay

19      from me, and the 14 days starts immediately from any conference

20      like this, telephonic or in person, regardless of how soon you

21      actually obtain the transcript.  And it is my practice to have

22      the parties jointly purchase the transcript of each conference,

23      and that results in a 50/50 split of the cost.  In this case,

24      since you're on the phone, you can go to the Web site,

25      www.sdreporters.com, SD as in Southern District.
```

22

F5rWmarC

```
1              With that, unless anyone has a last question about any
2    of that, we would be adjourned.
3              MS. O'CONNOR:  Nothing from defendant, your Honor.
4              MR. McGILLIVARY:  Thank you, your Honor.
5              THE COURT:  We are adjourned.  Thank you, all.
6              (Adjourned)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```