UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MONIQUE MURRAY, SUZETTE COLES,
BENNETH EKWEGBALU, ERIK GIORDANO,
ASHLEY HAMILTON, VALENTYNA MASYK,
JASMINE MCNEILL, ROSEDI MORALES,
WAYNE NEAL, EMMETT SEALEY, PAUL
SINGH and ALLEN STEVENS,

                    Plaintiffs,                        16-cv-8072 (PKC)

     -against-                            MEMORANDUM
                                               AND ORDER

CITY OF NEW YORK, NEW YORK,

                    Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs are employees of the Department of Homeless Services ("DHS"), which

is an agency of defendant City of New York (the "City"). They allege that the City violated the

protections of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., by failing to pay

overtime wages, delaying payment of overtime wages and allotting insufficient compensatory

time for overtime work.

        Two motions have been filed in this case. First, the City moves to partially

dismiss the First Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6), Fed. R. Civ.

P. (Docket # 35.) The City argues that certain individual plaintiffs have not plausibly alleged

that they were personally denied the FLSA's protections related to differential pay for nightshift

work, the calculation of compensatory time and the timely payment of overtime wages.

Separately, plaintiffs have moved for conditional certification as a collective action under the

FLSA, 29 U.S.C. § 216(b). (Docket # 33.)

The Court addresses each motion in turn. For the reasons that will be explained, the City's partial motion to dismiss is granted. Separately, because the plaintiffs' motion for conditional certification cites broadly to the knowledge, observations and experiences of the plaintiffs, and offers no facts concerning the experiences of similarly situated employees, their motion for conditional certification as a collective action is denied.

## I. THE CITY'S PARTIAL MOTION TO DISMISS IS GRANTED.

### A. Background.

For the purposes of deciding this motion to dismiss, all non-conclusory factual allegations are accepted as true, and all inferences are drawn in favor of plaintiffs. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiffs are employees of the DHS, which is a City agency. (Compl't ¶¶ 5, 7.) Plaintiffs have assorted job titles and responsibilities within the DHS, and they are respectively employed at different DHS facilities located throughout the City. (Compl't ¶ 7.) Their job titles include community coordinator, community associate, community assistant, fraud investigator, associate fraud investigator, caseworker and addiction counselor. (Compl't ¶¶ 10-89.) The Complaint sets forth allegations about the work responsibilities of each plaintiff, and identifies specific instances where they allegedly did not receive overtime wages. (Compl't ¶¶ 10-89.) The City does not currently dispute that plaintiffs are covered employees under the FLSA.

The Complaint brings four counts that assert violations of the FLSA. Count I alleges that plaintiffs did not receive time-and-a-half compensation for overtime hours and that they were not paid for work performed during meal shifts. (Compl't ¶¶ 94-99.) The City does not move to dismiss any aspect of this claim.

Count II alleges that the City violated the FLSA by incorrectly calculating the overtime wages of DHS employees who worked during nightshifts. (Compl't ¶¶ 100-04.) The DHS pays a "nightshift differential" of 10% above the basic pay rate when employees work more than one hour between 6 p.m. and 8 a.m. (Compl't ¶ 90.) Plaintiffs are also paid a meal allowance of between $8.25 and $12.75 when they work at least two consecutive hours of approved overtime. (Compl't ¶ 90.) According to the Complaint, during weeks in which DHS employees work more than 40 hours, the City does not include the nightshift differential or the meal allowance when calculating overtime pay. (Compl't ¶ 91.)

Count III of the Complaint alleges that during weeks in which DHS employees worked more than 40 hours, some of the time worked may be considered "approved overtime" and classified as "voluntary." (Compl't ¶¶ 92, 105-10.) In such situations, DHS employees are paid in compensatory time instead of wages, at a rate of one hour of compensatory time for every overtime hour worked. (Compl't ¶ 92.) The Complaint alleges that, pursuant to the FLSA, employees are entitled to receive one-and-one-half hours of compensatory time for every hour of overtime worked. (Compl't ¶ 113.)

