Index No. 16 Civ. 8072 (PKC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONIQUE MURRAY, *et al.*,

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

**ZACHARY W. CARTER**
*Corporation Counsel of the City of New York*
Attorneys for Defendant
100 Church Street - Room 2-102
New York, NY 10007-2601

*Of Counsel:* John Corbin Carter
*Tel: (212) 356-2078*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS..................................................................................4

ARGUMENT

     POINT I

          DEFENDANT'S SUMMARY JUDGMENT
          MOTION SHOULD BE GRANTED.........................................................5

          A.   Applicable Legal Standard.................................................................5

          B.   Plaintiff's Off The Clock Claim Fails As A
              Matter Of Law...................................................................................6

              1.   Knowledge Of The Performance Of
                  Uncompensated Work Is A Prerequisite
                  To A Finding Of Liability For An Off The
                  Clock Claim..................................................................6

                  a.   As a Matter of Law, an Employer does
                      not have Actual or Constructive
                      Knowledge of Time Spent Working
                      that was Not Reported Pursuant to its
                      Procedures.........................................................7

                  b.   Plaintiffs Failed to Provide Defendant
                      with the Required Notice that They
                      Performed Uncompensated Work......................................10

              C.   Plaintiffs' Delayed Payment Claims Fail as a
               Matter of Law...................................................................................14

             D.   Plaintiffs' Regular Rate and Straight Time
               Claims Fail as a Matter of Law .......................................................15

             E.   Liquidated Damages are Not Recoverable as a
               Matter of Law Because Defendant Acted in
               Good Faith .......................................................................................16

               1.   The City Demonstrated Subjective Good
                    Faith ..........................................................................16

        2.   Defendant's Conduct Was Objectively Reasonable.............................................................................19

   F.   The Statute of Limitations Should be Restricted to Two Years...........................................................................19

CONCLUSION.................................................................................................22

## PRELIMINARY STATEMENT

Plaintiffs in this action are 483 current and former employees of the New York City Department of Homeless Services ("DHS") where they worked in the civil service titles of (1) Community Coordinator, (2) Community Associate, (3) Community Assistant, (4) Fraud Investigator, (5) Associate Fraud Investigator, (6) Caseworker, or (7) Addition Treatment Counselor (collectively "The At-Issue Titles") at some point between October 14, 2013 and the present. Generally, Plaintiffs allege that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") because (i) Plaintiffs were not compensated for all time worked ("Off the Clock Claim"); (ii) Defendant improperly calculated the regular rate of pay ("Regular Rate Claim"); (iii) overtime compensation was not paid to them in a timely manner ("Delayed Payment Claim"); and (iv) Plaintiffs were improperly paid straight time for compensatory time, instead of at a premium rate ("Straight Time Claim").

On August 16, 2017, the Court denied Plaintiffs' motion for conditional certification as a collective under the FLSA, finding that "plaintiffs ha[d] not come forward with facts showing that similarly situated DHS employees subject to a common policy in violation of the FLSA." See ECF No. 57. Plaintiffs filed a Second Amended Complaint ("SAC") – the operative complaint in this action – on October 24, 2017. See Ex. ECF No. 69.

At the outset of discovery, the Court approved a joint discovery stipulation by which the parties jointly selected 38 randomly selected plaintiffs to serve as "Discovery Plaintiffs" for written, electronic, and deposition discovery, constituting a wide swath of plaintiffs in varying titles and work locations. See ECF No. 51. Of these initial 38 Discovery Plaintiffs, 9 Plaintiffs failed to comply with deposition notices, and were replaced with 9 jointly selected second-phase Discovery Plaintiffs. Of the 9 second-phase Discovery Plaintiffs, 3 failed to comply with deposition notices. By the close of discovery, Defendant had deposed and

received discovery materials from 35 Discovery Plaintiffs. On January 24, 2019, the Court ordered the parties to each move for summary judgment as to seven of these Discovery Plaintiffs. See ECF No. 103.

Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to Discovery Plaintiffs Nadir Ahmed, Penniellen Bergholz, Gloria Brown, Darek Clark, Amada Flynn, Alicia Jackson, and Steven McNeil (collectively, for purposes of this motion, the "Plaintiffs"). An examination of Plaintiffs' purported damages reveals that all seven Plaintiffs do not actually allege each of the above allegations. The below chart contains each claim that the respective Plaintiffs are alleging, based upon their own 2-year statute of limitation damage assessment. As this chart makes clear, none of the seven Plaintiffs purport to have any Delayed Payment or Straight Time claims under the proper 2-year statute of limitation; four of the seven Plaintiffs purport to have no Regular Rate claim; three of the seven Plaintiffs purport to have no Off the Clock claims based upon pre-shift or post-shift work; and one Plaintiff, Gloria Brown, does not purport to have any damages related to the applicable period whatsoever:

| Plaintiff Name | Off the Clock (Meal Periods) | Off the Clock (Pre/Post Shift) | Regular Rate | Delayed Payment | Straight Time |
|---|---|---|---|---|---|
| Ahmed | X | X | X | - | - |
| Bergholz | X | X | X | - | - |
| Brown | - | - | - | - | - |
| Clark | X | - | - | - | - |
| Flynn | X | X | X | - | - |
| Jackson | X | - | - | - | - |
| McNeil | X | X | - | - | - |

