UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MONIQUE MURRAY, et al.,

               Plaintiffs,                  16-cv-8072 (PKC)

     -against-                      OPINION
                                              AND ORDER

CITY OF NEW YORK, NEW YORK,

               Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

          This case is brought by 483 individual plaintiffs who contend that defendant City

of New York (the "City") violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

("FLSA").  Plaintiffs are current and former employees of the New York City Department of

Homeless Services ("DHS") who held various job titles and worked at different sites throughout

New York City.  There is no dispute that plaintiffs are covered employees under the FLSA.

          Plaintiffs' claims are principally directed toward the assertion that the City

violated the FLSA by failing to pay compensation required for their off-the-clock, overtime work

and work performed during meal breaks.  Plaintiffs assert that, through their individual

supervisors, the City had actual or constructive knowledge that they worked without pay.

Plaintiffs bring additional claims asserting that overtime pay calculations did not incorporate a

nightshift differential, and that they were therefore deprived of overtime based on their regular

rate of pay, that some overtime payments were made unreasonably late, and that the City failed

to pay compensatory time at the required time-and-a-half rate.

          During discovery, the Court approved a joint stipulation by which the parties

selected 38 plaintiffs drawn from a cross-section of job titles and DHS work locations to serve as

"Discovery Plaintiffs."  At the close of discovery, the Court issued an Order granting leave for each side to move for summary judgment as to seven plaintiffs of their choosing.  (Docket # 103.)  Seven individual plaintiffs now move for summary judgment in their favor.  (Docket # 117.)  The City moves for summary judgment in its favor as to the claims of seven different plaintiffs.  (Docket # 125.)

While plaintiffs' claims all relate to their work at the DHS and aspects of the City's timekeeping system, each claim turns on individualized, fact-intensive issues, including interactions with specific supervisors, work hours, and the nature of their job tasks.  As to each plaintiff's claim, summary judgment may be granted only if the movant comes forward with evidence sufficient to warrant judgment as a matter of law, and the non-movant fails to point out opposing evidence that would permit a reasonable trier of fact to rule in their favor.  See, e.g., Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009).

For the reasons that will be explained, plaintiffs' motion will be denied in its entirety.  The City's motion will be granted as to all claims asserted by plaintiff Gloria Brown; granted as to the claim that Ahmed, Bergholz, Clark, Flynn, Jackson and McNeil were not paid overtime consistent with a nightshift differential; granted as to the claim that overtime was not timely paid to Ahmed, Clark, Jackson and McNeil; granted as to the claims of plaintiffs Ahmed, Bergholz, Clark, Flynn, Jackson and McNeil directed to compensatory time; and otherwise denied.

BACKGROUND.

A.    The City's Overtime Policies and the CityTime System.

Since 2010, City employees have recorded their working hours through a web-based time-keeping system called CityTime.  (Def. 56.1 ¶¶ 9, 18-19, 27; Pl. 56.1 Resp. ¶¶ 9, 18-

19, 27; Pl. 56.1 ¶ 27; Def. 56.1 Resp. ¶ 27.)  CityTime automatically records the time that an employee clocks in and clocks out.  (Def. 56.1 ¶¶ 28-29; Pl. 56.1 Resp. ¶¶ 28-29.)

Employees can directly access the CityTime system by typing their username and password at a sign-in screen.  (Def. 56.1 ¶ 38; Pl. 56.1 Resp. ¶ 38.)  The sign-in page states that employees who are eligible for overtime under the FLSA are authorized to work only regularly scheduled hours, and that any additional work must be approved.  (Def. 56.1 ¶ 39; Pl. 56.1 Resp. ¶ 39.)  DHS employees submit weekly time entries, at which point they certify that the time recorded through CityTime is accurate, including any overtime.  (Def. 56.1 ¶¶ 42-45, 47; Pl. 56.1 Resp. ¶¶ 42-45, 47.)  The certification reads:

> The time shown correctly represents my attendance and activities for the week indicated.  If I am an employee eligible to earn overtime compensation under the FLSA and/or a collective bargaining agreement, I also certify that I have requested compensation for any time that I worked in excess of my schedule hours and that any time outside my scheduled hours, i.e. when I may have logged in/out earlier/later than my scheduled time, for which I have not requested compensation, was time not worked.

(Def. 56.1 ¶ 42; Pl. 56.1 Resp. ¶ 42.)

Employees may directly submit overtime requests through CityTime, and can enter information describing the tasks they performed.  (Def. 56.1 ¶ 50; Pl. 56.1 Resp. ¶ 50.)  A plaintiff's supervisor performs a first-level review of an employee's CityTime entries, including any overtime request.  (Def. 56.1 ¶ 54; Pl. 56.1 Resp. ¶ 54.)  A second supervisor performs an additional layer of review before approving the time entries' submissions to payroll.  (Def. 56.1 ¶ 54; Pl. 56.1 Resp. ¶ 54.)

B. The City's Policy of Overtime Preapproval.

The City pays overtime in 15-minute increments, rounded to the nearest quarter-hour.  (Def. 56.1 ¶¶ 33-34; Pl. 56.1 Resp. ¶¶ 33-34.)  For time that exceeds 40 hours per week,

plaintiffs are to receive an overtime premium multiplier of 1.5 their hourly pay, or, alternatively, compensatory time.  (Def. 56.1 ¶¶ 62-63; Pl. 56.1 Resp. ¶¶ 62-63.)

Employees are paid on a so-called "pay to schedule" system, which automatically pays them for their regular work shifts, unless employees indicate that their hours varied due to overtime or because they worked fewer hours than scheduled.  (Def. 56.1 ¶ 57; Pl. 56.1 Resp. ¶ 57; Pl. 56.1 ¶ 31; Def. 56.1 Resp. ¶ 31.)  If an employee does not submit a specific overtime request in CityTime, any additional working time is still recorded, but CityTime classifies that time as "noncompensable."  (Def. 56.1 ¶ 58; Pl. 56.1 Resp. ¶ 58; Pl. 56.1 ¶ 32; Def. 56.1 Resp. ¶ 32.)

The DHS has a policy that requires employees to receive pre-approval before working overtime.  (Def. 56.1 ¶ 11; Pl. 56.1 Resp. ¶ 11.)  The policy states in part that employees are "responsible for recording all hours worked in CityTime including details of overtime worked using the Overtime Request screen."  (Def. 56.1 ¶ 12; Pl. 56.1 Resp. ¶ 12.)  The CityTime sign-in page reminds employees that they are authorized to work only during scheduled hours, and that any additional time requires approval.  (Def. 56.1 ¶¶ 13, 39; Pl. 56.1 Resp. ¶¶ 13, 39.)  A DHS policy states in part:

> Overtime, whether paid or compensatory time, is to be authorized only when the operational needs of the agency require the employee to work additional hours beyond his/her normal work week.  In addition, all overtime work is to be approved by appropriate management and supervisory staff <u>before</u> the work is begun, be fairly distributed among al staff able and available to perform the overtime work, and assigned and compensated in accordance with the criteria outlined in the policy and any applicable collective bargaining agreement.