Count IV alleges that when the DHS pays overtime wages, the DHS "sometimes delays the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours." (Compl't ¶¶ 93, 111-15.) According to the Complaint, the delay occurs because management fails to transmit information in a timely fashion, or, alternatively, because the DHS does not want to incur the cost of paying overtime in a particular financial quarter. (Compl't ¶ 93.)

B.  Rule 12(b)(6) Standard.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them.  Id.  Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  The Complaint must include non-conclusory factual allegations that "nudge[ ]" its claims "across the line from conceivable to plausible."  Id. at 680 (quoting Twombly, 550 U.S. at 570).

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)).  A plaintiff must allege that he or she actually worked in excess of 40 hours per week, and must allege the denial of overtime wages for time worked above the 40-hour mark.  Id. at 114-15.  For example, it is insufficient to allege that a plaintiff "occasionally" worked more than 40 hours per week, without identifying "how occasionally or how long" and specifically alleging the denial of overtime pay.  Id.  Similarly, allegations that "could theoretically" allege hours "over the 40-hour mark in one or another unspecified week (or weeks)" does not plausibly allege a FLSA claim.  Id. at 115.  See also Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013) ("To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of

their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.").

C. <u>Discussion.</u>

    1.  Only Plaintiff Sealey Alleges that His Overtime Pay Did Not Account for a <u>Nightshift Differential.</u>

Under the FLSA, an employee is to be paid overtime wages "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207(a)(1). "The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials . . . ." 29 C.F.R. § 778.207(b).

Of the eleven plaintiffs, only Emmett Sealey specifically alleges that he was denied overtime pay that was owed to him by virtue of the nightshift differential. (Compl't ¶ 91.) According to the Complaint, during the pay period that ended on August 6, 2016, Sealey was paid a nightshift differential of 10% for his hourly pay and meal allowance. (Compl't ¶ 91.) However, "none of these payments were included in the regular rate at which defendant paid him overtime compensation for that pay period." (Compl't ¶ 91.)

The Complaint does not allege that any other plaintiff worked overtime hours that were covered by the nightshift differential. Plaintiffs' opposition memo asserts that "the plaintiffs identified specific weeks that the defendant failed to include meal payment and night shift differential in overtime pay" (Pl. Mem. at 9), but the allegation that they cite in support involve the delayed payment of overtime wages generally, and does not refer to overtime hours covered by the nightshift differential (Compl't ¶ 93). This is insufficient to allege a FLSA violation. <u>See</u> <u>Lundy</u>, 711 F.3d at 115 (allegations that "could theoretically" assert hours "over the 40-hour mark in one or another unspecified week (or weeks)" does not plausibly allege a FLSA claim).

Plaintiffs argue that <u>Lundy</u> does not require individualized allegations as to each plaintiff in a multi-plaintiff FLSA complaint. They cite to <u>Perry v. City of New York</u>, 2013 WL 6641893, at *3 (S.D.N.Y. Dec. 17, 2013) (Furman, J.), which concluded that certain categories of plaintiffs plausibly alleged a violation of overtime laws by claiming that they worked 40-hour weeks for 35 weeks a year, plus additional uncompensated time "on a daily basis." Judge Furman concluded that <u>Lundy</u> did not require the 2,511 individual plaintiffs to allege the exact instances where they did not receive overtime pay. <u>Id.</u> at *4. In this case, by contrast, plaintiffs allege claims for three specific, factually distinct sub-categories of FLSA protections relating to overtime work, including the alleged failure to factor in the nightshift differential for overtime pay. A plaintiff who does not allege the performance of any work that falls within the nightshift differential has failed to state a FLSA claim based on the differential.

Plaintiff Sealey plausibly alleges that he was denied overtime pay that should have been calculated to include the nightshift differential pursuant to 29 C.F.R. § 778.207(b). No other plaintiff alleges the denial of overtime pay based on the failure to incorporate a nightshift differential. To the extent that any plaintiff other than Sealey purports to bring a claim based on a failure to account for a nightshift differential, it is dismissed.

2. Only Plaintiffs Hamilton and Maysk Allege that They Did Not Receive Sufficient Compensatory Time.

By statute, certain municipal employees "may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section." 29 U.S.C. § 207(o)(1). According to the Complaint, the City violated the FLSA because it gave plaintiffs one hour of compensatory time in exchange for every

overtime hour, as distinguished from the one-and-one-half hours required by the statute. (Compl't ¶ 92.)