With respect to Plaintiffs' Off the Clock Claim, it is undisputed that Plaintiffs know that, in order to be paid overtime, they must submit a request for overtime compensation and, in fact, submitted such requests. From October 14, 2013 to September 8, 2018, Plaintiffs reported to Defendant that they worked over 1,102 hours of overtime. Plaintiffs reported these 1,102hours of overtime to Defendant by submitting 300 separate requests for overtime pay which resulted in Plaintiffs being paid $10,556 in cash overtime and 319 hours in compensatory time. Despite these requests and payments, Plaintiffs' Off the Clock Claim seeks damages for overtime allegedly worked but undisputedly never reported to Defendant.

Defendant is entitled to summary judgment on Plaintiffs' Off the Clock Claims because, as a matter of law, an employer does not suffer or permit work where, as here, the employer (i) establishes procedures for employees to record their time; (ii) asks employees to certify that the time they submit is accurate; and (iii) pays employees for the time reported and certified. Here, Plaintiffs consistently failed to (i) record minutes allegedly worked in excess of their regular schedule as overtime and/or (ii) request overtime compensation for such time, in contradiction to DHS policy and the very certification they signed each week. Despite these failures, Plaintiffs now seek to hold Defendant liable for overtime they, admittedly, never reported as time worked. As evidenced by the case law cited below, the law does not require employers to "ferret out" time supposedly worked but not reported.

Defendant is entitled to summary judgment on Plaintiffs' Delayed Payment Claims because Plaintiffs have adduced no admissible evidence of any alleged "delayed" payments, and Plaintiffs' own damages calculations list all seven Plaintiffs as having no Delayed Payment damages. In fact, during the relevant time period, and utilizing Plaintiffs' arbitrary 35-day standard, overtime cash payments were received within 35 days of the date they were earned

on 100% of occasions by Plaintiffs. Similarly, Defendant is entitled to summary judgment on Plaintiffs' Straight Time Claims because Plaintiffs have adduced no admissible evidence of any miscalculation of their compensatory time calculations, and Plaintiffs' own damages calculations list all seven Plaintiffs as having no Straight Time Claim damages.

Defendant is also entitled to summary judgment with respect to Plaintiffs' Regular Rate Claims. Plaintiffs' own damages calculations list Plaintiffs Brown, Clark, Jackson, and McNeil as having no Straight Time Claim damages. Plaintiffs allege that Defendant failed to properly calculate the regular rate at which overtime compensation is paid by not including the night-shift differential or meal allowance payments for Plaintiffs Ahmed, Bergholz, and Flynn. However, Defendant properly included differentials earned by Plaintiffs in the calculation of their regular rate of pay.

Defendant is entitled to summary judgment on their argument that liquidated damages are not recoverable as a matter of law because the record evidence shows that Defendant acted in good faith to comply with the FLSA. Further, Defendant's motion that the statute of limitations should be restricted to two years because the Plaintiffs cannot establish that Defendant's conduct was willful should also be granted.

Given that Plaintiffs have not adduced any admissible evidence in connection with these claims, Defendant respectfully submit that the Court should dismiss these claims with prejudice and find that Plaintiffs are not entitled to liquidated damages or a three-year statute of limitations.

## STATEMENT OF FACTS

The full statement of material, undisputed facts in this case are set forth in the accompanying Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1").

- 4 -

**ARGUMENT**

**POINT I**

**DEFENDANT'S    SUMMARY    JUDGMENT
MOTION SHOULD BE GRANTED**

**A.     Applicable Legal Standard**

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party should prevail where it points to an absence of evidence on an issue on which the non-movant bears the burden of proof. *See Celotex*, 477 U.S. at 322. Although the moving party bears the initial burden to show that there is no genuine issue of material fact, the non-moving party cannot rely in opposition on conclusory allegations or speculation and must set forth specific facts, based on admissible evidence, showing that there is a genuine issue of fact. *See Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998); *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1998); *BellSouth Telecomms., Inc., v. W.R. Grace & Co.*, 77 F. 3d 603, 615 (2d Cir. 1996).

Moreover, not every disputed issue is material. *See Affrunti v. Long Island Univ.*, No. 04-2710-CV, 2005 U.S. App. LEXIS 12372, at *3 (2d Cir. June 22, 2005) (explaining that a fact is "material" if it affects the outcome of the suit and an issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party) (internal citations omitted); *Forbes v. Lighthouse Int'l*, No. 11 Civ. 7065, 2013 U.S. Dist. LEXIS 62454, at *13 (S.D.N.Y. May 1, 2013) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury

could reasonably find for him.") (*citing Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004)).