(DHS Procedure No. 11-005 at 1, attached to McGillivary Dec. Ex. 2.)  The policy later states, "All overtime work whether for compensatory time or paid must be pre-authorized before it is

worked.  The employee is responsible for recording all overtime hours worked in CityTime including details of overtime worked using the Overtime Request screen. . . .  The employee's immediate supervisor is responsible for verifying and approving overtime pay or compensatory time in CityTime."  (Id. at 3.)  One of the City's Rule 30(b)(6) designees, First Assistant Corporation Counsel Georgia Pestana, testified that DHS employees were required to receive pre-authorization or permission from a supervisor before working more than their scheduled shift times.  (Pestana Dep. 55 ("The City's policy is that overtime should be authorized before you work it."); 136.)

Despite a policy requiring pre-approval, the City asserts that it also has a policy of paying overtime even where an employee has not sought pre-approval.  (Def. 56.1 ¶¶ 14, 31-32.)  Plaintiffs assert that, as a practice and a factual matter, they were only compensated for pre-approved overtime, regardless of any formal policy to the contrary.  (Pl. 56.1 ¶¶ 66-69; Pl. 56.1 Resp. ¶¶ 14, 32.)  The City does not issue written guidance about the payment of unapproved overtime, in part because it does not want employees to work overtime without pre-approval.  (Pl. 56.1 ¶ 70; Def. 56.1 Resp. ¶ 70.)  Pestana testified that "there's no such document because we don't want employees to work unauthorized.  The preference is that they get authorization."  (Pestana Dep. 156-157.)

The City seeks to "generally" provide overtime pay within three weeks of an overtime claim, though payment is sometimes delayed, including by failure of employees or supervisors to file complete or timely submissions.  (Def. 56.1 ¶¶ 64-65; Pl. 56.1 Resp. ¶¶ 64-65.)

C.  Overview of Plaintiffs' Job Duties and Schedules.

The 483 plaintiffs in this case are current or former employees of the DHS, with titles that included Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker and Addiction Treatment Counselor. (Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2.)  Plaintiffs with the job titles of Community Coordinator, Community Associate, Fraud Investigator, Associate Fraud Investigator, Caseworker and Addiction Treatment Counselor are scheduled to work daily eight-hour shifts, including an automatic, daily, one-hour deduction for an unpaid meal period.  (Def. 56.1 ¶ 24; Pl. 56.1 Resp. ¶ 24.)  Plaintiffs with the Community Assistant job title are scheduled to work daily eight-hour shifts, including an automatic, daily, half-hour deducted for an unpaid meal period.  (Def. 56.1 ¶ 25; Pl. 56.1 Resp. ¶ 25.)

As noted, seven plaintiffs now move for summary judgment in their favor.  Kaliah Bright has worked as a Community Assistant.  (Pl. 56.1 ¶ 13; Def. 56.1 Resp. ¶ 13.)  Robin Dickerson has worked as a Fraud Investigator.  (Pl. 56.1 ¶ 15; Def. 56.1 Resp. ¶ 15.)  Oneka Fordyce has worked as an Addiction Treatment Counselor.  (Pl. 56.1 ¶ 19; Def. 56.1 Resp. ¶ 19.)  Ashley Hamilton has worked as a Community Associate.  (Pl. 56.1 ¶ 11; Def. 56.1 Resp. ¶ 11.)  Ryan Rodriguez has held various positions at the DHS, including Community Assistant and Community Associate.  (Pl. 56.1 ¶ 7; Def. 56.1 Resp. ¶ 7.)  Greg Scott has been a Fraud Investigator and Associate Fraud Investigator.  (Pl. 56.1 ¶ 17; Def. 56.1 Resp. ¶ 17.)  Kina White has been a DHS Caseworker.  (Pl. 56.1 ¶ 21; Def. 56.1 Resp. ¶ 21.)  Plaintiffs' responsibilities varied.  As examples, Bright's work as a Community Assistant included serving client meals, answering phones, and performing clerical tasks.  (Pl. 56.1 ¶¶ 13-14; Def. 56.1 Resp. ¶¶ 13-14.)  Rodriguez's work as a Community Assistant and Community Associate included taking nightly

counts of the population in New York City homeless shelters. (Pl. 56.1 ¶¶ 7-8; Def. 56.1 Resp. ¶¶ 7-8.) Fordyce's work as an Addiction Treatment Counselor included managing a caseload of up to 40 clients with substance-abuse issues, as well as conducting meetings, presentations, designing curriculums and assisting with emergency overdose incidents. (Def. 56.1 ¶¶ 19-20; Pl. 56.1 ¶¶ 19-20.)

The City moves for summary judgment in its favor as to the claims of seven different plaintiffs. Nadir Ahmed has worked as a Fraud Investigator. (Def. 56.1 ¶ 70; Pl. 56.1 Resp. ¶ 70.) Penniellen Bergholz has worked as a DHS Caseworker. (Def. 56.1 ¶ 73; Pl. 56.1 Resp. ¶ 73.) Gloria Brown worked as a Community Coordinator prior to her retirement on April 1, 2016. (Def. 56.1 ¶ 77; Pl. 56.1 Resp. ¶ 77.) Derek Clark has worked as an Associate Fraud Investigator. (Def. 56.1 ¶ 80; Pl. 56.1 Resp. ¶ 80.) Amanda Flynn has worked as a Community Assistant. (Def. 56.1 ¶ 83; Pl. 56.1 Resp. ¶ 83.) Alicia Jackson has worked as an Addiction Treatment Counselor. (Def. 56.1 ¶ 88; Pl. 56.1 Resp. ¶ 88.) Steven McNeil has worked as a Community Associate. (Def. 56.1 ¶ 92; Pl. 56.1 Resp. ¶ 92.) As with the movants, these plaintiffs were responsible for different work responsibilities, and described varying circumstances related to their performance of unscheduled work. (See, e.g., Def. 56.1 ¶¶ 70-94; Pl. 56.1 Resp. ¶¶ 70-94.)

The gist of plaintiffs' claims is that they often worked outside of their scheduled hours without receiving overtime pay. Some contend that, due to the nature of their tasks and heavy workloads, they often could not complete work duties within their scheduled shifts. (Pl. 56.1 ¶ 26.) For instance, Bright asserts that she required additional pre- and post-shift time to complete bed checks, inventories and reports; Rodriguez asserts that he required such time to enter data and review e-mails; and Fordyce asserts that she required such time for meetings, e-

mails and emergency support.  (Pl. 56.1 ¶¶ 38, 36, 41.)  Plaintiffs assert that because of the

exigencies of the workplace, it often was not possible to request pre-approval for overtime.  (Pl.

56.1 ¶ 72; Def. 56.1 Resp. ¶ 72.)

Plaintiffs also assert that they sometimes worked through meal breaks.  (Pl. 56.1

¶¶ 48-54; Def. 56.1 Resp. ¶¶ 48-54.)  CityTime automatically deducts a 30-minute meal period

for Community Assistants and a one-hour meal period for the other job titles at issue.  (Def. 56.1

¶ 48; Pl. 56.1 Resp. ¶ 48; Pl. 56.1 ¶ 45; Def. 56.1 Resp. ¶ 45.)  DHS employees do not clock out

for their meal periods.  (Pl. 56.1 ¶ 46; Def. 56.1 Resp. ¶ 46.)