The Complaint alleges that in weeks when plaintiffs work more than 40 hours, and some of the time exceeding 40 hours "includes what the defendant considers to be 'approved overtime' and is classified as 'voluntary,' plaintiffs are paid in compensatory time rather than cash." (Compl't ¶ 92.) The Complaint specifically alleges that two named plaintiffs, Ashley Hamilton and Valentyna Maysk, were paid in compensatory time at the rate of one hour for each hour of overtime worked. (Compl't ¶ 92.) The Complaint identifies the weeks in which these two plaintiffs worked "voluntary" overtime, the amount of overtime that they worked, and the amount of compensatory time that they received. (Compl't ¶ 92.)

But the Complaint makes no such allegations for any other plaintiff. It alleges: "During all workweeks in which the plaintiffs work over 40 hours and some of this time above 40 hours includes what the defendant considers to be 'approved overtime' and is classified as 'voluntary,' plaintiffs are paid in compensatory time rather than cash. . . . When Defendants pays [sic] plaintiffs in compensatory time for hours worked in excess of the 'cap,' Defendant provides compensatory time at the rate of one hour of compensatory time for each overtime worked." (Compl't ¶ 92.)

This level of generality does not satisfy the FLSA pleading standards set forth by Lundy, 711 F.3d at 114-15. Aside from Hamilton and Maysk, the Complaint makes no allegations as to any individual plaintiff's payment in compensatory time. The Complaint does not identify which plaintiffs were paid in compensatory time, identify a workweek where they were paid in compensatory time or expressly allege that received compensatory time that fell below the FLSA's prescribed rate. At most, the Complaint alleges that, at certain unidentified

points, some unidentified plaintiffs who worked more than 40 hours in a given week were sometimes paid in compensatory time. (Compl't ¶ 92.) This is insufficient to allege a FLSA violation. See Lundy, 711 F.3d at 115.

Plaintiffs' claims directed to compensatory time are therefore dismissed as to all plaintiffs but Hamilton and Maysk.

### 3. Only Plaintiff O'Neill Alleges the Delayed Payment of Overtime Wages.

Pursuant to regulation, an employer must pay overtime wages "as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 C.F.R. § 778.106.

The Complaint alleges that when the City pays plaintiffs overtime wages, it "sometimes delays the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours." (Compl't ¶ 93.) It alleges that delays occur either because managerial staff fail to timely transmit payroll information, or, alternatively, because the City does not want to incur overtime costs in a particular financial quarter. (Compl't ¶ 93.) The Complaint alleges that plaintiff Jasmine O'Neill worked at least one hour of overtime beyond her scheduled shift on February 29, 2016, and that she was not paid for this time until April 8, 2016. (Compl't ¶ 93.)

The Complaint makes no such allegation as to any other plaintiff. The Complaint alleges that the City "sometimes delays" payment of overtime wages to the next, succeeding pay period, but it does not specifically connect delayed payment to any plaintiff other than O'Neill. The allegation that the City "sometimes delays" payment does not plausibly allege that any

plaintiff personally experienced such a delay, and does not allege a cause of action under <u>Lundy</u>, 711 F.3d at 115.

Plaintiffs' claim directed to a delay in the payment of overtime wages is therefore dismissed as to all plaintiffs but O'Neill.

## II. LEAVE IS GRANTED TO FILE A MOTION TO AMEND THE COMPLAINT.

In a letter-brief dated August 9, 2017, plaintiffs seek leave to file a Second Amended Complaint that proposes to incorporate additional facts learned in discovery. (Docket # 53.) Plaintiffs assert that, based on payroll and timekeeping records obtained from the City, they can supplement their allegations to add additional, specific facts sufficient to show that each individual plaintiff was deprived of overtime wages reflecting a nightshift differential, was not allotted sufficient compensatory time and was not timely paid overtime wages. In effect, plaintiffs urge that an amended complaint will cure the above-discussed pleading deficiencies.