**B.**     **Plaintiffs' Off the Clock Claims Fail As a Matter of Law**

As set forth below, Defendant is entitled to summary judgment with respect to Plaintiffs' Off the Clock Claims as a matter of law because it is undisputed that the allegedly uncompensated work time at issue in this case was not reported to Defendant through its timekeeping system, and Defendant therefore did not have the requisite knowledge to establish liability. At the outset, Plaintiffs' damage calculations using the two-year statute of limitations indicate that Plaintiffs Clark and Jackson have no damages relating to any pre-shift or post-shift Off the Clock claims. *See* Ex. C, Plaintiffs' *Murray* Damage Summary; Def. 56.1 at ¶¶ 82, 91. Plaintiffs Clark and Jackson's pre-shift and post-shift claims should thus be dismissed with prejudice as they cannot demonstrate any damages as a result of those claims.

**1.**     **Knowledge of the Performance of Uncompensated Work Is a Prerequisite To a Finding of Liability for an Off the Clock Claim**

The FLSA requires that employers compensate non-exempt employees with premium overtime pay for any hours worked over 40 in a workweek. 29 U.S.C. § 207(a)(1). However, in order to be liable for unpaid overtime, the employer must have actual or constructive knowledge that the work was performed. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001) (employer liable only if it 'knows or has reason to believe that the employee is continuing to work and that work' was 'suffered or permitted' by the employer") (*quoting* 29 C.F.R. § 785.11). Indeed, it is common sense that "[a]n employer cannot suffer or permit an employee to perform services about which the employer knows nothing." *See Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998).

- 6 -

Importantly, an employer may be aware that an employee performed work outside of his normal shift without knowing that the employee performed *uncompensated* work. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 875 (6th Cir. 2012) ("[T]he relevant knowledge is not 'I know that the employee was working,' but 'I know that the employee was working and not reporting his time.'") (*quoting Raczkowski v. TC Const. Co., Inc.*, 8 F.3d 29 (9th Cir. 1993)); *Boelk v. AT&T Teleholdings, Inc.*, No. 12 Civ. 40, 2013 U.S. Dist. LEXIS 101111, at *17 (W.D. Wis. Jan. 10, 2013) (Plaintiffs' statement that employees "were working through their lunches and breaks" does not establish that supervisor knew employees were working without pay) (*citing Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (affirming summary judgment for employer where it knew plaintiff punched in early but not that plaintiff was performing work between the time she punched in and the scheduled start of her shift)).

    a.    **As a Matter of Law, an Employer Does Not Have Actual or Constructive Knowledge of Time Spent Working That Was Not Reported Pursuant To Its Procedures**

Here, Plaintiffs' Off the Clock claim is premised on the idea that they can thwart the City's efforts to comply with the FLSA by not giving notice that they performed uncompensated work outside of their regularly-scheduled shift. But "[w]hen an employer has an established policy for tracking overtime, 'an employer is not liable for nonpayment if the employee fails to follow the established process.'" *Grosswiler v. Freudenberg-NOK Sealing Techs.*, No. 3:14 Civ. 1551, 2015 U.S. Dist. LEXIS 109592, at *11 (N.D. Ohio Aug. 19, 2015), *aff'd*, 642 F. App'x 596 (6th Cir. Mar. 2, 2016) (quoting *White*, 699 F.3d at 877 (6th Cir. 2012)). As the Sixth Circuit Court of Appeals has explained, "[w]hen the employee fails to follow reasonable time reporting procedures, she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White*, 699 F.3d at 877 (citing *Hertz v. Woodbury Cnty.*, 566 F.3d 775, 781-82 (8th Cir. 2009); *see*

- 7 -

*Newton v. City of Henderson*, 47 F.3d 746, 749-50 (5th Cir. 1995); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414-15 (9th Cir. 1981)).

        In so holding, the Sixth Circuit embraced a practical, common sense approach that recognizes that where an employee fails to comply with the employer's efforts to ensure that employees are recording time accurately, the employer cannot be found to have "suffered or permitted" the employee to work:

> At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

*White*, 699 F.3d at 875-76 (*quoting Forrester*, 646 F.2d at 414-15 and *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. Aug. 1, 2006)).