Plaintiffs do not dispute that they were aware of the City's policy requiring

overtime pre-approval, and that they frequently sought and received pre-approval for overtime.

But plaintiffs urge that obtaining pre-approval was often infeasible, and that when it was not,

they nevertheless worked overtime.  They urge that such work was often performed in the

presence of supervisors, and sometimes at the instruction of a supervisor.  In their depositions,

some plaintiffs described their own confusion over the City's overtime policies, including

understandings that they could not request overtime unless it exceeded one hour, and a belief that

they could not request overtime retroactively.  (See, e.g., Clark Dep. 41, 51 (describing

understanding that overtime requests of less than an hour would not be approved and that

overtime would not be approved for work over meal breaks).)  Plaintiffs contend that the City

had actual and constructive knowledge that they worked without compensation based on the

direct observations of supervisors, as well as CityTime entries; the City disputes this assertion.

(Pl. 56.1 ¶¶ 56-64; Def. 56.1 Resp. ¶¶ 56-64.)

The seven plaintiffs moving for summary judgment in their favor assert that in the

aggregate, they are owed $27,000 in damages for 44,455 minutes of pre- and post-shift work

recorded on CityTime; the City disputes these figures. (Lanier Dec. ¶ 4; Pl. 56.1 ¶ 44; Def. 56.1 Resp. ¶ 44.) These calculations are offered by an expert witness, Dr. Louis R. Lanier, who has proposed damages as to each of the seven movants. (McGillivary Dec. Ex. 4.) Lanier explains that his calculations were based on "analyses of payroll (FISA) and punch (CityTime) data provided by the City" but also on an "extrapolation" using "an average weekly back pay figure for each of the plaintiffs, for each claim . . . ." (Lanier Dec. ¶¶ 1, 3-4.)

The City has urged that the Lanier Declaration should be stricken in its entirety because it does not adequately disclose the facts, data or methodology relied upon for its conclusions. (City Opp. Mem. at 4-6.) Rather than strike the declaration in full, the Court will, as appropriate, discuss its contents on an issue-by-issue basis.

D. Plaintiffs' Additional Claims.

Certain plaintiffs assert that the City failed to accurately calculate overtime pay to account for the pay difference owed to them under a nightshift differential. (Pl. 56.1 ¶ 79; Def. 56.1 Resp. ¶ 79.) It is undisputed that employees who worked night shifts are entitled to a pay differential. (Def. 56.1 ¶ 52; Pl. 56.1 Resp. ¶ 52; Pl. 56.1 ¶ 78; Def. 56.1 Resp. ¶ 78.) According to plaintiffs, the City does not use the nightshift differential when it calculates an employee's overtime pay, an assertion that the City disputes.

Plaintiffs also assert that the City did not properly calculate compensatory time, or "comp time," when they elected to receive overtime compensation in the form of comp time instead of in cash. It is undisputed that the City has a policy of paying overtime for work beyond 40 hours in a week, either in cash or comp time. (Pl. 56.1 ¶ 85; Def. 56.1 Resp. ¶ 85.) However, rather than pay comp time at the time-and-a-half rate required by the FLSA, plaintiffs assert that the City paid comp time at a 1:1 rate. (Pl. 56.1 ¶ 87; Def. 56.1 Resp. ¶ 87.)

Plaintiffs separately assert that when they have submitted timely overtime requests, "they are often paid late." (Pl. 56.1 ¶ 90; Def. 56.1 Resp. ¶ 90.) Plaintiffs assert that late payments arise from the failure of supervisors to promptly approve overtime requests, and urge that any overtime request that was not paid within 35 days is per se unlawful. (Pl. 56.1 ¶ 91; Def. 56.1 Resp. ¶ 91; Pl. Mem. 19.)

In addition, both plaintiffs and the City move for summary judgment in their favor on whether the plaintiffs are entitled to liquidated damages for any FLSA violation. They also move for summary judgment as to whether any violation of the FLSA was willful, thus extending the limitations period on a FLSA claim from two years to three years, 29 U.S.C. § 255(a).

E. <u>Procedural History.</u>

Eleven plaintiffs filed the Complaint in this action on October 14, 2016. (Docket # 1.) An additional 123 plaintiffs filed consent-to-sue forms shortly thereafter. (Docket # 9.) As of the filing of the parties' summary judgment motions, this action included 483 individual plaintiffs. (Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2.)

In a Memorandum and Order of August 16, 2017, this Court denied plaintiffs' motion for conditional certification as a collective action pursuant to 29 U.S.C. § 216(b), concluding that plaintiffs had not made a showing that similarly situated employees were subject to a common policy. <u>Murray v. City of New York</u>, 2017 WL 3531552, at *5-7 (S.D.N.Y. Aug. 16, 2017). The Court also granted the City's partial Rule 12(b)(6) motion as to the claims of certain individual plaintiffs, and granted plaintiffs leave to amend. <u>Id.</u> at *1-4.

Separately, on August 2, 2017, the Court entered as an Order the parties' stipulation regarding the conduct of discovery. (Docket # 51.) It provided that the parties would

conduct discovery of randomly selected plaintiffs for each category of job title at issue in this case, with those plaintiffs designated as "Discovery Plaintiffs."  (Id.)  On January 24, 2019, this Court issued an Order providing that plaintiffs and the City could each move for summary judgment on the claims of seven plaintiffs of their choosing.  (Docket # 103.)

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).  On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  Simsbury-Avon, 575 F.3d at 204.  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd.

of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). A court "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).

The summary judgment movant and the summary judgment opponent therefore have different burdens. The movant has an initial obligation to come forward with evidence entitling it to judgment as a matter of law. Vt. Teddy Bear Co., 373 F.3d at 244. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres., 575 F.3d at 204 (internal citation omitted).

DISCUSSION.

A. The City's Summary Judgment Motion Is Granted as to All Claims of Plaintiff Gloria Brown.

In support of its summary judgment motion, the City has come forward with evidence that plaintiff Gloria Brown did not work any hours or shifts during the relevant time period of this case. (Def. 56.1 ¶¶ 77-79.) Brown previously settled FLSA claims against the City in a separate action, Martin et al. v. City of New York, 14 Civ. 8950 (TPG) (AJP). (Def. 56.1 ¶ 78; Carter Dec. Ex. Y.) It is undisputed that, as a result of that settlement, Brown now seeks relief only for the period of January 6, 2016 to the date of her retirement on April 1, 2016. (Def. 56.1 ¶ 78; Pl. 56.1 Resp. ¶ 78.)

Beginning on September 26, 2015, Brown was on "full terminal leave with pay, working zero hours and zero shifts," until her retirement on April 1, 2016. (Def. 56.1 ¶ 77; Pl.

56.1 Resp. ¶ 77.)  The City therefore urges that, because Brown did not work for the DHS during the time period relevant to her claims in this action, she cannot demonstrate that she suffered a FLSA violation or resulting damages.  (Def. 56.1 ¶¶ 77-79; Pl. 56.1 Resp. ¶¶ 77-79.)