Plaintiffs may file a motion to amend their complaint no later than August 23, 2017. Their motion shall annex a Proposed Second Amended Complaint. Defendant may file a response no later than August 30, 2017, and plaintiffs may file a reply no later than September 8, 2017.

## III. PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION IS DENIED.

"The FLSA permits employees to create a collective by opting-in to a backpay claim brought by a similarly situated employee. 29 U.S.C. § 216(b). The unique FLSA collective differs from a Rule 23 class because plaintiffs become members of the collective only after they affirmatively consent to join it." <u>Glatt v. Fox Searchlight Pictures, Inc.</u>, 811 F.3d 528, 540 (2d Cir. 2016). Certification of a collective action is determined by a two-step method. "The first step involves the court making an initial determination to send notice to potential opt-

in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). Plaintiffs must "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Id. (quotation marks omitted). Plaintiffs' showing "cannot be satisfied simply by 'unsupported assertions.'" Id. At the same time, plaintiffs are held to "a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Id.

"In making this showing, plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members." Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (Marrero, J.) (collecting cases). A single affidavit from a single plaintiff may suffice, provided that it contains sufficient detail about the plaintiff's observations, conversations and experiences involving similarly situated employees. See Mata v. Foodbridge LLC, 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) (Ramos, J.).

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555.

Seven plaintiffs have submitted declarations in support of the motion for conditional certification. (Docket # 34 Exs. B-H.) These declarants held various job titles at the DHS and were assigned to different DHS facilities. (See id.) The seven declarations use

overbroad, virtually identical language to describe why the declarants believe that similarly situated employees have been denied the protections of the FLSA.

The Court has reviewed all seven declarations but will address herein the declaration of plaintiff Monique Murray as an exemplar of the other six similar declarations. Murray states that she has the job title of community coordinator, and that she has been assigned to work in two different DHS facilities since she began her employment in 2013. (Murray Dec. ¶ 2.) Murray describes her duties as including intake interviews and reviewing information provided by potential clients. (Murray Dec. ¶ 3.)

Murray states that she has a formal work schedule of 9 a.m. to 5 p.m., including one hour of unpaid meal time. (Murray Dec. ¶ 5.) Outside of her formal schedule, she "often perform[s] work activities" before and after her shift, and over her unpaid meal break. (Murray Dec. ¶ 6.) She states, "On average, I perform work activities during my unpaid meal period approximately 3 days per week. As a result, I routinely work over 40 hours in a workweek but I am not properly compensated for this time." (Murray Dec. ¶ 6.) Murray states that she performed these tasks after logging into the City's time-recording system, CityTime, but before and after her paid shifts. (Murray Dec. ¶ 9.)

Although Murray has described her own work responsibilities and compensation, the descriptions of similarly-situated employees are overbroad and conclusory in nature. Her declaration repeatedly invokes "knowledge and experience" or "experience and observations" regarding other employees, with no factual elaboration. (Murray Dec. ¶¶ 4, 7, 9, 13-15.) It cites Murray's "knowledge and experience" for the assertion that community coordinators "have similar schedules and work similar hours." (Murray Dec. ¶ 7.) Murray states that based on her "experience and observation, all Community Coordinators employed by DHS perform similar

pre-shift and/or post-shift tasks . . . without compensation." (Murray Dec. ¶ 9.) She also states, "Based on my experience and observations, all Community Coordinators employed by DHS perform tasks . . . during their scheduled, one-hour, unpaid meal period." (Murray Dec. ¶ 13.) She invokes "knowledge and experience" to assert that "the City has a policy and practice by which it fails to pay employees at DHS, including but not limited to Community Coordinators, for all hours of work in excess of 40 in a workweek." (Murray Dec. ¶ 14.) She states that "based on my knowledge and experience, the City has a policy and practice" of paying compensatory time at a rate of one hour for each "approved" hour of overtime worked. (Murray Dec. ¶ 15.)

These invocations of "knowledge and experience" and "experience and observations" do not make out a minimal showing that similarly situated employees were subject to a common policy or practice. Murray does not identify what experience, knowledge or observations support her conclusion that "all" community coordinators performed pre-shift and post-shift tasks without compensation, worked through meal breaks without compensation or were denied overtime pay for "all" hours of work in excess of 40 per workweek. (Murray Dec. ¶¶ 7, 9.) Indeed, Murray's declaration does not even offer enough detail to make the modest showing that other community coordinators at the facilities where she has been employed are similarly situated. The tasks and work hours could certainly vary between DHS facilities and individual employees.