        The Sixth Circuit is not alone in holding that employees must comply with an employer's procedures for reporting time, and has been joined by circuit and district courts across the country in denying recovery where an employee fails to identify time worked using a timekeeping system specifically established by the employer for that purpose. *See, e.g., Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 965 (5th Cir. 2016) (affirming judgment for employer where employee failed to report her unauthorized overtime in the employer's timekeeping system); *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230-31 (10th Cir. 2012) ("where the employee fails to notify the employer through the established overtime record-keeping system, the failure to pay overtime is not an FLSA violation"); *White*, 699 F.3d at 877 (affirming summary judgment to employer where the employee was aware of her employer's system for reporting work that fell outside of her normal shift but failed to report such work);

*Wood*, 192 F. App'x at 380-81 (affirming summary judgment for employer where employee failed to report off-the-clock hours using employer's reporting system); *Joza v. WW JFK LLC*, No. 07 Civ. 4153, 2010 U.S. Dist. LEXIS 94419, at \*33-34 (E.D.N.Y. Sept. 9, 2010) (holding that the employer was unaware of any overtime hours allegedly worked by the employee due to the employee's failure to comply with the employer's overtime reporting and compensation procedures); *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (granting summary judgment on the plaintiffs' off-the-clock claims where "it [wa]s undisputed that [the employer's] record-keeping complied with the requirements of the FLSA and New York Labor Law, and that the plaintiffs' time records were maintained and paid exactly as plaintiffs fashioned them, meaning that any inaccuracies in [the employer's] records [we]re *solely due to the plaintiffs' deliberate failure to accurately report the time they worked*.") (emphasis in original).[1] Indeed, in August 2017, the Seventh Circuit joined the Fifth, Sixth, Ninth, and Tenth Circuits in holding that an employer does not have actual or constructive knowledge that uncompensated work was being performed and not recorded because the employees did not report the time, despite the employer's policies permitting them to do so. *See Allen v. City of Chicago*, No. 16-1029, 2017 U.S. App. LEXIS 14230 (7th Cir. Aug. 3, 2017) *aff'g Allen v. City of Chicago*, No. C. 3183, 2015 U.S. Dist. LEXIS 165906 (N.D. Ill. Dec. 10, 2015).

Judge Cote's decision in *Edwards v. City of New York* is also instructive. *See Edwards v. City of New York*, No. 08 Civ. 3134, 2012 U.S. Dist. LEXIS 68055, at \*10-11

---

[1] *See also Grosswiler*, 2015 U.S. Dist. LEXIS 109592, at \*11-12 (awarding summary judgment to employer and dismissing the employees' uncompensated overtime claim where the employees failed to comply with the employer's policy for tracking overtime); *Nieddu v. Lifetime Fitness, Inc.*, 38 F. Supp. 3d 849, 869-870 (S.D. Tex. 2014) (awarding summary judgment to employer on employee's claim for uncompensated overtime where the employee failed to follow the employer's established procedures for claiming overtime compensation); *Valcho v. Dallas Cnty. Hosp. Dist.*, 574 F. Supp. 2d 618, 623 (N.D. Tex. 2008) (hospital's policy of placing on its employees the responsibility of reporting the time that they worked was "legally sound.") (*citing Wood*, 192 F. App'x at 380-81 (dismissing FLSA claim involving employer who required employees to self-report overtime hours, and explaining that the employee "should [have] report[ed] the overtime hours himself")).

(S.D.N.Y. May 15, 2012). In that case, the plaintiff correction officers argued that they were denied compensation for overtime they worked, but did not report on their overtime slips. In granting summary judgment to the City, Judge Cote held:

> The plaintiffs have failed to produce any admissible evidence that the defendant had actual or constructive knowledge of uncompensated overtime work. The plaintiffs were familiar with and utilized the defendant's system for tracking and compensating overtime; indeed, every deposed plaintiff testified that he or she had submitted overtime slips and received overtime compensation. The majority of deposed plaintiffs each received thousands of dollars in overtime during the limitations period. Some plaintiffs may on occasion have chosen not to submit overtime slips for minutes of overtime worked that did not exceed a certain arbitrary time threshold. That fact, however, is insufficient to impute knowledge to the defendant that the plaintiffs were performing uncompensated overtime work.

*Edwards*, 2012 U.S. Dist. LEXIS 68055, at *10-11.

The law does not require an employer to investigate every timecard submitted by an employee to verify the information the employee records (and certifies) is accurate, and an employee cannot rest his claim on what the employer *could have done* to make sure the employee was accurately reporting his overtime worked. *See Newton*, 47 F.3d at 749 ("[i]f we were to hold that the City had constructive knowledge that Newton was working overtime because [his supervisor] had the ability to investigate whether or not Newton was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime.").[2]

### b.   <u>Plaintiffs Failed to Provide Defendant with the Required Notice that They Performed Uncompensated Work</u>

---

[2] *See also Fairchild*, 815 F.3d at 965 (computer usage reports were insufficient by themselves to put an employer on constructive notice that an employee was working off the clock); *Green v. Federal Express Corp.*, 614 F. App'x 905, 908 (9th Cir. 2015) (electronic records reflecting scans of packages were not sufficient to put employer on constructive notice of off-the-clock work); *Hertz*, 566 F.3d at 781-82, 784 (employer was not required to review its electronic data for payroll purposes to determine whether employees were remotely working off the clock).