In opposition, Brown does not point to evidence of her work at the DHS.  (Pl. 56.1 Resp. ¶¶ 77-79.)  Rather, she asserts that the City did not produce CityTime data as to her punch-in and punch-out times for this period, which makes it "impossible" to determine whether she worked any shifts or suffered any damages.  (Pl. 56.1 Resp. ¶¶ 77, 79.)  This argument does not raise a factual dispute or amount to evidence in support of her claim.  See, e.g., Simsbury-Avon, 575 F.3d at 204.  Brown's own recollection would likely be evidence that she actually performed work or suffered damages during the relevant time period, and sufficient to defeat the City's motion.  She makes no explanation as to why such information would be found only in CityTime punch-in/punch-out records.

Because Brown does not point to evidence that she worked a shift at DHS or suffered damages during the time period covered by her claim, the City's motion for summary judgment is granted as to her claims.

B.  The Parties' Motions Directed to Plaintiffs' Claims of Unpaid Overtime Are Denied.

1.  The FLSA's Overtime Requirements.

The FLSA was "designed to remedy the 'evil of overwork' by ensuring workers were adequately compensated for long hours, as well as by applying financial pressure on employers to reduce overtime.  In service of the statute's remedial and humanitarian goals, the Supreme Court consistently has interpreted the Act liberally and afforded its protections exceptionally broad coverage."  Chao v. Gotham Registry, Inc., 514 F.3d 280, 285 (2d Cir. 2008) (citations omitted).

The FLSA requires premium overtime pay of at least one-and-one-half times the regular rate of pay for non-exempt employees who work more than 40 hours in a work week. 29 U.S.C. § 207(a)(1). "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011). The FLSA treats "work as exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities." Chao, 514 F.3d at 285 (collecting cases). Whether an employee's activities constitute "work" is a question of law. Holzapfel v. Town of Newburgh, N.Y., 145 F.3d 516, 521 (2d Cir. 1998).

"[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours." Id. at 524; see also Chao, 514 F.3d at 290 ("once it is established that an employer has knowledge of a worker's overtime activities and that those activities constitute work under the Act, liability does not turn on whether the employee agreed to work overtime voluntarily or under duress.").

"[P]ursuant to a regulation promulgated under the FLSA, an employee must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time, so long as the employer 'knows or has reason to believe that [the employee] is continuing to work' and that work was 'suffered or permitted' by the employer." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 718 (2d Cir. 2001) (quoting 29 C.F.R. § 785.11). As stated by a Department of Labor regulation:

> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time.

29 C.F.R. § 785.11.

"An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance. This duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." Chao, 514 F.3d at 288 (citations omitted). A Department of Labor regulation states:

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13. Chao elaborated on the regulation:

> In an ordinary employer-employee relationship, management is believed to have ready access to a panoply of practical measures to induce compliance with its formal rule against overtime. In such cases, a presumption arises that an employer who is armed with knowledge has the power to prevent work it does not wish performed. Where this presumption holds, an employer who knows of an employee's work may be held to suffer or permit that work. We suppose that this presumption explains why several cases and Department regulations seem to treat an employer's knowledge as not only necessary, but also sufficient, to establish its liability under the Act.

514 F.3d at 290. However, an employer that "knows nothing" about an employee's unpaid overtime work is not liable for compensation. Holzapfel, 145 F.3d at 524 ("While an employer

must pay for work it suffers or permits, 29 C.F.R. § 785.11, an employer cannot suffer or permit an employee to perform services about which the employer knows nothing.").

Whether an employer has actual or constructive knowledge that a plaintiff worked overtime is an issue of fact. Id. at 521. "[M]ore than one way exists to show constructive knowledge . . . ." Id. at 525. Even where supervisors repeatedly warn that overtime work is prohibited, an employer may have constructive knowledge if it has access to information indicating that employees worked more hours than reported. Id. Evidence demonstrating actual or constructive knowledge may vary, depending on the employer's policies and organizational structure. See, e.g., Zivali v. AT & T Mobility, LLC, 784 F. Supp. 2d 456, 468 (S.D.N.Y. 2011) (Rakoff, J.) ("In the absence of a company-wide policy or practice, plaintiffs will have to demonstrate that each individual manager had actual or constructive knowledge that plaintiffs were performing off-the-clock work without proper compensation.").

      2. For the Limited Purpose of the Parties' Motions, Plaintiffs Have Come Forward with Some Evidence that they Worked at Least Some Overtime without Required Compensation.

        a. Plaintiffs' Motion Includes Unrebutted Evidence of Overtime Work.

A plaintiff's own recollection, if credited by a trier of fact, can be sufficient to demonstrate that the plaintiff worked overtime without compensation. Kuebel, 643 F.3d at 362. In plaintiffs' summary judgment motion, their deposition testimony is some evidence that they worked overtime without compensation. (Bright Dep. 30, 35, 41-42 (testimony about pre- and post-shift work, which was sometimes performed at the direction of her supervisor); Dickerson Dep. 24, 35-36, 40 (testimony about pre- and post-shift work); Fordyce Dep. 44-45, 48-49, 61-64, 110 (testimony about pre- and post-shift work, including meetings with supervisors and emergency situations involving clients); Hamilton Dep. 20-21, 40, 52-53 (testimony and pre- and

post-shift work); Rodriguez Dep. 36, 42-43 (testimony about pre- and post-shift work); Scott

Dep. 43-45, 76-78, 105 (testimony about pre- and post-shift work, and work performed through

meal breaks); White Dep. 32-33 (testimony about post-shift work, and supervisor instruction to

clock out even when work continued to be performed).

   In opposition to the plaintiffs' motion, the City does not point to evidence from

which a reasonable trier of fact could conclude that the seven moving plaintiffs did not, in fact,

perform uncompensated work outside of their scheduled shifts. The City points out that all

plaintiffs had instances where they requested and received overtime pay, and points to a

provision in a DHS code of conduct providing that employees shall not work outside of their

regular shifts without seeking pre-approval. (Def. 56.1 Resp. ¶¶ 36-42.) The City's reliance on

plaintiffs' successful overtime requests and a formal DHS policy is not contrary to plaintiffs'

testimony, however, and does not raise a factual dispute as to their performance of off-the-clock,

overtime work.

   For the purposes of this motion, plaintiffs have come forward with some evidence

that they performed uncompensated overtime work, and the City has not pointed to evidence that

would permit a reasonable trier of fact to conclude otherwise.

   b. In Opposition to the City's Motion, the Non-Moving Plaintiffs Have Pointed
     to Evidence of Their Overtime Work.

   The City's own summary judgment motion is largely directed toward whether

there is evidence of the City's knowledge that plaintiffs worked overtime. In moving for

summary judgment on its own behalf, the City's Rule 56.1 Statement summarizes testimony in

which individual plaintiffs described performing off-the-clock work over meal breaks and before

and after their scheduled shifts. (Def. 56.1 ¶¶ 70-72 (testimony of Ahmed that he worked 30-80

minutes a week of unpaid overtime); ¶ 75 (testimony of Bergholz about working without pay); ¶

89 (testimony of Jackson that she worked through meal periods).) In opposition to the City's motion, plaintiffs submit deposition testimony in which these non-moving plaintiffs described uncompensated work before or after their shifts, or during scheduled meal breaks. (Ahmed Dep. 40, 67, 71-72, 76-77, 87, 91, 118; Bergholz Dep. 33, 28, 58-59, 74, 76-77, 119-20; Clark Dep. 39-40; Flynn Dep. 28, 38, 42; Jackson Dep. 31, 44-45; McNeil Dep. 21, 32-33, 49.) If credited, this testimony would permit a reasonable trier of fact to conclude that the non-moving plaintiffs worked some amount of overtime without the compensation required by the FLSA.