The six other declarations suffer the same shortcoming. The declarations of Ashley Hamilton, Emmett Sealey, Erik Giordano, Jasmine McNeill, Allen Stevens and Suzette Coles broadly reference knowledge, observations and experience to assert that "all" employees with their same job titles were required to work through meal periods, perform uncompensated pre- and post-shift tasks, and the like. But the declarants do not identify facts that they observed,

knew and experienced beyond their own circumstances.  Between them, the declarations do not cite specific observations of other employees' work hours or pay.

        In support of their motion, plaintiffs argue that "it is eminently reasonable to expect that employees would observe their colleagues at work" and therefore have knowledge "about the general practices of their employer."  (Reply at 4.)  But a "[p]laintiff must offer actual evidence of a factual nexus between his own experience and the experiences of those he claims as 'similarly situated,' rather than mere conclusory allegations."  <u>Mata</u>, 2015 WL 3457293, at *2 (quotation marks omitted).  When a declarant cites to observations of a common policy or practice, "information regarding 'where or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process.'"  <u>Id.</u> at *4 (quoting <u>Sanchez v. JMP Ventures, L.L.C.</u>, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (Forrest, J.)).  A declaration or affidavit that is "self-focused" and fails to describe the experiences of other employees does not make out the modest showing required for conditional certification.  <u>See</u> <u>Hypolite v. Health Care Servs. of N.Y. Inc.</u>, 2017 WL 2712947, at *7 (S.D.N.Y. June 23, 2017) (denying conditional certification where "[t]he plaintiff's declaration and pleadings are self-focused; they offer no nonspeculative basis to assess the defendants' compensation practices with respect to any other [employee].") (Koeltl, J.); <u>Islam v. BYO Co. (USA)</u>, 2017 WL 2693717, at *6-7 (S.D.N.Y. June 20, 2017) (bare assertions of "conversation" and "understanding" do not make a showing of a common pay policy); <u>Fu v. Mee May Corp.</u>, 2016 WL 1588132, at *4 (S.D.N.Y. Apr. 20, 2016) ("Put simply, Plaintiffs cannot rest on the claim that all potential opt-ins 'would be subject to essentially the same factual and employment settings' . . . .") (Failla, J.); <u>Fernandez v. Sharp Mgmt. Corp.</u>, 2016 WL 5940918, at *3 (S.D.N.Y. Oct. 13, 2016) (denying certification when plaintiffs do not "articulate

any basis for their knowledge" that other employees were denied overtime pay) (Netburn, U.S.M.J.); <u>Reyes v. N.Y. F&B Servs. LLC</u>, 2016 WL 796859, at *4 (S.D.N.Y. Feb. 22, 2016) (Swain, J.) ("Plaintiffs have failed to offer, for instance, any explanation as to the basis of their knowledge of other employees' compensation, and thus have not demonstrated that other classes of employees were 'similarly situated' to themselves.").

Plaintiffs also argue that "the types of violations at issue here . . . clearly are policies applicable to all employees within DHS" because of the City's computerized timekeeping system. (Reply at 5.) But it does not necessarily follow that because the City uses a standard time-recording system, plaintiffs' own experiences necessarily reflect a DHS policy, as opposed to individual workplace experiences.

Because the plaintiffs have not come forward with facts showing that similarly situated DHS employees subject to a common policy in violation of the FLSA, their motion for conditional certification is denied.

CONCLUSION

The defendant's partial motion to dismiss is GRANTED. (Docket # 35.) Plaintiffs' motion for conditional certification is DENIED. (Docket # 33.) The Clerk is directed to terminate the motions.

Plaintiffs may file a motion to amend their complaint no later than August 23, 2017. Their motion shall annex a Proposed Second Amended Complaint. Defendant may file a response no later than August 30, 2017, and plaintiffs may file a reply no later than September 8, 2017.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 16, 2017