Here, certain Plaintiffs seek overtime compensation for certain time outside of their regular shifts: (i) the time between when they clocked in and their shift started: (ii), the time during their thirty minute lunch break; and (iii) the time between the end of their shift and when they clocked out. But the following facts are not in dispute:

- Employees are paid on a "pay to schedule" system, whereby the default is that they are paid according to their regular shifts. *See* Def. 56.1 at ¶ 57.

- If employees work minutes or hours other than their regular shifts, they must submit requests for overtime compensation. *Id.* at ¶¶ 14, 30-31, 50.

- Plaintiffs knew that they had to request compensation for such work through their timekeeping system in order to receive compensation for that time. *Id.* at ¶¶ 15, 59, 61.

- Most Plaintiffs did not submit requests for compensation for this time, and indeed certified that they did not perform work during this time; those who did were compensated. *Id.* at ¶¶ 15, 31-32, 39-47, 55, 59, 61, 66-67, 69-71, 74, 85-86.

- Plaintiffs routinely utilized Defendant's timekeeping to submit requests for overtime compensation. In fact, over 99% of overtime requests submitted by Plaintiffs through the timekeeping system during the recovery period were approved. *Id.* at ¶ 15, 59, 61, 66-67, 69.

With respect Plaintiffs' meal break claim, Plaintiff Ahmed testified that he has submitted a request in CityTime to be paid for work performed during his meal break and that he was paid for such work. *See* Def. 56.1 at ¶¶ 70-71. Plaintiff Ahmed further testified that no supervisor has ever refused to approve overtime for which he did not obtain pre-authorization and that every request he has submitted via CityTime for overtime compensation has been approved. *Id.* Similarly, Plaintiff Clark testified that a supervisor never directed him to work through his meal and that he was never instructed not to submit an overtime request for such time. *Id.* at 81. Plaintiff Flynn testified that she *only* works overtime when mandated by a

supervisor and that her supervisor tells her to take a meal break. *Id.* at 85. Plaintiff Flynn also alleges that she is always paid for overtime requests made via CityTime and that she has never had such a request be denied.  *Id.* at 86.  Along those same lines, Plaintiffs Jackson and McNeil both testified that they were never instructed to work through a meal break and were never instructed not to request overtime for work performed during a meal break. *Id.* at 90, 93. This nearly uniform testimony demonstrates that Plaintiffs knew how to request overtime for working through their meal break and were never dissuaded from making such requests. This evidence alone bars their meal break claims.

The only Plaintiffs that assert that they worked before or after their shift without compensation, are Plaintiffs Ahmed, Bergholz, Flynn and McNeil. As such, to the extent any argument Plaintiffs may contend that the City had some unwritten policy or practice of requiring Plaintiffs to perform uncompensated pre/post shift work is completely belied by the fact that not all Plaintiffs claim that they performed such work.

To further illustrate this point is Plaintiff Flynn's testimony. Despite her current claim of damages for pre-shift and post-shift work, Plaintiff Flynn testified that arrives to work and clocks in to CityTime 30-45 minutes prior to her shift and that she utilizes this pre-shift time to change her clothes and have breakfast. *See id.* at 83. Plaintiff Flynn further testified that she only *actually works* overtime when mandated by a supervisor and that she is *always* paid for that work. *See id.* at 85. For her post-shift claim, Plaintiff Flynn testified that she clocks out of CityTime either 15 minutes early or that clocks out 5-10 minutes after her shift ends "if [she] has to go to the bathroom before [she] leaves." *See id.* at 84. Despite this unequivocal testimony, Plaintiff Jackson is now seeking back pay and liquidated damages for time admittedly spent eating breakfast and using the restroom.  Plaintiff McNeil is also seeking back pay and liquidated

damages for pre-shift and post-shift work allegedly performed despite the fact that he testified he did not work "in excess of his scheduled shift" and never submitted an overtime request during the relevant period. *See id.* at 93; Ex. X, Erath Decl. ¶ 29. Moreover, the undisputed evidence demonstrates that each of the Plaintiffs who submitted at least one request for pre-shift, post-shift, or meal period overtime during the relevant period was paid the overtime for that period. *See* Def. 56.1 at ¶ 69.

Plaintiffs, thus, are now seeking overtime damages for time that was not only not reported to the City as time worked but, on top of that, damages for time that was admittedly not even worked. As in *Edwards*, Plaintiffs here were familiar with the procedure required for requesting overtime compensation, and did not do so. *See* 2012 U.S. Dist. LEXIS 68055, at *10-11. Indeed, it is undisputed that when Plaintiffs reported overtime work performed before/after their shift or during their meal break to Defendant, Plaintiffs were paid for such overtime work regardless of whether such overtime was pre-approved. *See id.* at ¶¶ 13-15, 31-32, 55, 59, 61, 66-67, 69-71, 74, 85-86. To be sure, each of the Plaintiffs who submitted at least one request for pre-shift, post-shift, or meal period overtime during the relevant period was paid the overtime for that period. *See id.* at ¶ 69.