### 3. Plaintiffs' Failure to Come Forward with Evidence of their Claimed Individual Damages Requires Denial of their Motion.

The burden of a summary judgment movant is well established. "[O]n a motion for summary judgment, it is the moving party's burden to show in its motion papers 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 115 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)); accord Vt. Teddy Bear, 373 F.3d at 244 ("It is the movant's burden to show that no genuine factual dispute exists."). If the movant makes such a showing, the non-movant has "a limited burden of production" but still must come forward with specific facts showing that there is a genuine issue for trial. Powell, 364 F.3d at 84.

In moving for judgment in their favor, plaintiffs have not submitted evidence that could lead a reasonable trier of fact to reach any conclusion as to how much total overtime they claim to have worked and any resulting damages they are owed.

They rely principally on a declaration from their damages expert, Dr. Lanier. But the Lanier Declaration would not permit a reasonable trier of fact to determine plaintiffs' uncompensated hours and resulting damages. Lanier has calculated uncompensated overtime minutes and damages for the seven moving plaintiffs: 17,400 minutes as to Bright ($6,675 in

back pay); 1,926 minutes as to Dickerson ($1,455 in back pay); 541 minutes as to Fordyce ($363 in back pay); 1,533 minutes as to Hamilton ($845 in back pay); 17,295 minutes as to Rodriguez ($12,463 in back pay); 4,620 minutes as to Scott ($4,266 in back pay); and 1,140 minutes as to White ($933 in back pay).  (Lanier Dec. ¶ 4.)  It is unclear how he reached his conclusions. Lanier states that they are based on his "analyses of payroll (FISA) and punch (CityTime) data provided by the City" but also on an "extrapolation" using "an average weekly back pay figure for each of the plaintiffs . . . ."  (Lanier Dec. ¶¶ 1, 3-4.)  Lanier does not describe his "extrapolation," and the Court is in no position to assess whether his figures are useful and reliable.  Further, Lanier's figures reflect a three-year limitations period applicable only to plaintiffs who can demonstrate that an employer willfully violated in the FLSA, and not its presumptive two-year limitations period.  See 29 U.S.C. § 255(a).

Plaintiffs have not come forward with evidence of damages based on their own recollections of overtime worked.  See, e.g., Amaya v. Superior Tile & Granite Corp., 2012 WL 130425, at *7 (S.D.N.Y. Jan. 17, 2012) ("courts permit the employee to carry his burden of proof based upon his recollection of hours worked, which is presumed to be correct.") (Gardephe, J.). As a hypothetical example, they do not point to testimony from a particular plaintiff who estimated that she worked approximately 90 minutes of overtime each pay period, identified her regular rate of pay, and urged she is therefore entitled to a certain amount of damages.  Plaintiffs also have not submitted timesheets or other CityTime data going toward the amount of overtime that they worked.

Plaintiffs rely on a novel legal argument asserting that they need not demonstrate "the precise amount of uncompensated work performed" because that is a damages question to be resolved at trial, and instead must only show that "some" uncompensated work was

performed. (Pl. Mem. at 7-8.) They urge that they are entitled judgment in their favor if they can merely demonstrate that they worked any unspecified amount of overtime, and cite to the Second Circuit's decision in Kuebel, 643 F.3d at 361-65, and language from Sherald v. Embrace Techs., Inc., 2013 WL 126355, at *6 n.11 (S.D.N.Y. Jan. 10, 2013) (Griesa, J.).

But Kuebel involved the burden required of an FLSA plaintiff opposing a summary judgment motion, and not the burden of a movant-plaintiff seeking judgment in her favor. In Kuebel, the employer moved for summary judgment on the grounds that the non-moving plaintiff had not quantified with precision the amount of overtime and damages he was claiming; the district court agreed, and granted the employer's motion. 643 F.3d at 362-63. On appeal, the Second Circuit concluded that the district court erred by not applying the "more lenient standard" set forth in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), which requires a plaintiff only to "'present[ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" Kuebel, 643 F.3d at 364 (quoting Anderson, 328 U.S. at 687). "[A]n employee's burden in this regard is not high. It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." Id. at 362 (internal citation omitted). In the case of the Kuebel plaintiff, his burden as non-movant was satisfied through his own estimate that he worked one to five hours of overtime each week. Id. at 364. Having met this burden, the plaintiff defeated his employer's motion, with the panel noting that, "[u]ltimately, the dispute as to the precise amount of Kuebel's uncompensated work is one of fact for trial." Id. at 364.

Courts applying Kuebel look to whether plaintiffs have raised a just and reasonable inference of the amount of overtime worked in the context of their opposition to an

employer's summary judgment motion, thereby necessitating a trial.  See, e.g., Furk v. Orange-Ulster BOCES, 2019 WL 4739140, at *8 (S.D.N.Y. Sept. 27, 2019) ("the Anderson standard does not erect a high hurdle" to defeat an employer's summary judgment motion) (collecting cases) (Roman, J.); Perry v. City of New York, 2018 WL 1474401, at *5 (S.D.N.Y. Mar. 26, 2018) (plaintiffs defeated summary judgment in FLSA action related to CityTime policies by showing "that some amount of uncompensated work was performed") (Broderick, J.) (emphasis in original); Perez v. City of New York, 2017 WL 4326105, at *12 (S.D.N.Y. Sept. 27, 2017) ("To withstand an employer's motion for summary judgment, an employee need not demonstrate exactly how much work was performed with the employer's actual or constructive knowledge.") (Engelmayer, J.); Redzepagic v. Hammer, 2017 WL 780809, at *5 (S.D.N.Y. Feb. 27, 2017) (employee's recollection of hours worked was sufficient to defeat defendant's summary judgment motion) (Ramos, J.); Sherald, 2013 WL 126355, at *6 (denying defendant's summary judgment motion because "[w]hile plaintiff's evidence does not conclusively establish the amount of unpaid work potentially compensable as damages, it at least provides a reasonable basis for such a determination by the fact finder.").

The limited burden of the non-movant in Kuebel is consistent with the burden customarily applied to a non-movant who bears the ultimate burden of proof at trial.  See, e.g., Simsbury-Avon, 575 F.3d at 204 ("When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.") (internal citation omitted).  Kuebel does not stand for the proposition that the plaintiff, as the movant, is entitled to summary judgment in his or her

favored based only on a limited showing that they worked some unspecified amount of unpaid overtime. Plaintiffs are entitled to a trial to adjudicate their claims, but they have not demonstrated entitlement to summary judgment in their favor. See, e.g., Perry, 2018 WL 1474401, at *5 (denying both parties' summary judgment motions based on factual disputes over plaintiffs' work hours); Kim v. 511 E. 5TH St., LLC, 133 F. Supp. 3d 654, 661 (S.D.N.Y. 2015) (denying plaintiff's summary judgment motion where "there is a factual issue as to how often [plaintiff] worked more than forty hours per week and the number of overtime hours that he worked during such weeks" while granting motion of second plaintiff who demonstrated sixteen hours of overtime at a base rate of $8.50 per hour) (Maas, M.J.); Paguay v. Buona Fortuna, Inc., 2013 WL 3941088, at *3 (S.D.N.Y. July 31, 2013) ("Summary judgment as to Plaintiff's remaining claims is inappropriate because questions of fact exist regarding how many hours [he] worked and how much he was paid.") (Swain, J.).