Allowing Plaintiffs' claims to proceed would drastically expand the scope of liability under the FLSA beyond anything contemplated by Congress or permitted under Supreme Court precedent, and render implausible any attempt by the City to meet its obligations under the FLSA in asking its more than 200,000 employees to adhere to a procedure for reporting overtime in order to receive compensation. *See Newton*, 47 F.3d at 749. Because Plaintiffs, in some instances, admittedly did not work off the clock and, in other instances, failed to accurately record all of their time worked, Defendant is entitled to summary judgment, and

Plaintiffs' Off the Clock claims should be dismissed. *See Joza*, 2010 U.S. Dist. LEXIS 94419, at *34 ("Other than overtime compensation that might have been due her for overtime work she deliberately chose not to report, Joza was paid every penny of overtime she chose to report and process. Consequently, judgment must be for defendants on all of plaintiff's claims.").

Plaintiffs' failure to adduce any evidence to substantiate their allegations warrants dismissal of these claims.

## C.    Plaintiffs' Delayed Payment Claims Fail As a Matter of Law

The FLSA requires that payment of overtime compensation "may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 C.F.R. § 778.106.  Thus, while the FLSA has been interpreted to require "prompt payment," there is no *per se* rule as to when payment must be made in relation to when it is earned. *See Rogers v. City of Troy*, 148 F.3d 52, 55-57 (2d Cir. 1998); *see also Brennan v. City of Philadelphia*, 2016 U.S. Dist. LEXIS 80299, at *4-6 (E.D. Pa. June 21, 2016). Contrary to the SAC's claim that any overtime paid more than two pay periods after it is worked is considered late *per se*, courts have not set any bright line rule defining what a reasonable delay in payment of overtime equates to in practice. *Brennan*, 2016 U.S. Dist. LEXIS 80299, at *4–6. In *Brennan*, the Court acknowledged that the DOL interpretation "allows that, '[w]hen the correct amount of overtime compensation cannot be determined until sometime after the regular pay period,' an employer can pay 'the excess overtime compensation as soon after the regular pay period as is practicable.'" *Id*. The court further noted that "[a]s long as the overtime is paid as soon after the initial pay period as practicable, 'the requirements of the Act will be satisfied.'" *Id*. (citing 29 C.F.R. § 778.106).

Plaintiffs have adduced no admissible evidence of any alleged "delayed" payments. In fact, during the relevant time period, and utilizing Plaintiffs' arbitrary 35-day standard and damage calculations, all seven Plaintiffs' overtime cash payments were received within 35 days of the date they were earned. *See* Ex. C, Plaintiffs' *Murray* Damage Summary; Def. 56.1 at ¶¶ 72, 76, 79, 82, 87, 91, 94. Thus, the Court should dismiss Plaintiffs' Delayed Payment claims, to the extent they are alleged, in their entirety.

D.     **Plaintiffs' Straight Time and Regular Rate Claims Fail As a Matter of Law**

Plaintiffs have adduced no admissible evidence of any miscalculation of their compensatory time calculations. During the relevant time period, Plaintiffs received 319 hours in compensatory time. *See* Ex. X, Erath Decl., ¶ 22(c). None of the seven Plaintiffs have alleged that they did not receive the appropriate rate for their compensatory time, and none of them have submitted any evidence that their compensatory time was miscalculated. Indeed, utilizing Plaintiffs' damage calculations, none of the seven Plaintiffs have demonstrated any monetary damages on this claim. *See* Ex. C, Plaintiffs' *Murray* Damage Summary; Def. 56.1 at ¶¶ 72, 76, 79, 82, 87, 91, 94. Accordingly, Plaintiffs' Straight Time Claims should be dismissed.

With regard to the Regular Rate Claims, Plaintiffs' own damages calculations list Plaintiffs Brown, Clark, Jackson, and McNeil as having no Straight Time Claim damages. *See* Ex. C, Plaintiffs' *Murray* Damage Summary; Def. 56.1 at ¶¶ 79, 82, 91, 94. Plaintiffs allege that Defendant failed to properly calculate the regular rate at which overtime compensation is paid by not including the night-shift differential or meal allowance payments for Plaintiffs Ahmed, Bergholz, and Flynn. However, Plaintiffs received $18,474 in combined night-shift differential payments during the relevant period, and CityTime includes the nightshift differential in an employees' regular rate of pay for purposes of calculating overtime compensation. *See* Def. 56.1 at ¶ 52, 53, 68-69, 98. Accordingly, Plaintiffs' Regular Rate Claims should be dismissed.

- 15 -

**E.**     **Liquidated Damages are Not Recoverable as a Matter of Law Because Defendant Acted in Good Faith**

If a plaintiff successfully establishes a violation of the FLSA, liquidated damages in an amount equal to the amount of unpaid wages at issue are imposed, *unless* the employer establishes it acted in good faith. *See* 29 U.S.C. § 216(b). Whether liquidated damages are appropriate is a matter of law within the Court's discretion. *See* 29 U.S.C. § 260; *see also*, *Brock v. Superior Care Inc.*, 840 F.2d 1054, 1063 (2d Cir. 1988) (holding that an award of liquidated damages under the FLSA is within the discretion of the district court) (*citing McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)).