To be clear, the Court is not suggesting that a plaintiff moving for summary judgment must come forward with precisely quantified evidence of overtime hours in order to satisfy Rule 56. See, e.g., Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 69 (2d Cir. 1997) ("A rule preventing employees from recovering for uncompensated work because they are unable to determine precisely the amount due would result in rewarding employers for violating federal law."). Anderson established a burden-shifting framework whereby, at trial, a plaintiff need only "show the amount and extent of that work as a matter of just and reasonable inference," at which point the employer then has a burden to "come forward with evidence of the precise amount of work performed" or some other evidence to negate the plaintiff's showing. 328 U.S. at 687-88. Here, however, the plaintiffs' motion is not premised on their personal recollections of overtime hours. Aside from the calculations of the Lanier Declaration, plaintiffs

have not directed the Court to evidence of the actual hours and corresponding amount of unpaid overtime they claim to have worked and the resulting damages.

Plaintiffs' summary judgment motion on their claims of unpaid overtime will therefore be denied.

### 4. There Are Disputed Issues of Fact as to Whether the City Had Actual or Constructive Knowledge of Plaintiffs' Uncompensated Work.

The City urges that it is entitled to summary judgment because it did not have actual or constructive knowledge that any plaintiff performed off-the-clock work. It points out that the City adopted a process in which covered employees could request pre-approval for overtime, and that plaintiffs successfully availed themselves of that process. According to the City, plaintiffs cannot now claim that they are owed damages for off-the-clock, overtime work that was not directly brought to the City's attention at the time it was performed. The City urges that, as a matter of law, it is entitled to summary judgment as to overtime claims for which plaintiffs did not submit formal, contemporaneous notice under City policy.

As noted, to establish liability under the FLSA for unpaid overtime, a plaintiff must demonstrate "that the employer had actual or constructive knowledge of that work." Kuebel, 643 F.3d at 361. "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours." Holzapfel, 145 F.3d at 524. "Work need not be performed during scheduled on-duty hours for an employee to receive compensation." Id. at 522.

In moving for summary judgment, the City repeatedly urges out that no plaintiff was explicitly instructed to work without compensation, that plaintiffs' overtime requests were frequently approved, and that plaintiff Bergholz, specifically, was admonished nine times for working off-the-clock. (Def. 56.1 ¶¶ 70-71, 74-75, 81, 86, 89-90, 93.)

In opposition, each plaintiff points to deposition testimony in which they described unpaid work performed in the presence of a supervisor or with the supervisor's apparent knowledge. (Ahmed Dep. 40 (e-mails to supervisors during unscheduled work hours), 75-76, 109 (Ahmed's supervisor observed him working during meal periods); Bergholz Dep. 86 (supervisor once instructed Bergholz to clock out but also to continue working), 110, 118 (supervisors observed Bergholz working pre-shift and during meal periods); Clark Dep. 39-40 (supervisor knew Clark worked through lunch but never inquired as to overtime), 48 (supervisor spoke to Clark when he arrived before scheduled shift); Flynn Dep. 40 (supervisor observed Flynn clocking in before the start of her scheduled shifts); Jackson Dep. 44-45 (supervisors observed Jackson working through meal periods and should have known of her post-shift work based on CityTime entries); McNeil Dep. 21, 49 (supervisor interrupted McNeil's meal periods).)

Plaintiffs' evidence in, if credited, is sufficient for a reasonable trier of fact to conclude that they performed off-the-clock work with the actual or constructive knowledge of supervisors, and that the supervisors suffered or permitted them to do so. A reasonable trier of fact could conclude that supervisors' presence and/or interactions with plaintiffs demonstrated actual or constructive knowledge that a plaintiff was working uncompensated overtime, and that the supervisor suffered or permitted that work. Chao, 514 F.3d at 290 ("[A] presumption arises that an employer who is armed with knowledge has the power to prevent work it does not wish performed. Where this presumption holds, an employer who knows of an employee's work may be held to suffer or permit that work.").

Further, the City's overtime-approval process and plaintiffs' successful use of that process does not preclude its liability. The burden does not fall upon an employee to seek

overtime pay if it has been demonstrated that the employer has actual or constructive knowledge of the employee's work.  Holzapfel, 145 F.3d at 524 ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours."); see also Chao, 514 F.3d at 290 ("once it is established that an employer has knowledge of a worker's overtime activities and that those activities constitute work under the Act, liability does not turn on whether the employee agreed to work overtime voluntarily or under duress."); Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 946 (2d Cir. 1959) ("The [FLSA's overtime] obligation is the employer's and it is absolute.  He cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping, 29 U.S.C.A. 211(c), and of appropriate payment, to the employee."); Lynch v. City of New York, 291 F. Supp. 3d 537, 550-51 (S.D.N.Y. 2018) (summarizing similar argument raised by the City as to employees' use of CityTime and concluding that "the law does not allow the employer to delegate its duty of record keeping to its employees in this way.") (Forrest, J.).

Because the plaintiffs have come forward with some evidence that, if credited, would permit a reasonable trier of fact to conclude that supervisors had actual or constructive knowledge of their overtime work, the City's motion for summary judgment is denied.

C. Plaintiffs' Claims Directed to the Regular Rate of Pay under the Nightshift Differential.

1. Plaintiffs' Motion Directed to the Calculation of Regular Rate of Pay Is Denied.

Plaintiffs assert that even when the City paid overtime, it failed to account for a nightshift differential when calculating the time-and-a-half rate.  See 29 U.S.C. 207(a)(1).  Under the FLSA, an employee's regular rate of pay "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee . . . ."  29 U.S.C.A. § 207(e).  "The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials

- 25 -

(whether they take the form of a percent of the base rate or an addition of so many cents per hour) . . . ."  29 C.F.R. § 778.207(b); see also Ramirez v. Riverbay Corp., 35 F. Supp. 3d 513, 530 (S.D.N.Y. 2014) ("'An employee's 'regular rate' of pay includes shift differentials.'") (Koeltl, J.) (quoting Johnson v. D.M. Rothman Co., 861 F. Supp. 2d 326, 331 (S.D.N.Y. 2012) (Marrero, J.)).  The City does not dispute that its overtime calculations must account for a nightshift differential.

In support of their motion, plaintiffs point to an excerpt of the Rule 30(b)(6) deposition of the City.  (Pl. 56.1 ¶ 79; Def. 56.1 ¶ 79; Pestana Dep. 178-79.)  Counsel questioned the Rule 30(b)(6) designee about an exhibit which apparently stated in part that nightshift differentials "are excluded in the calculation of the FLSA base rate of pay" for work hours "on a premium day, i.e., weekends or holidays . . . ."  (Pestana Dep. 178.)  In a subsequent question, the witness testified that, to her knowledge, "I don't think that's the case" that a nightshift differential was excluded from pay calculation on premium days.  (Pestana Dep. 178.)