To establish that an employer acted with the requisite subjective good faith, the employer must show that it took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999); *see also Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) ("'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them."). Here, Plaintiffs should not be awarded liquidated damages because they have not met their burden of establishing a violation of the FLSA with respect to the Off the Clock, Delayed Payment, Regular Rate, and Straight Time Claims. However, even if this Court finds a question of fact exists sufficient to deny summary judgment, the undisputed material facts show Defendant took active steps to ascertain and comply with the FLSA's requirements, thereby precluding an award of liquidated damages on any claim.

**1.**     **The City Demonstrated Subjective Good Faith**

In developing CityTime – which serves as the end-point of the timekeeping system for the At-Issue Titled employees – the City took steps to ensure that it would enable the City's FLSA compliance, including by:

- Providing training to employees in the At-Issue Titles on how to properly complete their timesheets and how to submit requests for overtime compensation.  Def. 56.1 at ¶¶ 21-23, 55-56, 108-111.

- Convening weekly meetings, composed of high-ranking members of the Office of Payroll Administration, the Office of Labor Relations, and the Law Department, to ensure that CityTime is programmed in such a way that it complies with the FLSA as well as applicable collective bargaining agreements.  *Id.* at ¶¶ 95-106.

- Advising City agencies that if an employee works without authorization and they are aware, the employee should nevertheless be paid.  *Id.* at ¶ 102.

In addition to these Citywide initiatives, DHS took additional steps to ensure statutory compliance. DHS promulgated a Code of Conduct which included provisions with respect to overtime, namely that "[e]mployees shall not report before or remain on Department premises after their regular working hours unless overtime or change of schedule has been previously approved and appropriate supervisory monitoring of such activity is provided." Def. 56.1 at ¶ 16-17. The Code of Conduct further mandates that employees "shall accurately, and in a timely manner, record and submit for their supervisor's approval their working hours using CityTime (or any other timekeeping system that modifies or replaced CityTime in whole or in part)" and "shall not submit, or cause to be submitted, and altered, falsified or forged documentations in connection with their time and leave." *See id.*  DHS supervisors also worked to enforce these timekeeping requirements as evidenced by the fact that Plaintiff Bergholz's supervisors formally admonished her *nine different times* – including in writing – for working beyond the scope of her shifts without authorization. *See* Def. 56.1 at ¶ 75.

Additionally, DHS, through the Office of Payroll Administration, distributed guidance to employees regarding information about what the FLSA requires, how it affects a covered employee, including how it impacts a covered employee's work schedule, and explaining the City's policy with respect to overtime. *See id.* at 22-23, 108-111. One such bulletin was issued to DHS employees on November 22, 2016. *See id.* This bulletin specifically instructed that: "you may not perform any tasks related to your assigned duties and responsibilities before or after your regular schedule (including work from home before or after your regular schedule) or during your dedicated meal break without receiving approval to perform such work in accordance with your agency's policy." *Id.* The bulletin goes on to provide employees with a non-exhaustive list of tasks that the employee is not permitted to perform outside of their regularly scheduled work hours, including "check[ing] voicemail or email, answer[ing] telephone calls, read[ing] or complet[ing] paperwork, load[ing], stock[ing] or check[ing] equipment, assist[ing] a client or prepar[ing] a route or schedule[ing] for the day." *Id.* The bulletin also included Frequently Asked Questions for both FLSA-covered employees and CityTime Approvers. *Id.* These FAQs provided practical, day-to-day guidance to DHS employees on FLSA standards and timekeeping procedures. *Id.*

Thus, the record evidence establishes that Defendant demonstrated subjective good faith in complying with the FLSA, through its reliance on the advice of counsel and internal personnel and labor relations experts in programming CityTime, the inclusion of certification language on the At-Issue Titled Employees' CityTime timesheets, internal DHS overtime policies and training employees on timekeeping procedures. *See McFeeley v. Jackson St. Entm't, LLC,* 825 F.3d 235, 245 (4th Cir. 2016) (finding that the employer's consultation with an attorney regarding the employer's compliance under the FLSA, and the employer's

subsequent reliance on the attorney's advice, constituted sufficient evidence of good faith to preclude an award of liquidated damages for the time period after the employer's meeting with the attorney); *Perez v. Mountaire Farms*, 650 F.3d 350, 375-76 (4th Cir. 2011) (employer reliance on letters and memoranda provided by an outside attorney in implementing the practices that gave rise to the liability under the FLSA precluded liquidated damages); *Cross v. Ark. Forestry Comm'n*, 938 F.2d 912, 917-18 (8th Cir. 1991) (employer's reliance on the incorrect advice provided by internal personnel experts precluded liquidated damages).