Plaintiffs have not directed the Court to evidence that would permit a reasonable trier of fact to conclude that the City's overtime rates failed to account for a nightshift differential.  The exhibit shown to the witness in her deposition is not part of the summary judgment record.  Its author and origins are not described in the deposition excerpts submitted by plaintiffs.  Further, the witness was questioned about the use of nightshift differentials when calculating overtime only as to "premium days" like weekends or holidays.  Lastly, the witness testified that she believed that nightshift differentials were, in fact, used to calculate overtime on premium days.  This is not evidence that, if credited, would permit a reasonable trier of fact to conclude that overtime calculations failed to incorporate a nightshift differential.

Additionally, no plaintiff points to evidence that would demonstrate that he or she was paid overtime in an amount inconsistent with the nightshift differential.

Plaintiffs' summary judgment motion on the issue of whether overtime pay failed to reflect a nightshift differential will therefore be denied.

2. The City's Motion Is Granted as to the Nightshift Differential Claims.

The City urges that none of the seven plaintiffs who are the subjects of its motion have identified instances in which their overtime compensation failed to account for a nightshift differential. (Def. Mem. 15; Def. 56.1 ¶¶ 72, 76, 79, 82, 87, 91, 94.)

In opposition, plaintiffs point to a declaration of their expert, Dr. Lanier. (Pl. Add'l 56.1 ¶ 27.) Lanier's declaration states that Ahmed is owed $4.62, Bergholz $10.21 and Flynn $5.39 for the City's failure to calculate overtime using the nightshift differential. (Lanier Opp. Dec. ¶ 16.) Lanier does not explain how he reached this conclusion, and plaintiffs do not point to additional evidence as to the City's failure to account for a nightshift differential when calculating overtime pay for Ahmed, Bergholz or Flynn.

The City's motion will therefore be granted as to any claim that plaintiffs Ahmed, Bergholz, Clark, Flynn, Jackson and McNeil were not paid overtime consistent with a nightshift differential.

D. Plaintiffs' Claims Related to Delayed Payment of Overtime.

1. Plaintiffs' Motion Is Denied as to Any Delayed Overtime Payments.

Plaintiffs move for summary judgment in their favor on the claim that the City violated the FLSA by delaying payment for overtime work. "[I]t is clear that the FLSA requires wages to be paid in a timely fashion." Rogers v. City of Troy, N.Y., 148 F.3d 52, 57 (2d Cir. 1998). A Department of Labor regulation provides that as a "general rule," overtime "must be

paid on the regular pay day," but that if it cannot be calculated by that time, it should be paid "as

soon after the regular pay period as is practicable." 29 C.F.R. § 778.106. The relevant provision

states in full:

> There is no requirement in the Act that overtime compensation be
> paid weekly. The general rule is that overtime compensation earned
> in a particular workweek must be paid on the regular pay day for the
> period in which such workweek ends. When the correct amount of
> overtime compensation cannot be determined until some time after
> the regular pay period, however, the requirements of the Act will be
> satisfied if the employer pays the excess overtime compensation as
> soon after the regular pay period as is practicable. Payment may not
> be delayed for a period longer than is reasonably necessary for the
> employer to compute and arrange for payment of the amount due
> and in no event may payment be delayed beyond the next payday
> after such computation can be made.

Id. "[A]n inquiry into an employer's liability for late payment of overtime focuses not only on

how often late payments were made or how late they were, but also on whether the payments

were made as soon as practicable.'" Conzo v. City of New York, 667 F. Supp. 2d 279, 288

(S.D.N.Y. 2009) (Cedarbaum, J.). A payment's timeliness "'must be determined by objective

standards . . . .'" Id. (quoting Rogers, 148 F.3d at 57).

The summary judgment record includes testimony from some plaintiffs about the

purported delays in receiving overtime.[1] Bright testified that there were "many times" when

payment was delayed, but the record does not indicate the duration of any delay. (Bright Dep.

92.) Fordyce testified that overtime requests were sometimes delayed "for weeks and weeks," as

long as two or three paychecks. (Fordyce Dep. 59.) Fordyce testified that she once waited about

a year to be paid overtime. (Fordyce Dep. 114.) Rodriguez testified that overtime payments

were delayed "[n]umerous times" and for as long as a month, but he could recall no examples.

(Rodriguez Dep. 79-80.) White testified that there were instances where an overtime payment

---

[1] Plaintiffs do not point to testimony from Dickerson, Hamilton or Scott. (Pl. 56.1 ¶ 90.)

was delayed, but did not identify the length of the delay or the number of times payment was delayed. (White Dep. 50.) Plaintiffs seek liquidated damages totaling $2,197 for the City's purported failure to make prompt compensation. (Pl. 56.1 ¶ 93.) Additionally, plaintiffs assert that, as a matter of law, any delay that exceeded 35 days was unlawful under the FLSA, reasoning this window of time would exceed two pay periods. (Pl. Mem. at 19.)

Plaintiffs have not come forward with evidence that would permit a reasonable finder of fact to conclude that any overtime payments were unlawfully delayed under the FLSA. First, plaintiffs have not demonstrated why the Court should adopt a per se rule that a payment made more than 35 days after a plaintiff's overtime request is untimely under the FLSA. This proposed rule does not account for request-specific variations in the practicability of making overtime payments. Second, there is no documentation showing any overtime request made by a plaintiff, ensuing correspondence (if any) with supervisors, or paystubs or other evidence indicating the date of subsequent payment. Third, the deposition testimony of plaintiffs concerning the timing of their payments is vague. Bright and White could not identify the length of any delay. Rodriguez testified that delay lasted for as long as a month and Fordyce testified that payment was delayed for two or three paychecks, but neither described the circumstances of those delays, which would not even necessarily fall outside of plaintiffs' proposed 35-day window of reasonableness. With additional evidence, it is likely that the one-year delay described by Fordyce would be unlawful under an objective standard. But the record includes no evidence concerning her overtime request or the date of payment, and Fordyce's testimony is vague as to the details of her request and its eventual payment.

Plaintiffs have not come forward with evidence that would permit a reasonable trier of fact to find in their favor. Their motion for summary judgment as to the delay over overtime payments will therefore be denied.

2. **The City's Motion Is Denied as to Delayed Payments Claimed by Bergholz and Flynn, but Otherwise Granted.**

The City urges that the seven plaintiffs who are the subjects of its motion all received overtime pay within the 35-day window proposed by plaintiffs, and that plaintiffs' claims therefore fail as a matter of law. In opposition, plaintiffs point to deposition testimony of Bergholz and Flynn. (Pl. Add'l 56.1 ¶ 26.) Bergholz testified that his overtime pay was delayed "pretty frequently because it has to be – the overall approval, you'll see numbers under the word pending, and that means that they weren't approved by the ultimate approver. . . . It could last for two weeks until the next pay period." (Bergholz Dep. 101.) Flynn testified that his overtime pay was delayed approximately once every other month over the preceding three years, and that "the delay in payment would be skip a pay check or every other paycheck it was something." (Flynn Dep. 56.)