### 2.     Defendant's Conduct Was Objectively Reasonable

The undisputed evidence also establishes that Defendant's belief that it was in full compliance with the FLSA was objectively reasonable. While certain Plaintiffs contend that they were not paid all of the overtime they were allegedly entitled to, there is no dispute that nearly every Plaintiff who requested overtime, for any reason, had their requests approved during the relevant period. Def. 56.1 at ¶¶ 61, 66-67. Indeed *over* 99% of the overtime requests made by Plaintiffs during the limitations period were approved. *Id*. Moreover, 100% of requests by Plaintiffs for premium cash overtime were paid within 35 days of having been earned. *Id.* at ¶ 67. Further, it is undisputed that every Plaintiff understands how to make an overtime request through CityTime, and that those Plaintiffs who requested overtime were compensated for pre-shift overtime, working through a meal break, and post-shift overtime. *Id.* at ¶¶ 13, 15, 59, 61, 69. And, to be sure, Plaintiffs' testimony confirms this fact.

Therefore, even if the Court declines to dismiss any of Plaintiffs claims, Defendant is nevertheless entitled to summary judgment on its good faith defense, precluding an award of liquidated damages because the evidence establishes that it engaged in subjective good faith efforts to comply with the FLSA, and that those efforts were objectively reasonable.

### F.     The Statute of Limitations Should be Restricted to Two Years

The FLSA provides for a two-year limitations period that may be extended for one year only where the violation was willful. 29 U.S.C. § 255(a); *Herman*, 172 F.3d at 141. That the violation was not willful is not an affirmative defense, and it is, therefore, a plaintiff's burden to prove that the limitations period should be extended. *See Parada v. Banco Indus. de Venez.*, 753 F.3d 62, 71 (2d Cir. 2014).

"[T]o prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Parada*, 753 F.3d at, 71 (*quoting Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995)). Even "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *See id.*; *see also Padilla v. Sheldon Rabin, M.D., P.C.*, No. 15-cv-1708, 2016 U.S. Dist. LEXIS 46633, *18-19 (E.D.N.Y. Apr. 6, 2016) ("[N]either an employer's good-faith but incorrect assumption regarding its FLSA obligations, nor an employer's lack of reasonable basis for believing that it was complying with the FLSA, is by itself sufficient to demonstrate an employer's willfulness.") (internal citation omitted). Stated differently, an employer's negligence with respect to compliance is not enough to establish willfulness and a plaintiff must present evidence establishing that the employer affirmatively knew it was violating the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 475 (S.D.N.Y. 2006). Plaintiffs cannot meet that burden here, and Defendant is entitled to the statutory two-year limitations period as a matter of law.

As addressed above, the same evidence that establishes Defendant's good faith efforts to comply with the FLSA precludes a finding that any alleged violations were willful. There is nothing in the factual record showing that Defendant acted in reckless disregard of the

law. To the contrary, Defendant took, and continues to take, substantial measures to ensure that it was and is fully compliant with the FLSA. *See* Def. 56.1 at ¶¶ 20-23, 39-47, 55-56, 95, 97-111.

Therefore, even if this Court does not grant summary judgment as set forth above, the Court should grant summary judgment as to the applicable limitations period, dismissing any claims predating two years from the filing of any respective Plaintiffs' consent to sue. *See Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 543 (S.D.N.Y. 2012) (holding that a two year limitations period was automatic given finding that the employer acted in good faith); *Bowrin*, 417 F. Supp. 2d at 475 (granting motion for summary judgment that a two year limitations period should apply because "Plaintiffs have not presented evidence that [the employer] knew it was violating the FLSA"); *DeBejian v. Atlantic Testing Lab., Ltd.,* 64 F. Supp. 2d 85, 93 (N.D.N.Y 1999) (applying a two year limitations period because "[a]lthough . . . [the employer] did not take sufficient steps to ensure compliance with the FLSA, [it] did make an effort to ascertain whether its policies were in compliance and, therefore, it cannot be said that [the employer] recklessly disregarded whether its conduct violated the FLSA").

## **CONCLUSION**

WHEREFORE, Defendant respectfully requests that this Court dismiss Plaintiffs' complaints in their entirety because they have not adduced evidence demonstrating that Defendant violated the FLSA; in the alternative, grant Defendant's motion for summary judgment on its good faith defense, precluding an award of liquidated damages; in the alternative, grant Defendant's motion for summary judgment and limit all Plaintiffs' claims to the statutory two-year limitations period; and awarding Defendant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 28, 2019

                    **ZACHARY W. CARTER**
                    Corporation Counsel of the
                      City of New York
                    **Attorney for Defendant City of New York**
                    100 Church Street, Room 2-102
                    New York, New York 10007
                    (212) 356-2078
                    jocarter@law.nyc.gov

        By:           /s/
                    John Corbin Carter
                    Assistant Corporation Counsel

TO:    All Counsel of Record (via ECF)