Drawing every reasonable inference in favor of Bergholz and Flynn as non-movants, their testimony raises an issue of fact as to whether they received overtime pay "as soon after the regular pay period as is practicable." 29 C.F.R. § 778.106. As a "general rule . . . overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends." Id. While the delays described by Bergholz and Flynn appear to have been modest, and would not even necessarily fall outside the 35-day per se rule proposed by plaintiffs in their own motion, the City does not demonstrate that these plaintiffs were paid as soon as is practicable, and points to no evidence going to the computation and arrangement for the payment of overtime to Bergholz or Flynn. See id.

The City's motion will therefore be denied as to plaintiffs Bergholz and Flynn, but granted as to plaintiffs Ahmed, Clark, Jackson and McNeil.

E.  Plaintiffs' Claims Related to Compensatory Time.

1.  Plaintiffs' Summary Judgment Motion Is Denied as to Compensatory Time.

Plaintiffs move for summary judgment on their claim that the City did not provide necessary compensatory time to plaintiffs who worked overtime.  Under the FLSA, an employee of a state political subdivision may receive, in lieu of overtime compensation, "compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section."  29 U.S.C. § 207(o)(1).  "Compensatory time received by an employee in lieu of cash must be at the rate of not less than one and one-half hours of compensatory time for each hour of overtime work, just as the monetary rate for overtime is calculated at the rate of not less than one and one-half times the regular rate of pay."  29 C.F.R. § 553.20.

Plaintiffs Rodriguez and Scott assert that they were not awarded comp time at the applicable time-and-a-half rate required by the FLSA, and seek $1,084 in damages.  In support, they point to the Rule 30(b)(6) deposition testimony of the City's designees, Pestana and Wright.  (Pl. 56.1 ¶¶ 86-87.)  Pestana testified that it was her understanding that the FLSA requires comp time to be awarded at a time-and-a-half rate, although she noted that the rate could sometimes be higher.  (Pestana Dep. 72.)  Wright testified that employees covered by the FLSA can receive compensatory time for their overtime work, instead of cash, and testified that he believed they would receive an hour of compensatory time for every hour of overtime.  (Wright Dep. 224.)  The following exchange occurred at Wright's deposition:

> Q. But if an employee, for example, works an hour of overtime and elects to take compensatory time instead of cash, do you know how are they – do they receive one hour of compensatory time?
> A. Yes.

(Id.)

The deposition testimony of the City's Rule 30(b)(6) designees is not evidence that entitles plaintiffs to summary judgment. First, neither testified as to the comp time awarded to Rodriguez, Scott or any other specific plaintiff. Plaintiffs do not point the Court to evidence about any specific plaintiff's comp time. Further, Pestana's testimony accurately described the FLSA's comp time requirements. Wright's testimony indicated that employees are awarded one hour of comp time for each hour of overtime worked, instead of the required hour-and-a-half rate, but its weight is lessened by the fact that his response merely affirmed the premise of an attorney question, and is in any event inconsistent with the testimony of Pestana. From this record, a reasonable trier of fact could not conclude that the City failed to award the required comp time to any plaintiff, including Rodriguez and Scott.

Plaintiffs' summary judgment motion is therefore denied as to the claim that the City miscalculated the amount of compensatory time required by 29 U.S.C. § 207(o)(1).

2. <u>The City's Summary Judgment Motion Is Granted as to Compensatory Time.</u>

In moving for summary judgment, the City asserts that none of the seven plaintiffs has come forward with evidence that the City miscalculated the amount of compensatory time given to them. In opposition, the City does not direct the Court to evidence that any of the non-moving plaintiffs received compensatory time that did not comply with the FLSA's requirements, and instead directs the Court to the just-discussed testimony of Pestana and Wright. (Opp. Mem. 21.) Drawing every reasonable inference in plaintiffs' favor, that

testimony does not demonstrate that any particular plaintiff was not given comp time at the required time-and-a-half rate.

The City's motion for summary judgment is therefore granted as to any claim of Ahmed, Bergholz, Clark, Flynn, Jackson and McNeil asserting that they were not paid the compensatory time required by 29 U.S.C. § 207(o)(1).

F.   Liquidated Damages.

The plaintiffs and the City each moves for summary judgment as to plaintiffs' entitlement to liquidated damages.  Their motions will be denied.

An employer that violates section 206 or 207 of the FLSA "shall be liable" for liquidated damages for unpaid overtime compensation "in an additional equal amount" of the underlying unpaid wages.  29 U.S.C. § 216(b).  However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."  29 U.S.C. § 260.  "Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999).  "Courts have discretion to deny an award of liquidated damages where the employer shows that, despite the failure to pay appropriate wages, the employer acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate the FLSA."  Id.

Plaintiffs' summary judgment motion is denied as to their claimed FLSA violations, and it is therefore premature to reach the question of whether any hypothetical violation occurred in good faith and was grounded in the City's reasonable belief that it had complied with the law. Even if it were not premature, a trier of fact is best positioned to weigh the conflicting evidence as to the City's subjective good faith and objective reasonableness. See, e.g., Perry, 2018 WL 1474401, at *8 ("at this stage, when there are disputed issues of fact with respect to liability, I find that there are likewise disputed issues of fact rendering any finding as to liquidated damages or willful infringement premature.") (citing Kuebel, 643 F.3d at 366).

The parties' motions as to the issue of liquidated damages will therefore be denied.

G. The Parties' Motions on the Issue of Willfulness Are Denied.

The parties also move for summary judgment as to plaintiffs' assertion that the City willfully violated the FLSA. The FLSA has a two-years limitation period, which can be extended to three years if the plaintiff can demonstrate that the employer's violations were willful. 29 U.S.C. § 255(a). To demonstrate willfulness, a plaintiff must show "'that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" Herman, 172 F.3d at 141 (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). "[W]hether unlawful conduct is on the one hand negligent or unreasonable, or on the other hand knowing or reckless, '[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact.'" Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015) (Buchwald, J.) (quoting Ramirez v. Rifkin, 568 F.Supp.2d 262, 268 (E.D.N.Y. 2008) (collecting cases)).

For the reasons just explained concerning any award of liquidated damages, the parties' summary judgment on willfulness triggering the applicability of a three-year limitations period is also denied.

CONCLUSION.

Plaintiffs' motion for summary judgment is DENIED.

The City's motion for summary judgment is GRANTED in part and DENIED in part. The City's motion is GRANTED as to all claims asserted by plaintiff Gloria Brown; the claims of plaintiffs Ahmed, Bergholz, Clark, Flynn, Jackson and McNeil as to any failure to incorporate a nightshift differential when calculating their regular rates of pay; the claims of plaintiffs Ahmed, Clark, Jackson and McNeil as to any delay in making overtime payments; and the claims of Ahmed, Bergholz, Clark, Flynn, Jackson and McNeil as to any failure to properly calculate compensatory time. The remainder of the City's motion is DENIED.

The Clerk is directed to terminate the motions. (Docket # 117, 125.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       February 10, 2020